UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------x

In the Matter of,

RICHARD E. LERNER,                                    **Amended Notice of Appeal**
an attorney admitted to practice before
this Court,

Respondent.                                           16-MC-2636

-------------------------------------------------------------------------------x

   Respondent Richard E. Lerner hereby amends his previously filed notices of appeal

of September 12, 2018 and November 21, 2018, and appeals to the United States Court of

Appeals for the Second Circuit from each aspect of all orders adverse to him entered in this

case, including, but not limited to, the orders dated August 13, 2018, October 24, 2018,

November 5, 2018, November 20, 2020, May 9, 2023, June 14, 2024, June 27, 2024, and

September 4, 2024.

Dated: New York, New York     Respectfully submitted,
   October 4, 2024

              Richard E. Lerner
              69-46 Harrow Street
              Forest Hills, New York 11375
              917-584-4864
              richard@mazzolalindstrom.com

**Service via ECF**

Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
  :
In The Matter Of,
  :
  :
**RICHARD E. LERNER**, an attorney admitted to   :   **ORDER**
practice before this Court,
  :   16-MC-2636 (AMD)
              Respondent.   :
  :
  :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      This matter is before the Committee on Grievances for the United States District Court

for the Eastern District of New York on the respondent's motion for reconsideration (ECF No.

77) of the Committee's order of June 14, 2024 (ECF No. 75). The Committee found "by clear

and convincing evidence that the respondent violated Rule 3.4(a)(6)" of the New York Rules of

Professional Conduct and imposed a one-year suspension, on top of the six-month suspension

that the Committee imposed in its August 13, 2018, order for the respondent's other violations.

(*Id.*) Familiarity with the facts is assumed. The respondent adopts the arguments that Frederick

Oberlander makes in his related disciplinary action. *In re Oberlander*, No. 16-MC-2637

(E.D.N.Y. July 12, 2024), ECF Nos. 36, 37 ("Oberlander ECF No. 37"). As explained below,

the Committee denies the motion, for the same reasons it denies Oberlander's motion.

      Although the respondent moves to vacate the Committee's ruling, he cites Rule 59(e) of

the Federal Rules of Civil Procedure. Accordingly, the Committee construes his submission as a

motion for reconsideration under Rule 6.3 of the Local Rules for the United States District Court

for the Southern and Eastern Districts of New York and Rules 59(e) and 60(b)(6) of the Federal

Rules of Civil Procedure.[1]

## LEGAL STANDARD

"A motion to alter a judgment pursuant to Rule 59(e) 'may be granted only if the movant

satisfies the heavy burden of demonstrating an intervening change of controlling law, the

availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"

*Xiao Qing Liu v. Cuomo*, No. 22-CV-5384, 2023 U.S. Dist. LEXIS 147395, at *1–2 (E.D.N.Y.

Aug. 22, 2023) (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475

(S.D.N.Y. 2014)). "The Second Circuit has noted that it is 'well-settled that Rule 59 is not a

vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on

the merits, or otherwise taking a second bite at the apple.'" *Id.* at *2 (quoting *Analytical Survs.,

Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)). Rather, "the standard for granting

[a Rule 59 motion for reconsideration] is strict, and reconsideration will generally be denied

unless the moving party can point to controlling decisions or data that the court overlooked[.]"

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Federal Rule of Civil Procedure 60(b)(6), a catch-all provision, allows a court to relieve a

party from final judgment for "any other reason that justifies relief" not already mentioned in

---

[1] Local Rule 6.3 provides that "a notice of motion for reconsideration or reargument of a court order shall be served within 14 days after the entry of the judgment." *Hernandez v. Doe*, No. 16-CV-2375, 2016 U.S. Dist. LEXIS 176600, at *3 (E.D.N.Y. Dec. 21, 2016) (citing Local Rule 6.3). Rule 59(e) permits a party to seek reconsideration of a court's judgment "so long as the party files its 'motion to alter or amend a judgment . . . no later than 28 days after the entry of judgment.'" *Id.* (quoting Fed. R. Civ. P. 59(e)). The respondent moved for reconsideration on July 12, 2024. (ECF No. 77.) Although the motion is not timely under Local Rule 6.3, it is timely under Rule 59(e). Regardless, the standards for motions under Local Rule 6.3 and Rule 59(e) are the same. *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 508–09 (S.D.N.Y. 2009).

The motion is timely under Rule 60(b)(6), which must be filed "within a reasonable time." Fed. R. Civ. P. 60(c)(1).

Rule 60(b)(1) through (5). "[T]he standard for granting [Rule] 60(b)(6) motions is strict." *King v. People,* No. 11-CV-3810, 2016 U.S. Dist. LEXIS 33848, at *2 n.3 (E.D.N.Y. Mar. 16, 2016) (quoting *Gonzalez v. Crosby,* 545 U.S. 524, 535 (2005)). Rule 60(b)(6) "is properly invoked only when there are extraordinary circumstances justifying relief or when the judgment may work an extreme and undue hardship." *Simone v. Prudential Ins. Co. of Am.*, 164 F. App'x 39, 40 (2d Cir. 2006) (citation and internal quotations omitted) (summary order). "The party seeking relief has the burden to prove extraordinary circumstances." *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, No. 18-CV-4203, 2023 U.S. Dist. LEXIS 213428, at *6 (E.D.N.Y. Nov. 30, 2023).

## DISCUSSION

The respondent argues that the June 14, 2024, order should be vacated, or its enforcement stayed, because he "[was] not allowed a defense," "informed what [he] would be charged with," or given "notice of timing or when anything from us would be expected" (Oberlander ECF No. 37 at 2). He also maintains that he was entitled to an evidentiary hearing and a jury trial because he was, in effect, charged with civil or criminal contempt. (*Id.* at 2–8.) These arguments are unavailing under either Rule 59(e) or Rule 60(b)(6).

The respondent's claim that the Committee did not alert him that it was considering whether his actions constituted illegal conduct in violation of Professional Rule 3.4(a)(6) is not persuasive. The statement of charges includes the violations of Rule 3.4 "by knowingly engaging in illegal conduct by contravening court orders[ and] disclosing the Sealed Materials." (ECF No. 3 at 6.) This charge gave the respondent fair notice of the charge that he violated Rule 3.4 by contravening court orders and disclosing the Sealed Materials. Further, the Committee's August 13, 2018, order explained that the Committee "defer[red] its ruling on this portion of the Rule 3.4 charge pending the outcome" of ongoing criminal contempt proceedings into the same conduct. (ECF No. 26 at 37.) The respondent points to no authority, and the Committee is

aware of none, that requires additional notice or another round of briefing on a deferred ruling, let alone on a charge on which "the record is clear." (*Id.*) Accordingly, the respondent has not established "manifest injustice" or "extraordinary circumstances" that justify relief from the judgment.

The Committee also rejects the respondent's claim that it denied him due process because it did not hold an evidentiary hearing. The respondent does not point to controlling decisions that the Committee overlooked that justify relief; indeed, controlling authority permits the Committee to decline to hold a hearing where the respondent has not shown good cause for one, which he did not do here. "Procedural due process is a flexible concept," and "[i]n a disciplinary case, due process requires only that [a] respondent be given notice of the charges against him and an opportunity to be heard." *In re Feinman*, No. 96-CV-5796, 2000 U.S. Dist. LEXIS 19785, at *17 (E.D.N.Y. Mar. 18, 2000) (citing *In re Jacobs*, 44 F.3d 84, 90 (2d Cir. 1994)); *see also* Local Rule 1.5(d)(1) ("If good cause is shown to hold an evidentiary hearing, the Committee on Grievances may direct such a hearing . . . ."). To the extent the respondent argues that he showed good cause to hold a hearing, he does not provide sufficient justification for relitigating the issue. Indeed, the Committee discussed the facts underlying the Rule 3.4(a)(6) violation at length in its 2018 opinion and found that those facts are not in dispute. (*See* ECF No. 34 at 2–3; Oberlander ECF No. 33 at 8–10.)

Characterizing the Committee's ruling as the equivalent of a finding of civil or criminal contempt, the respondent maintains that due process requires an evidentiary hearing or even a jury trial. (Oberlander ECF No. 37 at 5.) This argument is also not persuasive. This is not a contempt proceeding. It is a disciplinary proceeding. Unlike civil and criminal contempt charges, "the Rules of Professional Conduct lack the force of law." *In re Thelen LLP*, 736 F.3d

4

213, 223 (2d Cir. 2013).  Moreover, "'an attorney subject to a . . . disciplinary proceeding' is

entitled to narrower due-process protections than 'the full panoply of federal constitutional

protections that apply to a criminal prosecution.'"  *In re Demetriades*, 58 F.4th 37, 48–49 (2d

Cir. 2023) (quoting *In re Jacobs*, 44 F.3d at 89).  These protections, as discussed above, include

only notice and an opportunity to be heard.  *In re Feinman*, 2000 U.S. Dist. LEXIS 19785, at

*17.  The respondent identifies no controlling authority to the contrary.  It also makes no sense to

treat a violation of Professional Rule 3.4(a)(6) as contempt.  The rule prohibits attorneys from,

among other things, "knowingly engag[ing] in . . . illegal conduct," meaning that the same

conduct can be punishable under professional ethics rules and under state or federal law; it does

not follow that sanction under the professional rules is the same thing as a sanction under law.

Rules of Prof Conduct [22 NYCRR 1200.0] rule 3.4 [a] [6].

     The Committee has reviewed the remainder of the respondent's arguments and finds no

reason to reconsider its determination.

     This order, like the June 14, 2024, order, "is a final order and may be immediately

appealed, there being no necessity in such matters to issue a Judgment."  *In re Weinstock*,

No. M-2-238, 2005 U.S. Dist. LEXIS 7051, at *4–5 (S.D.N.Y. Apr. 22, 2005).  The respondent's

"time to file an appeal from the [June 14, 2024] judgment runs from the entry of [this] order."

*Roistacher v. Bondi*, 624 F. App'x 20, 21 (2d Cir. 2015).

**SO ORDERED.**

s/Ann M. Donnelly

Hon. Ann M. Donnelly, U.S.D.J.
Chair of the Committee on Grievances
For the United States District Court
Eastern District of New York

Dated:  Brooklyn, New York
        September 4, 2024

Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X

In the Matter of

RICHARD E. LERNER,                                     ORDER
*an Attorney and Counselor-at-Law,*                    1: 1 6-mc-02636-AMD

      Respondent.

--------------------------------------------------X

      This Order confirms the appointment, of Kevin Mulry to investigate allegations against the respondent, advise the Committee on Grievances whether prosecution of a disciplinary action is required, and, if directed, prosecute grievance proceedings on behalf of the Committee.

      The file in this matter will remain under seal until further order of this Court.

      SO ORDERED.

Dated: Brooklyn, New York
      June 27, 2024

                            s/Ann M. Donnelly
                            Ann M. Donnelly, USDJ
                            Chair of the Committee on Grievances, E.D.N.Y.

Exhibit C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                               :

In The Matter Of,

                                               :

**RICHARD E. LERNER**, an attorney admitted to   :   **ORDER**
practice before this Court,

                                               :   16-MC-2636 (AMD)

                                    Respondent.   :

                                               :

                                               :

------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The Committee on Grievances for the United States District Court for the Eastern District

of New York (the "Committee") commenced this proceeding to determine whether the

respondent committed ethical violations by participating in a scheme to publicize sealed

documents from Felix Sater's 1998 criminal case.  On August 13, 2018, the Committee found

that the respondent violated the following New York Rules of Professional Conduct: Rule

1.16(b) (requiring withdrawal of representation), 3.3(f)(2) (discourteous conduct); Rule 8.4(a)

(violations of the rules of professional conduct); Rule 8.4(d) (conduct prejudicial to the

administration of justice); and Rule 8.4(h) (conduct reflecting adversely on lawyer's fitness.)

(ECF No. 26 at 1, 25.)[1]  The Committee concluded that the respondent should be suspended for

six months.  (*Id.* at 43.)

The Committee also found by clear and convincing evidence that the respondent violated

Rule 3.4(a)(6) for attempting to obtain a settlement by threatening illegal conduct (*id.* at 37–41);

however, the Committee deferred decision on whether the respondent violated this rule by

---

[1] The Committee found that the evidence did not support violations of Rules 3.1 (Frivolous Conduct) or
3.2 (Dilatory Tactics).  (*Id.* at 29–31.)

contravening court orders and disclosing certain sealed materials until a criminal investigation by

the U.S. Attorney's Office for the Northern District of New York (the "Northern District")

concluded (*id.* at 25). That investigation is now over. For the following reasons, the Committee

finds the respondent contravened court orders and improperly disclosed sealed materials in

violation of Rule 3.4(a)(6).

## BACKGROUND

The facts of this long-running disciplinary matter are detailed in the Committee's 2018

decision,[2] familiarity with which is assumed, and will not be repeated except as necessary to

explain the Committee's decision on the open matter.[3]

In December 1998, Felix Sater pled guilty before the Honorable I. Leo Glasser to an

information charging him with violating the Racketeer Influenced and Corrupt Organizations

Act, 18 U.S.C. § 1962(c) ("RICO"). (ECF No. 26 at 4.) As part of his plea, Sater entered into a

cooperation agreement with the U.S. Attorney's Office for the Eastern District of New York (the

"Eastern District"). (*Id.*) Sater assisted the government in its investigation for more than ten

years. (*Id.*) Because of the sensitive nature of this investigation — and the risk to Sater because

of his cooperation — Judge Glasser sealed the action and the entire docket. (*Id.*) Sater was

sentenced in October 2009. (*Id.*)

---

[2] This matter is related to a separate disciplinary action, based on this same set of facts, in which
Frederick Oberlander is the respondent. *See In re Oberlander*, No. 16-MC-2637 (the "Oberlander
Action"). Oberlander was Richard Lerner's client and participated in disseminating the Sealed
Materials from Sater's criminal case.

[3] The Committee has issued five opinions in this matter, including: (i) an August 13, 2018 order finding
certain ethical violations (ECF No. 26); (ii) an October 24, 2018 order denying reconsideration (ECF
No. 34); (iii) a November 20, 2020 order on the respondent's motion to unseal (ECF No. 52); (iv) a
March 16, 2021 collateral order on the motion to unseal (ECF No. 62); and (v) a May 9, 2023 final order
to unseal (ECF No. 72).

Sater joined Bayrock Group LLC, a real estate development firm, in 2002. (*Id.*) Joshua Bernstein worked at Bayrock as a financial analyst from November 2006 until he was fired September 2008. (*Id.* at 4–5) During this time, Bernstein maintained a hard drive with a copy of all Bayrock files; those files included emails and documents that Sater had sent to his attorney in connection with the sealed criminal proceedings before Judge Glasser: (i) Sater's cooperation agreement, (ii) a December 10, 1998 Department of Justice financial statement, (iii) two proffer agreements, and (iv) a June 28, 2004 presentence investigation report (collectively, the "Sealed Materials"). (*Id.* at 5.) Before he left the company, Bernstein gave Oberlander copies of the Sealed Materials. (*Id.*)

Oberlander sued Sater in the Southern District of New York for civil RICO violations in May 2010, alleging that Sater and his former business associates, through Bayrock, engaged in a RICO conspiracy involving tax evasion, money laundering, embezzlement, and fraud. (*Id.*) Oberlander attached portions of the Sealed Materials as exhibits to the complaint, including five pages from the presentence investigation report, the proffer agreements, and the cooperation agreement. (*Id.* at 5–6.) The complaint also referred to information from the Sealed Materials, including details about Sater's cooperation with the government. The case was assigned to the Honorable Naomi Reice Buchwald. (*Id.* at 6.) *See also Kriss et al v. BayRock Group LLC et al*, No. 10-CV-3959 (S.D.N.Y.).

On May 13, 2010, Judge Buchwald directed that "no further dissemination" of Oberlander's complaint or the sealed information appended thereto could be made without the Court's permission. (ECF No. 13-3 at 1.) Judge Buchwald also directed that Oberlander immediately inform any individuals who had received a copy of the complaint that they were not to disseminate the complaint or the Sealed Materials. (*Id.*) The next day, Judge Buchwald

sealed the complaint and directed Oberlander to file a redacted version of the original complaint. (ECF No. 13-4 at 2.)

On May 18, 2010, Sater moved for a preliminary injunction before Judge Glasser for the return of the Sealed Materials.  (ECF No. 13-5.)  Shortly thereafter, Oberlander hired the respondent to represent him in connection with the proceedings before Judge Glasser.  (ECF No. 19 at 10.)  Judge Glasser enjoined Oberlander and his clients from disseminating the Sealed Materials pending a hearing on the motion.  (ECF No. 13-5 at 1–2.)  At that hearing, on June 14, 2010, Judge Glasser emphasized that Sater's case had been under seal since its inception, that the Sealed Materials stated explicitly that they were sealed, and that Oberlander was aware that they were sealed.  (ECF No. 13-9 at 5:12–6:19, 8:1-4.)  Judge Glasser found that attaching the Sealed Materials to the Southern District complaint "was a disclosure of information which was reckless and significantly endangered the life of the person to whom that information related" (*id.* at 11:13-15); he adjourned the hearing until June 21, 2010 (*id.* at 15:6-11).  The respondent agreed that "there's an awful lot of information in [Sater's] cooperation agreement which is very sensitive."  (*Id.* at 8:10-13.)

One June 21, 2010, Judge Glasser issued a permanent injunction, restraining Oberlander from disseminating the Sealed Materials and directing him to return the Sealed Materials to the U.S. Attorney's Office.  (ECF No. 13-10 at 88:2–4, 91:25–92:7.)  Oberlander did not comply with that order.  Accordingly, on July 20, 2010, Judge Glasser issued a further temporary restraining order against the dissemination of any copies of the presentence investigation report.  (ECF No. 13-17 at 26:1–27:15.)[4]

---

[4] The respondent claimed falsely that Judge Glasser's earlier order applied only to the "original" copy of the PSR that Oberlander obtained from Bernstein.  (ECF No. 13-17 at 15:2–16:7.)

In the ensuing months, Oberlander, represented by the respondent, filed multiple appeals in the Second Circuit, and still held on to copies of the Sealed Materials, as the respondent conceded at a February 14, 2011 argument before the Second Circuit.  (ECF No. 14-3 at 24:1-3.) The Second Circuit enjoined Oberlander from publicly distributing or revealing in any way any of the contents of documents that were subject to sealing orders in the appellate proceedings or in any related proceedings before the Eastern and Southern Districts.  (ECF No. 14-4 at 1.)

At the Second Circuit's direction, then-Chief Judge Raymond Dearie appointed the Honorable Brian M. Cogan as special master "with the limited mandate of implementing and overseeing compliance with our orders and the orders previously entered by Judge Glasser," and to "to ensure the parties' compliance with [the Second Circuit's] orders . . . and any that have been, or may hereafter be, entered by Judge Glasser."  *Roe v. United States,* 428 F. App'x 60, 63–65 (2d Cir. 2011).  At an April 1, 2011 hearing before Judge Cogan, the respondent revealed that Oberlander had still not destroyed or returned electronic and papers copies of the Sealed Materials.  (ECF No. 14-9 at 11:5–12:5.)  Judge Cogan issued oral and written orders directing Oberlander to destroy or return any remaining electronic or paper copies of the Sealed Materials without prejudice to his ability to seek the documents if the Second Circuit vacated any of the various sealing orders.  (ECF No. 14-9 at 14:3-6; ECF No. 14-10 at 1.)

On May 13, 2011, Judge Cogan denied Oberlander's request to release the following information from the Sealed Materials: (1) Sater's identity in connection with the criminal proceedings; (2) the nature of the predicate acts underlying Sater's RICO conviction; and (3) Sater's sentence of probation and $25,000 fine.  (ECF No. 14-21 at 3–4.)  Judge Cogan observed that while information "available to the public" was not covered by the Second Circuit's injunction; Oberlander could not "extrapolat[e] from sealed documents . . . [which] could easily

be combined with and thereby tainted by [the respondent's] knowledge of non-public, sealed information." (*Id.* at 2.)  Judge Cogan reviewed the specific information that the respondent wanted released and concluded that "[i]t seems obvious that [the respondent] is seeking to fatally undermine the purpose of the injunctions by publishing information that would render them ineffective." (*Id.* at 3–4.)

On June 29, 2011, the Second Circuit affirmed Judge Glasser's June 21, 2010 order forbidding the respondent from disseminating the presentence investigation report.  (ECF No. 14-27 at 1–2, 6.)[5]  The court warned Oberlander that "any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions . . . ." (*Id.* at 2, 6.)

On February 15, 2012, Judge Cogan ordered Oberlander and the respondent to show why they should not be held in contempt for violating the Second Circuit's February 14, 2011 order by revealing their identities in a February 5, 2012 New York Times article entitled "By Revealing Man's Past, Lawyer Tests Court Secrecy." (ECF No. 26 at 16–17.)[6]  Oberlander moved to quash or vacate the order to show cause, and made numerous baseless and inflammatory statements about Judge Glasser, Judge Cogan, and the federal judiciary.  (ECF No. 15-5.)[7]  On February 27, 2012, Judge Cogan referred the matter to the U.S. Attorney's Office to determine whether to prosecute Oberlander and the respondent for criminal contempt.  The U.S. Attorney's Office for the Eastern District recused itself and referred the matter to the U.S.

---

[5] The Second Circuit remanded in part to allow Judge Glasser to issue a "final determination" as to whether the respondent should be enjoined from disclosing the Sealed Materials outside of the presentence investigation report.  (ECF No. 14-27 at 2.)

[6] On July 31, 2012, the Miami Herald published an article entitled "High court reveals secret deal of Trump developer's crimes;" the article named Sater and appeared to reference information that had been redacted from the publicly filed petition.  (ECF No. 19 at 33–34.)

[7] These statements are detailed in the Court's August 13, 2018 Order.  (*See* ECF No. 26 at 17–18.)

Attorney's Office for the Northern District.  (ECF No. 15-7.)  The Northern District has concluded that investigation without filing charges.[8]

On July 23, 2014, Sater's counsel filed a disciplinary complaint against the respondent. (ECF No. 1 at 1.)  As noted above, on August 13, 2018, the Committee found that the respondent violated Rules 1.16(b), 3.3(f)(2), 8.4(a), 8.4(d), and 8.4(h) of the New York Rules of Professional conduct, and reserved judgment on the question of whether the respondent violated Rule 3.4(a)(6) for contravening court orders and disclosing the Sealed Materials.  (ECF No. 26 at 43.

The Committee denied the respondent's motion for reconsideration on October 24, 2018, (ECF No. 34.)  The respondent appealed this decision to the Second Circuit (ECF No. 31) and moved to stay the Committee's one-year sanction pending the appeal (ECF No. 37), which the Committee granted on November 7, 2018 (ECF No. 38).

## LEGAL STANDARD

The Committee is authorized to discipline an attorney if, after giving the attorney notice and an opportunity to respond, it finds by clear and convincing evidence that "[i]n connection with activities with this court," the attorney "engaged in conduct violative of the New York State Rules of Professional Conduct as adopted from time to time by the Appellate Divisions of the State of New York."  Local Rule 1.5(b)(5).  Discipline "may consist of a letter of reprimand or admonition, censure, suspension, or an order striking the name of the attorney from the roll of attorneys to the bar of this Court."  Local Rule 1.5(c)(1).

---

[8] That investigation was the subject of an appeal to the Second Circuit.  *Oberlander v. United States (In re Grand Jury Proceedings)*, 971 F.3d 40 (2d Cir. 2020).

## DISCUSSION

Rule 3.4(a)(6) prohibits attorneys from "knowingly engag[ing] in . . . illegal conduct or conduct contrary to these Rules."  The Committee charged the respondent with violating this rule "by knowingly engaging in illegal conduct by contravening court orders, disclosing the Sealed Materials, and attempting to obtain a settlement by threatening further illegal conduct."  (ECF No. 3 at 6.)

The Committee finds that the respondent violated Rule 3.4(a)(6) when he knowingly assisted Oberlander in contravening court orders by failing to destroy or return the presentence investigation report and publicly distributing or revealing the contents of the Sealed Materials. First, as Judge Glasser pointed out, the materials were sealed in 1998, when Sater pled guilty. Moreover, Judge Glasser, Judge Cogan and the Second Circuit ordered the respondent and Oberlander to return or destroy the presentence investigation report and to refrain from publicizing the Sealed Materials:

- On June 21, 2010, Judge Glasser permanently enjoined Oberlander and the respondent from disseminating the PSR and its contents and ordered the respondent to return the PSR to the U.S. Attorney's Office, an order that he repeated on July 20, 2010, after it was revealed that Oberlander had disobeyed the June 21st order.

-  On February 14, 2011 the Second Circuit enjoined Oberlander and the respondent from publicly distributing or revealing the contents of documents subject to sealing orders in the appellate proceedings or in any related proceedings before the EDNY and SDNY.

- On April 4 and April 11, 2011, Judge Cogan ordered Oberlander and the respondent to destroy or return any remaining electronic or paper copies of the PSR and other sealed documents.

- On May 13, 2011, Judge Cogan ordered that the respondent and Oberlander could not "extrapolate from sealed documents … [that which] could easily be combined with and thereby tainted by [the respondent's] knowledge of non-public sealed information."

- On June 29, 2011, the Second Circuit affirmed Judge Glasser's June 21, 2010 Permanent Injunction and admonished the respondent and Oberlander that "any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions . . . ."

The respondent and Oberlander repeatedly violated or threatened to violate these orders,

as detailed in the Committee's August 13, 2018 Order:

- Oberlander ignored Judge Glasser's June, 2010 order and retained the Sealed Materials, which prompted Judge Glasser to repeat the order in July, 2010; Oberlander also defied this directive.

- In the October 18, 2010 demand letter to Sater and other SDNY defendants, Oberlander wrote, "At this time, plaintiffs will very favorably consider settling the entirety of all claims known and unknown for their actual damages of $35,000,000 . . . .  It is the least amount which plaintiffs would be willing to accept for a quick settlement that avoids the dissemination."

- In the November 9, 2010 demand letter to Sater's counsel, Oberlander wrote, "If you wish Mr. Sater's activities lawfully kept quiet to any extent, stand still, stop filing motions and get out of the way so Plaintiffs can try to resolve the case before everything uploads to PACER and goes public."

- In that same letter, Oberlander wrote, "No power on this earth will much longer prevent as much lawful and legal worldwide dissemination of this Complaint and every document attached thereto or referenced therein as the public and press doing the dissemination think its value justifies."

- The respondent admitted at the February 14, 2011 Second Circuit oral argument that Oberlander still possessed electronic copies of the PSR.

- Oberlander had not yet destroyed or returned electronic and paper copies of the original PSR and other Sealed Materials when he and the respondent appeared before Judge Cogan in April 2011.

- On February 6, 2012, *The New York Times* published an article entitled "By Revealing Man's Past, Lawyer Tests Court Secrecy," that revealed both the respondent's and Oberlander's identities, in violation of the Second Circuit's order.

- Shortly after *The New York Times* article was released, several other articles surfaced, including one from *The Miami Herald* that published Sater's name and photograph, and discussed the contents of the Sealed Materials.

The record establishes convincingly that the respondent violated Rule 3.4(a)(6).  He and Oberlander persisted in their refusal to return or destroy the presentence investigation report in contravention of multiple court orders, and disseminated the Sealed Materials.  The respondent has expressed no remorse whatever for his conduct.

Accordingly, the Committee finds by clear and convincing evidence that the respondent violated Rule 3.4(a)(6).  The Committee previously found that the respondent should be suspended for six months for the violations identified in its 2018 order; in view of the seriousness of the violation of Rule 3.4(a)(6), the Committee concludes that an additional year suspension is warranted, for a total of eighteen months.

**SO ORDERED.**

s/Ann M. Donnelly

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Hon. Ann M. Donnelly, U.S.D.J.
Chair of the Committee on Grievances
For the United States District Court
Eastern District of New York

Dated: Brooklyn, New York
        June 13, 2024

Exhibit D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
In The Matter Of,                                            :
                                                             :
**RICHARD E. LERNER**, an attorney admitted to    :    **ORDER**
practice before this Court,
                                                   :    16-MC-2636 (AMD)
                                Respondent.        :
                                                             :
                                                             :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

The Committee on Grievances for the United States District Court for the Eastern District of New York (the "Committee") commenced this proceeding to determine whether the respondent committed ethical violations by participating in a scheme to publicize sealed documents from Felix Sater's criminal case. The Committee determined, by clear and convincing evidence, that he had. The respondent seeks to unseal the docket in its entirety.

On November 20, 2020, the Committee granted in part the respondent's motion to unseal the docket. (ECF No. 52 at 1.) However, the Committee directed that certain documents remain sealed—documents that implicated the interests of third parties, that disclosed sensitive details about government cooperation and investigations, or that had been sealed or redacted in other proceedings. (*Id.* at 6, 20.) Having given all relevant parties the opportunity to assert their positions with respect to unsealing, and having reviewed the entire docket again, the Committee addresses whether there is a basis for any documents on this docket to remained sealed.

# BACKGROUND

## I.    The Instant Motion

On August 13, 2018, the Committee suspended the respondent from the practice of law in this Court for six months.  (ECF No. 26.)  The respondent appealed the decision to the United States Court of Appeals for the Second Circuit, and the Committee stayed his suspension pending the appeal.  (ECF Nos. 38, 39.)  Over a month later, the respondent moved for an order unsealing the docket and all documents that had been filed in this proceeding, as well as an order declaring that he was not subject to any "gag orders."  (ECF No. 41.)  The Committee denied his motion because his appeal to the Second Circuit divested the Court of jurisdiction.

On December 12, 2019, the Second Circuit issued a mandate remanding the action to allow the Committee to consider the respondent's motion to unseal the docket.  (ECF No. 45 at 2.)  The Second Circuit also directed the Committee to clarify its reasons for certifying the suspension order for immediate appeal under Federal Rule of Civil Procedure 54(b).  (*Id.*)

On remand, the Committee asked the respondent and counsel for the Committee for a detailed summary of the public status of each document.  (ECF Nos. 50, 51.)  The Committee then reviewed the entire docket as well as the parties' initial submissions regarding unsealing. On November 20, 2020, the Committee issued an order pursuant to *Lugosch v. Pyramid Company of Onondaga*, 435 F.3d 110, (2d Cir. 2006) unsealing those documents that either did not implicate the interests of any non-parties, or that had already been made public on other dockets.  (ECF No. 52 at 5,7.)  In that same order, however, the Committee directed that all documents on the docket that had been sealed or redacted in other proceedings, that revealed the details of government investigations and cooperation agreements, or that implicated the interests of third parties remain sealed pending submissions from relevant non-parties and the respondent. (*Id.* at 6.)  No one objected to unsealing the docket within the 60-day period allotted.

Accordingly, on March 26, 2021, the Committee directed that copies of its November 20, 2020 order be served on the United States Attorneys' Offices for the Eastern and Northern Districts of New York, as well as lawyers for Felix Sater, Robert S. Wolf, Jill Levi and Robert Barnes McFarlane.  (ECF No. 62 at 2.)

In submissions on May 19, 2021 and February 3, 2022, the United States Attorney for the Eastern District of New York recommended that "very few documents should remain sealed," but requested that five documents remain sealed in their entirety, and that another 17 documents be filed with redactions because they referred to government investigations, details of Mr. Sater's cooperation with the government, or information derived from Mr. Sater's Pre-Sentence Report ("PSR").  (ECF No. 67 at 6-8; ECF No. 70 at 2.)  On March 3, 2022, the respondent objected to the government's sealing request.  (ECF No. 71.)  To date, no other interested parties have filed objections to the respondent's motion to unseal the docket.[1]

## II.   History of the Sealing Dispute

The sealing dispute before the Committee is over twelve years old.  The documents the respondent seeks to unseal were either originally filed in Felix Sater's 1998 criminal case before Judge I. Leo Glasser, or contain information related to or derived from it.  As Judge Glasser observed in a 2019 opinion, Sater's criminal case spawned "a titanic amount of litigation" pertaining "not to the crime for which he was sentenced . . . but to the law of sealing; that is, whether, and the extent to which the documents pertaining to the criminal proceedings should

---

[1] Frederick Oberlander, the respondent's client and another participant in the scheme to disseminate sealed materials from Sater's criminal case, is currently the subject of a parallel grievance proceeding before this Committee.  *See In re Oberlander*, No. 16-MC-2637.  He challenged the propriety of the Court's grievance proceedings against him on constitutional grounds, but has not challenged the government's sealing and redaction requests under the relevant legal standards.  (*See* ECF Nos. 59, 60, 61.)  The Committee addressed the majority of Mr. Oberlander's due process arguments in the October 24, 2018 order denying the respondent's Rule 60(b) motion for reconsideration.  (ECF No. 34 at 2.)

remain unavailable to the public.  Ever hydra-like, those filings spawned yet more filings, which themselves became subject to more unsealing requests." *United States v. Sater*, No. 98-CR-1101, 2019 WL 3288389, at *1 (E.D.N.Y. July 22, 2019).

To give some sense of just how massive this "hydra" of sealing litigation has become, there are at least 13 dockets in this District, the Southern District of New York, and the Second Circuit, that are in whole or in part consumed by litigation over the sealed documents in Felix Sater's criminal case.  There is the criminal case itself, *United States v. Sater*, 98-CV-1101 before Judge Glasser, as well as the original civil RICO suit filed by Oberlander in the Southern District of New York, *Kriss et al. v. BayRock Group LLC et al.* No. 10-CV-3959, in which Oberlander attached sealed materials from Sater's criminal case to the publicly-filed complaint, before Judge Naomi Reice Buchwald ordered that the docket be sealed.  Oberlander filed two additional cases in the Southern District—*Estate of Ernest Gottdiener, et al. v. Sater, et al.*, No. 13-CV-1824 and *Kriss, et al. v. Bayrock Group LLC, et al.*, No. 13-CV-3905—which were both before Judge Lorna Schofield.  Judge Schofield dismissed the first case, and Oberlander voluntarily dismissed the second.  (ECF No. 26 at 23.)

While litigation over the sealed documents in Sater's case originally took place on the criminal case docket, Judge Glasser eventually opened a derivative docket dedicated to making sealing determinations captioned *In the Matter of the Motion to Unseal Docket No. 98-1101*, 12-MC-150.

Oberlander's various appeals of Judge Glasser's sealing orders to the Second Circuit were docketed under the caption *United States of America v. Doe*, 10-2905, which appears as a direct appeal from Sater's criminal case, and *Roe v. United States of America*, 11-479, which in turn stems from Oberlander's petition for a writ of mandamus directing the district court to

4

unseal Sater's criminal docket.  *See Roe v. U.S.*, 414 F. App'x 327, 328 (2d Cir. 2011).  The

*United States of America v. Doe* docket represents the consolidation of six separate appeals filed

by Oberlander.  The docket in *Roe v. United States of America* remains sealed by order of the

Second Circuit.  (*Id.*)

        In 2011, in response to Oberlander's various appeals and ongoing refusal to destroy his

copies of Sater's PSR, then Chief Judge Raymond Dearie, at the Second Circuit's direction,

appointed Judge Brian M. Cogan as special master "to ensure the parties' compliance with [The

Second Circuit's] orders . . . and any that have been, or may hereafter be, entered by Judge

Glasser."  *Roe v. United States*, 428 F. App'x 60, 63 (2d Cir. 2011).  On August 22, 2012, after

Sater asked Judge Cogan to hold the respondent and Oberlander in contempt for violating the

Second Circuit's prior sealing orders, Judge Cogan opened two additional miscellaneous

dockets, *In the Matter of the Motion for Civil Contempt by John Doe*, 12-MC-557, which was

sealed at the time, and *In re Public Documents filed in 12-MC-557*, 16-MC-706, which was open

to the public.

        On April 21, 2017, the Second Circuit appointed Judge Pamela K. Chen as special master

to review various motions to unseal the two Second Circuit dockets referenced above.  (ECF No.

42-3 at 1.)  To facilitate her review, Judge Chen opened two more dockets in this District.  The

first docket, *In Re the Appointment of Pamela K. Chen as Special Master*¸17-MC-1282, was

sealed to everyone except for the government and Felix Sater.  The second docket, *In Re Public*

*Docket – the Appointment of Pamela K. Chen as Special Master*, 17-MC-1302, was available to

the public, but many of the documents filed there were sealed to comply with prior sealing orders

from the Second Circuit.  (*Id.* at 5.)

Finally, after Sater filed disciplinary complaints against the respondent and Oberlander in July 2014, another two dockets were created dedicated to these disciplinary proceedings, *In Re Frederick Martin Oberlander*, 16-MC-2637, and *In Re Richard E. Learner¸* 16-MC-2636, both of which contain sealed material from Sater's criminal case.

Thus, the docket the respondent seeks to unseal is merely one of 13 heads of this unsealing litigation "hydra." Judges Glasser, Cogan and Chen have devoted significant time and effort to determining what materials from Sater's case should be unsealed, and their conclusions have been memorialized in multiple different orders, three of which are summarized below.

In 2013, after the Second Circuit affirmed Judge Glasser's permanent injunction on the dissemination of Sater's PSR and derivative materials, and remanded the case for additional proceedings regarding other sealed materials, Judge Glasser conducted "an exhaustive review" of Sater's criminal docket. This review included hearings in 2012—on October 9th and 23rd, and on November 16th, and in 2013—on January 18th and November 14th. *In the Matter of the Motion to Unseal Docket No. 98-1101*, 12-MC-150, ECF Nos. 42, 104. At the conclusion of these hearings, Judge Glasser "unsealed a large number of documents and determined that a smaller number should remain under seal, in whole or in part." *Sater*, 2019 WL 3288389, at *1; *see also In the Matter of Motion to Unseal Docket No. 98-1101*, 12-MC-150, ECF Nos. 42, 104. In a sealed order issued on March 13, 2013, Judge Glasser emphasized the need to keep the details of both Sater's PSR and his government cooperation secret. (ECF No. 16-3.)

In 2016, Judge Cogan conducted his own thorough review of the sealed documents on the civil contempt docket. *In re Motion for Civ. Contempt by John Doe*, No. 12-MC-0557, 2016 WL 3460368, at *1 (E.D.N.Y. June 22, 2016), *aff'd sub nom. Doe v. Lerner*, 688 F. App'x 49 (2d Cir. 2017). Like Judge Glasser, Judge Cogan determined that Sater's PSR and any information

sourced from it must remain sealed pursuant to *United States v. Charmer Indus., Inc.*, 711 F.2d

1164 (2d Cir. 1983).  Judge Cogan also observed that many of the documents that were subject

to the unsealing motions before him had been "sealed in the Supreme Court, the Second Circuit,

or were sealed in the district court and upheld by the Second Circuit."  *In re Motion for Civ.*

*Contempt by John Doe*, 2016 WL 3460368, at *5.  Judge Cogan concluded that he did "not have

authority, sitting in the district court as Special Master, to disturb the decisions issued by a higher

court."  *Id.*  He also added that "sealing [would never] be meaningful if a party could

immediately thereafter move to unseal, thereby setting in motion (particularly in cases with

litigious parties whose express purposes is to unseal information) a never-ending cycle of

briefing and decisions from which to appeal."  (*Id.*)  At the conclusion of Judge Cogan's review,

34 documents on the civil contempt docket remained sealed or redacted.  (*Id.* at 7.)

In 2017, after Judge Chen replaced Judge Cogan as special master, she too explicitly

addressed the sealing of Felix Sater's criminal case materials.  (*See* ECF No.  42-3.)  In her 39-

page report and recommendation, issued on July 5, 2017, adopted in its entirety by the Second

Circuit, *United States v Sater*, No. 10-2905, ECF No. 494 (2d Cir. Feb. 9, 2018), Judge Chen

concluded that the majority of the documents on the Second Circuit dockets could be unsealed in

light of the wide dissemination of information relating to Sater's criminal case.  (ECF No. 42-3

at 10.)

However, Judge Chen held that the materials from Sater's criminal case that were

attached to the complaint in *Kriss v. Bayrock Group LLC*, No. 10-CV-3959, including Sater's

cooperation and proffer agreements, were "not judicial documents as to which a right of access

attached and that they were properly sealed in the SDNY Action."  (*Id.* at 14-15.)  Judge Chen

allowed the first pages of the cooperation and proffer agreements to be unsealed because Judge

Glasser had previously unsealed them.  (*Id.* at 16.)  Judge Chen rejected the "circular" argument of

the moving parties that Sater's proffer and cooperation agreements were judicial documents; "[s]urely a document has to be relevant to a proceeding other than one over its own unsealing in order to qualify as a judicial document to which the presumptive right of access attaches." (*Id.*) Judge Chen also reiterated that Sater's PSR was not subject to a right of access and that information sourced from it should remain sealed. (*Id.*) Finally, Judge Chen endorsed various redactions to other documents from or referencing Sater's case because they were necessary to protect the integrity of government investigations and ensure the safety of Sater and his family. (*Id.* at 20-23.)

These three sealing orders issued by Judges Glasser, Cogan and Chen are not the only orders addressing the sealing of documents derived from Sater's criminal case, but they are among the most comprehensive, and demonstrate the vast judicial resources that have already been expended evaluating the sealing issues now before the Committee.

## LEGAL STANDARD

"There is a presumption of a public right to view judicial documents." *Rogers v. Henry*, No. 16-CV-5271, 2017 WL 5495805, at *5 (E.D.N.Y. Sep. 12, 2017) (citation omitted). The right, however, "is not absolute." *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 598 (1978). While there is a "need for federal courts to have a measure of accountability and for the public to have confidence in the administration of justice[,]" *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*"), "the decision as to access is one best left to the sound discretion of the trial court." *Nixon*, 435 U.S. at 599. The party opposing access has the burden of demonstrating the need for secrecy. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004).

The presumption of access is secured in "a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). "Both the common law and the First Amendment require courts to

first determine whether the presumption of access applies to the documents at issue." *John Doe Contempt Order*, 2016 WL 3460368, at *2.  "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*").  Instead, the document "must be relevant to the performance of the judicial function and useful in the judicial process . . . to be designated a judicial document." *Id*.

The common law presumption of access attaches immediately to documents designated as "judicial documents." *Amodeo I*, 44 F.3d at 146-47.  The Court then balances the weight of the presumption of access against countervailing interests, including "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 120 (citation omitted).  "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo II*, 71 F.3d at 1049.  The common law presumption of access can be overcome if the party opposing disclosure demonstrates a sufficiently compelling countervailing.  *See Lugosch*, 435 F.3d at 120.

While the presumption of access "rooted in the First Amendment" occurs "in a strong form," it does not attach to all judicial documents.  *See John Doe Contempt Order*, 2016 WL 3460368, at *7 ("The public's First Amendment right of access applies only to certain documents.").  "First, the public has a right to gain access to judicial records (1) that 'have historically been open to the press and general public,' and (2) where 'public access plays a significant positive role in the functioning of the particular process in question.'"  *In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 409 (2d Cir. 2009)

(quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004)).  Alternatively,

courts consider whether the documents are "derived from or a necessary corollary of the capacity

to attend the relevant proceedings." *Hartford Courant Co.*, 380 F.3d at 93.  "Once the First

Amendment right of access attaches, the proponent of sealing must overcome the presumption of

access by demonstrating a substantial probability of harm to a compelling interest." *John Doe*

*Contempt Order*, 2016 WL 3460368, at *3.

**DISCUSSION**

**I.**     **Sealing**

The government requests that five documents, ECF Nos. 15-9, 15-10, 15-13, 16-3, and

30-8, remain sealed.  In addition, the government asks that 21 documents be unsealed subject to

certain redactions, and that four documents, which have already been redacted, be unsealed, so

long as the current redactions remain in place.  (ECF Nos. 67 at 7-8, 70 at 2.)  The government

also requests that those portions of its sealing submissions that describe sensitive details

regarding the extent and nature of Mr. Sater's government cooperation be redacted.  (ECF Nos.

67 at 4, 70 at 4.)

According to the government, the documents it seeks to preclude from public view fall

into one of four categories: (1) documents that detail the nature of Sater's cooperation with the

government; (2) documents that if made public would compromise the integrity of government

investigations; (3) documents that reference Sater's PSR or otherwise contain informed derived

from it; (4) documents that have been sealed pursuant to the order of another court.  (ECF No. 67

at 6.)

The majority of the documents the government seeks to seal or redact are "judicial

documents" to which the presumption of access applies. *Lugosch*, 435 F.3d at 119.  Those

documents include various complaints, briefs, declarations, hearing transcripts and orders either

10

filed in this proceeding or the "titanic amount of litigation" derived from the *Kriss et al. v. BayRock Group LLC et al.* matter.  These documents are "relevant to the performance of the judicial function and useful in the judicial process."  *Amodeo I*, 44 F.3d at 145.

Despite this presumption of access, the government's bases for sealing these judicial documents remain sound.  The Committee finds that the government maintains its "unique interest in keeping documents relating to cooperation sealed, even after an investigation is complete."  *John Doe Contempt Order*, 2016 WL 3460368, at *5.  The release of the details of Mr. Sater's cooperation could cause potential future cooperators "to resist involvement where cooperation is desirable."  *Amodeo II*, 71 F.3d at 1050.  Accordingly, this "effect should be weighed against the presumption of access."  *Id.*

A subset of the documents that the government seeks to seal are not judicial documents at all, and accordingly are not entitled to the same presumption of access.  These documents include Mr. Sater's cooperation and proffer agreements, which are simply contracts between the cooperator and the government.  *See Santobello v. New York*, 404 U.S. 257 (1971); *United States v. Rexach*, 896 F.2d 710 (2d Cir. 1990) *cert. denied*, 498, U.S. 969 (1990).

Mr. Sater's PSR was not filed on the docket in this proceeding, but many of the documents the government seeks to seal or redact contain information derived from the PSR.  Judges Cogan and Glasser have determined on multiple occasions, and the Second Circuit has affirmed, that "any documents containing information sourced from the PSR, must remain sealed" given the highly sensitive nature of the information at issue.  *John Doe Contempt Order*, 2016 WL 3460368, at *4; *see also Roe v. United States*, 428 F. App'x 60, 64-67 (noting Judges Glasser and Cogan's separate orders directing Oberlander and his associates to return to EDNY, or destroy, all copies of the PSR in their possession).

The First Amendment right of access does not attach to PSRs.  *United States v. Alcantara*, 396 F.3d 189, 197 n.6 (2d Cir. 2005) ("Courts have generally held, however, that there is no First Amendment right of access to pre-sentence reports.").  A "district court should not authorize disclosure of a presentence report to a third person in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice."  *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1175 (2d Cir. 1983).  No such showing has been made in this proceeding.

In its November 20, 2020 order, the Committee explained that it saw no basis for unsealing those documents that other courts and judges, including the Second Circuit and Judges Glasser, Chen and Cogan, had already sealed or redacted.  (ECF No. 52 at 5.)  The government maintains that these documents continue to implicate its interests, and there is no evidence that the circumstances underlying those orders have changed "such that the compelling interests either no longer exist, are no longer subject to a substantial risk of harm, or are no longer effectively protected by sealing."  *John Doe Contempt Order*, 2016 WL 3460368, at *5.

The respondent argues that there is no basis for sealing the complaint in *Kriss et al. v. BayRock Group LLC et al.*, No. 10-CV-3959, the action which gave rise to this disciplinary proceeding, because the document was never sealed by any other court and because "it is the document upon which the claim of criminal extortion is based."[2]  (ECF No. 71 at 2.)  As an initial matter, the respondent is wrong that the document was never sealed by another court. Judge Buchwald in the Southern District of New York sealed the complaint four days after it was

---

[2] The "document upon which the claim of criminal extortion is based" is not the complaint in *Kriss et al. v. BayRock Group LLC et al.*, No. 10-CV-3959, ECF No. 1 (S.D.N.Y. May 10, 2010), but rather two letters between Mr. Oberlander and Brian Herman, Esq. evidencing criminal extortion.  (*See* ECF Nos. 13-22, 13-24.) The government does not oppose the unsealing of either letter.

originally filed in 2010, as the respondent is surely aware, since he included Judge Buchwald's

sealing order as an exhibit in his opposition to the Committee's Order to Show Cause.  (*See* ECF

No. 13-4); *see also United States v. Sater*, No. 98-CR-1101, 2019 WL 3288389, at *4 (E.D.N.Y.

July 22, 2019) ("the complaint in *Kriss v. Bayrock Group LLC*, No. 10-CV-3959 (S.D.N.Y.) . . .

remains partially under seal in the Southern District.").

Furthermore, the government has requested the document, filed as both ECF No. 13-2

and ECF No. 13-23 be redacted rather than sealed.[3]  (ECF No. 70 at 2.)  The complaint is 165

pages long, and the government has sought redaction of only 13 pages.  *Id.*  The government's

proposed redactions cover materials that either describe the scope of Mr. Sater's government

cooperation or refer to the PSR.  Accordingly, the Committee finds that the government's

redactions are both "essential to preserve higher values" and are "narrowly tailored to serve that

interest." *Lugosch*, 435 F.3d 110, at 120.

According to the respondent, the "government's position as to the unsealing of the March

13, 2013 Glasser order (item 16-3) has been anxiously awaited because the direction that [related

litigation takes] will be influenced by whether Felix Sater was actually sentenced in public."

(ECF No. 71 at 1.)  The question before the Committee is whether the document should remain

sealed for the reasons that prompted other courts to seal it.  (ECF No. 70 at 2.)  To date, the

document remains sealed on the docket in *United States v. Sater*, 98-CR-1101, ECF No. 221

(E.D.N.Y. Mar. 13, 2013).  The Committee has reviewed the document, and confirmed that it

---

[3] The respondent argues that ECF No. 13-23 is not the same as ECF No. 13-2.  (ECF No. 3.)  The
Committee has reviewed both documents.  ECF No. 13-2 is a copy of the complaint filed in *Kriss et al.
v. BayRock Group LLC et al.*, No. 10-CV-3959, ECF No. 1 (S.D.N.Y. May 10, 2010).  ECF No. 13-23
contains the same document, but with redactions Oberlander proposed to Brian Herman, Esq. on
October 18, 2010.  Because the text obscured by all of the proposed redactions is still legible, the sealing
analysis for the two documents is the same.

contains multiple details of Mr. Sater's cooperation.  (*See* ECF No. 16-3 at 6-7.)  Accordingly continued sealing is warranted.

## II.      Rule 54(b) Certification

In its August 13, 2018 disciplinary order, the Committee deferred its ruling on the charge that the respondent violated New York Rule of Professional Conduct 3.4(a)(6) by disclosing sealed materials from Sater's criminal case and thus "knowingly engaging in illegal activity by contravening court orders" pending the outcome of criminal proceedings by the U.S. Attorney for the Northern District of New York.  (ECF No. 26 at 37.)

In his August 27, 2018 motion for reconsideration of the order suspending him from practice, the respondent also requested that the Committee direct entry of a final judgment, pursuant to Federal Rule of Civil Procedure Rule 54(b), as to the charges on which the Committee had already ruled.  (ECF No. 28 at 24.)  The respondent pointed out that the Committee's deferral of judgment on the Rule 3.4(a)(6) charge could be a "possible impediment to appellate review based on the fact that a determination on all of the claims has not been reached."  *Id.*

In its October 24, 2018 order denying the respondent's motion for reconsideration, the Committee granted the respondent's Rule 54(b) motion and directed entry of a "final judgment as to the claims that have been adjudicated" having determined that there was no just reason for further delay.  (ECF No. 34 at 3.)  When the Second Circuit remanded this action to the Committee so that it could consider the respondent's motion to unseal the docket, it also directed the Committee to clarify its reasons for certifying the suspension order for immediate appeal under Rule 54(b).  (ECF No. 45 at 2.)

At the time the Committee first granted the respondent's request for Rule 54(b) certification, the U.S. Attorney's Office for the Northern District of New York was pursuing a criminal investigation of the respondent and Oberlander based on the conduct that is the subject of the Rule 3.4(a)(6) charge.  However, that office recently informed the Committee that its investigation is complete.  Thus, the respondent's request for Rule 54(b) certification is denied at this time.  The Committee will address the respondent's Rule 3.4(a)(6) charge in a separate order to follow.

## III.    "Gag Order"

Finally, the respondent demands "that there must be a declaration there is no gag order whatsoever on respondent's dissemination of any of the documents filed herein, regardless of whether they are or are not unsealed."  (ECF No. 41 at 8.)  The respondent is obligated to follow the law, and that includes abiding by orders issued by this Committee and other courts, many of which pertain to the documents that remain sealed on this docket.  *See, e.g.*, *United States v. Sater*, 98-cr-1101, ECF No. 111 (E.D.N.Y. May 13, 2013) ("Unless and until Judge Glasser orders this information unsealed, it remains subject to the Second Circuit's injunction.  It seems obvious that [Oberlander] is seeking to fatally undermine the purpose of the injunctions by publicizing information that would render them ineffective."); *Roe v. United States*, 428 F. App'x 60, 63 (2d Cir. 2011) (affirming Judge Glasser's permanent injunction prohibiting the dissemination of Sater's PSR and admonishing Oberlander for filling frivolous appeals).

The respondent's repeated attempts to disseminate sealed materials over the past 12 years have subjected him to ethical sanction and criminal investigation.  If he does not abide by the well-developed law governing the sealing of documents, he will be subject to additional civil and criminal liability.

Judges Glasser, Cogan and Chen and the Second Circuit have adjudicated these sealing issues multiple times over the past 12 years.  Every court that has reviewed an unsealing motion pertaining to Felix Sater's criminal case has upheld the ongoing sealing or redaction of those documents, which, if made public, would compromise the safety of third persons, the integrity of law enforcement investigations, and the protection of a cooperator's anonymity.  *See, e.g., In re Applications to Unseal 98-CR-1101*, 568 F. App'x 68 (2d Cir. 2014).  The Committee sees no compelling reason to arrive at a different conclusion.

## CONCLUSION

For the reasons explained above, the Clerk of Court is directed to unseal the documents in Exhibit A labeled "unseal."  Those documents labeled "seal" in the result column are to remain sealed.  The government is directed to file unsealed copies of those documents labeled "redact," with the referenced pages redacted, within 60 days.  Finally, to the extent that any of the documents the Committee ordered unsealed in its November 20, 2020 order are still sealed, the Clerk of Court is directed to unseal those documents as well.

**SO ORDERED.**

                                       s/Ann M. Donnelly
                                         Hon. Ann M. Donnelly, U.S.D.J.
                                         Chair of the Committee on Grievances
                                         For the United States District Court
                                         Eastern District of New York

Dated: Brooklyn, New York
        May 5, 2023

## EXHIBIT A[4]

| Docket | Date | ECF | Gov't Position | Result | Basis |
|---|---|---|---|---|---|
| ECF No. 1 | 10/19/2016 | 1 | Unseal | Unseal | |
| | | 1- 1 at Ex. B | Unseal | Unseal | |
| | | 1-1 at Ex. E | Unseal (As Filed) | Unseal (As Filed) | |
| | | 1-1 at Ex. F | Unseal | Unseal | |
| ECF No. 6 | 12/20/2016 | 6 | Unseal | Unseal | |
| ECF No. 7 | 2/22/2017 | 7 | Unseal | Unseal | |
| ECF No. 11 | 8/28/2017 | 11 | Unseal | Unseal | |
| ECF No. 12 | 9/6/2017 | 12-1 | Unseal | Unseal | |
| | | 12-2 | Redact (2) | Redact | Sealed by other court; Details of cooperation |
| | | 12-3 | Redact (2) | Redact | Sealed by other court; Details of cooperation |
| | | 12-5 | Redact (2-19) | Redact | Sealed by other court; Details of cooperation |
| | | 12-6 | Redact (2-18) | Redact | Sealed by other court; Details of cooperation |
| | | 12-8 | Unseal | Unseal | |
| | | 12-14 | Unseal (As Filed) | Unseal (As Filed) | |
| ECF No. 13 | 9/6/2017 | 13-2 | Redact (2, 18, 20, 22, 38-39, 41-44, 46, 48) | Redact | Sealed by other court; PSR |
| | | 13-13 | Redact (16-17) | Redact | Sealed by other court; PSR |
| | | 13-22 | Unseal | Unseal | |
| | | 13-23 | Redact (2, 20, 23, 25, 30, 41-42, 44-47, 49-51) | Redact | Sealed by other court; PSR |
| ECF No. 14 | 9/6/2017 | 14-1 | Redact (30, 50, 56) | Redact | Sealed by other court; PSR |
| | | 14-6 | Unseal | Unseal | |
| | | 14-8 | Redact (12-13, 43, 56) | Redact | Sealed by other court; PSR |

---

[4] On March 2, 2022, the respondent requested that the government's February 16, letter (ECF No. 70) be unsealed in unredacted form, and that his 165-page submission be unsealed, too. Those requests are denied.  The redacted portions of the government's submission include highly sensitive information, and sealing is warranted.  The respondent's request that his own lengthy submission be unsealed is also denied, because, to the Committee's knowledge, he has not formally served the request on the government or any interested parties.

| Docket | Date | ECF | Gov't Position | Result | Basis |
|--------|------|-----|----------------|--------|-------|
| | | 14-16 | Redact (10, 14, 27-28) | Redact | Sealed by other court; PSR |
| | | 14-18 | Unseal | Unseal | |
| ECF No. 15 | 9/6/2017 | 15-1 | Unseal (As Filed) | Unseal (As Filed) | |
| | | 15-8 | Redact (5-8) | Redact | Sealed by other court; Integrity of investigations |
| | | 15-9 | Seal | Seal | Sealed by other court |
| | | 15-10 | Seal | Seal | Sealed by other court |
| | | 15-12 | Redact (1-3, 5) | Redact | Sealed by other court; Integrity of investigations |
| | | 15-13 | Seal | Seal | Integrity of investigation |
| | | 15-15 | Unseal | Unseal | |
| ECF No. 16 | 9/6/2017 | 16-3 | Seal | Seal | Sealed by other court; Details of Cooperation |
| | | 16-5 | Unseal | Unseal | |
| ECF No. 17 | 9/6/2017 | 17-2 | No position | Unseal | |
| | | 17-13 | Unseal | Unseal | |
| | | 17-15 | Unseal | Unseal | |
| ECF No. 18 | 9/6/2017 | 18 | Redact (83-84) | Redact | Details of cooperation |
| ECF No. 19 | 9/6/2017 | 19 | Redact (8-10, 33) | Redact | PSR |
| ECF No. 20 | 9/6/2017 | 20 | Redact (9) | Redact | Details of cooperation |
| ECF No. 21 | 9/7/2017 | 21-1 | Unseal | Unseal | |
| ECF No. 25 | 6/22/2018 | 25-1 | Unseal | Unseal | |
| ECF No. 26 | 8/13/2018 | 26 | Unseal | Unseal | |
| ECF No. 28 | 8/27/2018 | 28 | Redact (14) | Redact | Details of cooperation |
| ECF No. 29 | 8/29/2018 | 29-2 | Redact (18) | Redact | Details of cooperation |
| ECF No. 30 | 9/7/2018 | 30-1 | Unseal | Unseal | |
| | | 30-2 | Redact (3-20) | Redact | Sealed by other court |
| | | 30-3 | Redact (3) | Redact | Sealed by other court; Details of Cooperation |
| | | 30-4 | Redact (3) | Redact | Sealed by other court; Details of Cooperation |

| Docket | Date | ECF | Gov't Position | Result | Basis |
|--------|------|-----|----------------|--------|-------|
| | | 30-5 | Redact (3-19) | Redact | Sealed by other court; Details of Cooperation |
| | | 30-8 | Seal | Seal | Sealed by other court |
| | | 30-9 | Unseal (As Filed) | Unseal (As Filed) | |
| ECF No. 31 | 9/12/2018 | 31-1 | Unseal | Unseal | |
| ECF No. 32 | 9/13/2018 | 32 | Unseal | Unseal | |
| ECF No. 39 | 11/26/2018 | 39-1 | Unseal | Unseal | |
| ECF No. 48 | 2/12/2020 | 48-1 | Unseal | Unseal | |
| ECF No. 67 | 5/19/2021 | 67 | Seal | Seal | Details of Cooperation |
| ECF No. 68 | 5/19/2021 | 68 | Unseal (As Filed) | Unseal (As Filed) | |
| ECF No. 70 | 2/16/2022 | 70 | Seal | Seal | Details of Cooperation |

Exhibit E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————————x

In The Matter Of,

**RICHARD E. LERNER**, an                              **ORDER**
attorney admitted to practice before this              16-MC-2636
Court,
                       Respondent.

————————————————————————x

On August 13, 2018, the Committee on Grievances for the United States District Court

for the Eastern District of New York suspended the respondent from the practice of law in this

Court for six months.  (ECF No. 26.)  The respondent appealed the decision to the United States

Court of Appeals for the Second Circuit, and the Committee stayed his suspension pending the

appeal.  (ECF Nos. 38, 39.)  Over a month later, the respondent moved for an order unsealing the

docket and all documents that have been filed in this proceeding as well as an order declaring

that the respondent is not subject to any gag orders.  (ECF No. 41.)  The Committee denied his

motion because his appeal to the Second Circuit divested the district court of jurisdiction.

On December 12, 2019, the Second Circuit issued a mandate remanding the action to

allow the Committee to consider the respondent's motion to unseal the docket.  (ECF No. 45 at

2.)  The Second Circuit also directed the Committee to clarify its reasons for certifying the

suspension order for immediate appeal under Federal Rule of Civil Procedure 54(b).  (*Id*. at 2.)

I have reviewed the entire docket as well as the parties' initial submissions regarding

unsealing.  (ECF Nos. 41, 42.)  On remand, I asked the respondent and counsel for the

Committee to provide a detailed summary of the public status of each document.  (ECF Nos. 50,

51.)  For the reasons that follow, the respondent's motion is granted in part.

**DISCUSSION**

Familiarity with the facts is assumed.  The respondent argues that "[m]aintaining [the] secrecy of this docket is 'fundamentally anti-democratic'" and "hinder[s] his First Amendment rights."  (ECF No. 41 ¶ 5.)  Counsel for the Committee responds that "a blanket unsealing of the entire docket raises a number of issues" (ECF No. 42 ¶ 7), including the confidentiality interests of non-parties, the safety of individuals, the integrity of law enforcement investigations and the protection of a cooperator's anonymity.

The nature of this matter—a disciplinary proceeding based in part on the respondent's disclosure of sealed materials in contravention of court orders—complicates this decision.  Some of the documents filed in this matter have been sealed in other proceedings, including by the Second Circuit, the Honorable I. Leo Glasser, and other judges.  At least two other judges have reviewed motions to unseal documents by the respondent—the Honorable Pamela Chen in a Special Master report to the Second Circuit and the Honorable Brian Cogan in a civil contempt case against the respondent.  *See* Report of Special Master, *Richard Roe v. United States*, No. 10-2905, slip opinion (2d. Cir. Sept. 20, 2017), ECF No. 472; *In re Motion for Civil Contempt By John Doe ("John Doe Contempt Order")*, No. 12-MC-557, 2016 WL 3460368 (E.D.N.Y. June 20, 2016).  Accordingly, I must consider the findings made by other courts that supported sealing and continued sealing of documents in other proceedings.

**I.    The Right to Access**

"There is a presumption of a public right to view judicial documents."  *Rogers v. Henry*, No. 16-CV-5271, 2017 WL 5495805, at *5 (E.D.N.Y. Sep. 12, 2017) (citation omitted).  The right, however, "is not absolute."  *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 598 (1978).  While there is a "need for federal courts to have a measure of accountability and for the public to

have confidence in the administration of justice[,]" *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*"), "the decision as to access is one best left to the sound discretion of the trial court." *Nixon*, 435 U.S. at 599.  The party opposing access has the burden of demonstrating the need for secrecy.  *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004).

The presumption of access is secured in "a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013).  "Both the common law and the First Amendment require courts to first determine whether the presumption of access applies to the documents at issue." *John Doe Contempt Order*, 2016 WL 3460368, at *2.  "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*").  Instead, the document "must be relevant to the performance of the judicial function and useful in the judicial process . . . to be designated a judicial document." *Id*.

The common law presumption of access attaches immediately to documents designated as "judicial documents." *Amodeo I*, 44 F.3d at 146-47.  The Court then balances the weight of the presumption of access against countervailing interests, such as "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citation omitted). "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo II*, 71 F.3d at 1049.  The common law

3

presumption of access can be overcome if a sufficiently compelling countervailing interest is demonstrated.  *See Lugosch,* 435 F.3d at 120.

While the First Amendment presumption of access is stronger, it does not immediately attach to all judicial documents.  *See John Do*e *Contempt Order*, 2016 WL 3460368, at *7 ("The public's First Amendment right of access applies only to certain documents.").  The Second Circuit has applied two approaches in determining whether the First Amendment applies to a particular document.  "First, the public has a right to gain access to judicial records (1) that 'have historically been open to the press and general public,' and (2) where 'public access plays a significant positive role in the functioning of the particular process in question.'"  *In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 409 (2d Cir. 2009) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004)).  Alternatively, courts consider whether the documents are "derived from or a necessary corollary of the capacity to attend the relevant proceedings."  *Hartford Courant Co.*, 380 F.3d at 93.  "Once the First Amendment right of access attaches, the proponent of sealing must overcome the presumption of access by demonstrating a substantial probability of harm to a compelling interest."  *John Doe Contempt Order*, 2016 WL 3460368, at *3.

## II.  Application

There are approximately seventy docket entries in this matter, the majority of which are currently sealed.  Many of these entries have multiple document attachments, and some attachments contain multiple sub-attachments.  This complicates my review of each document as it "creates a matryoshka doll, whereby information from a sealed document is found within another sealed document, which is found within another sealed document, and so on."  *John Doe Contempt Order*, 2016 WL 3460368, at *5.

Nevertheless, a majority of these documents can be unsealed with little analysis because they were not sealed by a prior court order and do not implicate the interests of any non-parties.[1] The remaining sealed documents fall into three general categories: (a) sealed documents made publicly available on other dockets, (b) information sealed or redacted in prior or related proceedings, and (c) documents implicating the interests of non-parties.

### a.  Sealed Documents Made Publicly Available on Other Dockets

A number of sealed documents in this matter are already publicly available on other dockets.  No further analysis or weighing of competing interests is permitted, much less required; "the cat is out of the bag, the genie is out of the bottle," and the "court lacks power to seal information that, although once sealed, has been publicly revealed."  *In re Application to Unseal 98 Cr. 1101 (ILG)*, 891 F. Supp. 2d 296, 300 (E.D.N.Y. 2012) (collecting cases).  Accordingly, these documents will be unsealed.

### b.  Information Sealed or Redacted in Prior or Related Proceedings

Some documents filed in this case have been sealed or redacted in other proceedings, by either the Second Circuit, Judges Glass, Chen, or Cogan, or by a judge in a related criminal case. The judges in each proceeding ordered the particular document sealed or redacted subject to a balancing of the public right to view judicial documents against the interests of the safety of persons, integrity of law enforcement investigations, and the protection of a cooperator's anonymity.  *See, e.g.*, *In re Application to Unseal 98 Cr. 1101 (ILG)*, 891 F. Supp. 2d 296, 300 (E.D.N.Y. 2012).  As the Chair of the Committee on Grievances, I see no basis for disturbing these judgments at this time.  However, if the circumstances underlying those orders have changed "such that the compelling interests either no longer exist, are no longer subject to a

---

[1]  A document-by-document unsealing analysis is summarized in Exhibit A.

substantial risk of harm, or are no longer effectively protected by sealing," continued sealing or redactions would be inappropriate. *John Doe Contempt Order*, 2016 WL 3460368, at *5. Therefore, the proponents of sealing or redacting a document sealed or redacted in another proceeding, all of whom are non-parties to this grievance matter, must be permitted to intervene in this proceeding to safeguard their interests.

### c. Documents Implicating the Interests of Third Parties

Finally, there are sealed documents on this docket that implicate the interests of non-parties.  The Court cannot make an informed decision about whether to unseal these documents without hearing from these parties; they must be permitted to intervene in this proceeding to argue in favor of continued sealing or redacting of each document in light of the common law and First Amendment principles discussed above.

## III.    Protocol for Unsealing

Sealed or redacted documents falling in the latter two categories—documents sealed or redacted in other proceedings and documents implicating the interest of third parties—will remained sealed on this docket pending submissions from relevant non-parties and the respondent.  The respondent is directed to serve this order on the relevant non-parties, and file proof of service on ECF no later than December 18, 2020.  Within sixty days of the date of service of this order, the non-parties must file with the Court the basis for continued sealing or redaction of each document for which its interests are implicated.  The respondent will have sixty days to file a response.

The Court will then conduct an individualized review of each document to determine (a) the weight of presumption of public access that should be afforded to the document, (b) the identification and weight of any countervailing interest supporting continued sealing or

redaction, and (c) whether the countervailing interests rebut the presumption of public access.

*See Giuffre v. Maxwell*, 2020 WL 154377, at *1 (S.D.N.Y. Mar. 31, 2020).

## IV.   **Exhibit A**

| Docket | Date | Document | Ex. | Document Category | Result |
|---|---|---|---|---|---|
| ECF No. 1 | 10/19/2016 | 1 | | Third Party Interest | Sealed |
| | | 1-1 | A | Publicly Available | Unseal |
| | | | B | Third Party Interest | Sealed |
| | | | C | Publicly Available | Unseal |
| | | | D | Publicly Available | Unseal |
| | | | E | Sealed/Redacted in other Proceedings | Sealed |
| | | | F | Third Party Interest | Sealed |
| | | | G | Publicly Available | Unseal |
| | | | H | Publicly Available | Unseal |
| | | | I | Publicly Available | Unseal |
| | | | J | Publicly Available | Unseal |
| | | | K | Publicly Available | Unseal |
| | | | L | Publicly Available | Unseal |
| | | | M | Publicly Available | Unseal |
| | | | N | Publicly Available | Unseal |
| | | | O | Publicly Available | Unseal |

|  |  |  | P | Publicly Available | Unseal |
|---|---|---|---|---|---|
|  |  | 1-2 |  | No interests | Unseal |
|  |  | 1-3 |  | No interests | Unseal |
|  |  | 1-4 |  | No interests | Unseal |
| ECF No. 2 | 10/20/2016 | 2 |  | No interests | Unseal |
| ECF No. 3 | 11/18/2016 | 3 |  | No interests | Unseal |
|  |  | 3-1 |  | No interests | Unseal |
| ECF No. 4 | 11/18/2016 | 4 |  | No interests | Unseal |
| N/A | 11/18/2016 | No document |  | Administrative Order | Unseal |
| ECF No. 5 | 12/1/2016 | 5 |  | No interests | Unseal |
| N/A | 12/1/2016 | No document |  | Administrative Order | Unseal |
| ECF No. 6 | 12/20/2016 | 6 |  | Third Party Interest | Sealed |
| N/A | 12/22/2016 | No document |  | Administrative Order | Unseal |
| ECF No. 7 | 2/22/2017 | 7 |  | Third Party Interest | Sealed |
| N/A | 2/22/2017 | No document |  | Administrative Order | Unseal |
| ECF No. 8 | 4/27/2017 | 8 |  | No interests | Unseal |
| ECF No. 9 | 4/27/2017 | 9 |  | No interests | Unseal |
| N/A | 4/27/2017 | No document |  | Administrative Order | Unseal |
| ECF No. 10 | 6/14/2017 | 10 |  | No interests | Unseal |
| N/A | 6/14/2017 | No document |  | Administrative Order | Unseal |
| ECF No. 11 | 8/28/2017 | 11 |  | Third Party Interest | Sealed |

| N/A | 8/28/2017 | No document | | Administrative Order | Unseal |
|---|---|---|---|---|---|
| ECF No. 12 | 9/6/2017 | 12 | | No interests | Unseal |
| | | 12-1 | | Third Party Interest | Sealed |
| | | 12-2 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | | | | Sealed |
| | | 12-3 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 12-4 | | Publicly Available | Unseal |
| | | 12-5 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 12-6* | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | | | | Sealed |
| | | 12-7 | | Publicly Available | Unseal |
| | | 12-8 | | Third Party Interest | Sealed |
| | | 12-9 | | Publicly Available | Unseal |
| | | 12-10 | | Publicly Available | Unseal |
| | | 12-11 | | Publicly Available | Unseal |
| | | 12-12 | | Publicly Available | Unseal |
| | | 12-13 | | Publicly Available | Unseal |
| | | 12-14 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| ECF No. 13 | 9/6/2017 | 13 | | No interests | Unseal |
| | | 13-1 | | Publicly Available | Unseal |

| | | 13-2 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
|---|---|---|---|---|---|
| | | 13-3 | | Publicly Available | Unseal |
| | | 13-4 | | Publicly Available | Unseal |
| | | 13-5 | | Publicly Available | Unseal |
| | | 13-6 | | Publicly Available | Unseal |
| | | 13-7 | | Publicly Available | Unseal |
| | | 13-8 | | Publicly Available | Unseal |
| | | 13-9 | | Publicly Available | Unseal |
| | | 13-10 | | Publicly Available | Unseal |
| | | 13-11 | | Publicly Available | Unseal |
| | | 13-12 | | Publicly Available | Unseal |
| | | 13-13 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 13-14 | | Publicly Available | Unseal |
| | | 13-15 | | Publicly Available | Unseal |
| | | 13-16 | | Publicly Available | Unseal |
| | | 13-17 | | Publicly Available | Unseal |
| | | 13-18 | | Publicly Available | Unseal |
| | | 13-19 | | Publicly Available | Unseal |
| | | 13-20 | | Publicly Available | Unseal |
| | | 13-21 | | Publicly Available | Unseal |

| | | 13-22 | | Third Party Interest | Sealed |
|---|---|---|---|---|---|
| | | 13-23 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 13-24 | | Publicly Available | Unseal |
| | | 13-25 | | Publicly Available | Unseal |
| | | 13-26 | | Publicly Available | Unseal |
| | | 13-27 | | Publicly Available | Unseal |
| | | 13-28 | | Publicly Available | Unseal |
| ECF No. 14 | 9/6/2017 | 14 | | No interests | Unseal |
| | | 14-1 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 14-2 | | Publicly Available | Unseal |
| | | 14-3 | | Publicly Available | Unseal |
| | | 14-4 | | Publicly Available | Unseal |
| | | 14-5 | | Publicly Available | Unseal |
| | | 14-6 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 14-7 | | Publicly Available | Unseal |
| | | 14-8 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 14-9 | | Publicly Available | Unseal |
| | | 14-10 | | Publicly Available | Unseal |
| | | 14-11 | | Publicly Available | Unseal |
| | | 14-12 | | No interests | Unseal |

|  |  | 14-13 |  | Publicly Available | Unseal |
|---|---|---|---|---|---|
|  |  | 14-14 |  | Publicly Available | Unseal |
|  |  | 14-15 |  | No interests | Unseal |
|  |  | 14-16 |  | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
|  |  | 14-17 |  | Publicly Available | Unseal |
|  |  | 14-18 |  | Third Party Interest | Sealed |
|  |  | 14-19 |  | Publicly Available | Unseal |
|  |  | 14-20 |  | Publicly Available | Unseal |
|  |  | 14-21 |  | Publicly Available | Unseal |
|  |  | 14-22 |  | Publicly Available | Unseal |
|  |  | 14-23 |  | Publicly Available | Unseal |
|  |  | 14-24 |  | Publicly Available | Unseal |
|  |  | 14-25 |  | Publicly Available | Unseal |
|  |  | 14-26 |  | Publicly Available | Unseal |
|  |  | 14-27 |  | Publicly Available | Unseal |
|  |  | 14-28 |  | Publicly Available | Unseal |
|  |  | 14-29 |  | Publicly Available | Unseal |
| ECF No. 15 | 9/6/2017 | 15 |  | No interests | Unseal |
|  |  | 15-1 |  | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
|  |  | 15-2 |  | Publicly Available | Unseal |

| | | 15-3 | Publicly Available | Unseal |
|---|---|---|---|---|
| | | 15-4 | Publicly Available | Unseal |
| | | 15-5 | Publicly Available | Unseal |
| | | 15-6 | Publicly Available | Unseal |
| | | 15-7 | Publicly Available | Unseal |
| | | 15-8 | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 15-9 | Third Party Interest | Sealed |
| | | 15-10 | Third Party Interest | Sealed |
| | | 15-11 | Publicly Available | Unseal |
| | | 15-12 | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 15-13 | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 15-14 | Publicly Available | Unseal |
| | | 15-15 | Third Party Interest | Sealed |
| | | 15-16 | Publicly Available | Unseal |
| | | 15-17 | Publicly Available | Unseal |
| | | 15-18 | Publicly Available | Unseal |
| | | 15-19 | Publicly Available | Unseal |
| | | 15-20 | Publicly Available | Unseal |
| | | 15-21 | Publicly Available | Unseal |
| | | 15-22 | Publicly Available | Unseal |

| | | 15-23 | | Publicly Available | Unseal |
|---|---|---|---|---|---|
| | | 15-24 | | Publicly Available | Unseal |
| ECF No. 16 | 9/6/2017 | 16 | | No interests | Unseal |
| | | 16-1 | | Publicly Available | Unseal |
| | | 16-2 | | Publicly Available | Unseal |
| | | 16-3 | | Sealed/Redacted in other Proceedings | Sealed |
| | | 16-4 | | Publicly Available | Unseal |
| | | 16-5 | | Third Party Interest | Sealed |
| | | 16-6 | | Publicly Available | Unseal |
| | | 16-7 | | Publicly Available | Unseal |
| | | 16-8 | | Publicly Available | Unseal |
| | | 16-9 | | Publicly Available | Unseal |
| | | 16-10 | | Publicly Available | Unseal |
| | | 16-11 | | Publicly Available | Unseal |
| | | 16-12 | | Publicly Available | Unseal |
| ECF No. 17 | 9/6/2017 | 17 | | No interests | Unseal |
| | | 17-1 | | Publicly Available | Unseal |
| | | 17-2 | | Third Party Interest | Sealed |
| | | 17-3 | | Publicly Available | Unseal |
| | | 17-4 | | Publicly Available | Unseal |
| | | 17-5 | | Publicly Available | Unseal |

| | | 17-6 | | Publicly Available | Unseal |
|---|---|---|---|---|---|
| | | 17-7 | | Publicly Available | Unseal |
| | | 17-8 | | Publicly Available | Unseal |
| | | 17-9 | | Publicly Available | Unseal |
| | | 17-10 | | Publicly Available | Unseal |
| | | 17-11 | | Publicly Available | Unseal |
| | | 17-12 | | Publicly Available | Unseal |
| | | 17-13 | | Third Party Interest | Sealed |
| | | 17-14 | | Publicly Available | Unseal |
| | | 17-15 | | Third Party Interest | Sealed |
| | | 17-16 | | Publicly Available | Unseal |
| | | 17-17 | | No interests | Unseal |
| | | 17-18 | | Publicly Available | Unseal |
| ECF No. 18 | 9/6/2017 | 18 | | Third Party Interest | Sealed |
| ECF No. 19 | 9/6/2017 | 19 | | Third Party Interest | Sealed |
| ECF No. 20 | 9/6/2017 | 20 | | Third Party Interest | Sealed |
| ECF No. 21 | 9/7/2017 | 21 | | No interests | Unseal |
| | | 21-1 | | Third Party Interest | Sealed |
| ECF No. 22 | 5/9/2018 | 22 | | No interests | Unseal |
| ECF No. 23 | 6/4/2018 | 23 | | No interests | Unseal |
| | | 23-1 | | Publicly Available | Unseal |

| | | | | | |
|---|---|---|---|---|---|
| N/A | 6/6/2018 | No document | | Administrative Order | Unseal |
| ECF No. 24 | 6/7/2018 | 24 | | Publicly Available | Unseal |
| | | 24-1 | | Publicly Available | Unseal |
| | | 24-2 | | Publicly Available | Unseal |
| | | 24-3 | | Publicly Available | Unseal |
| | | 24-4 | | Publicly Available | Unseal |
| | | 24-5 | | Publicly Available | Unseal |
| | | 24-6 | | Publicly Available | Unseal |
| | | 24-7 | | Publicly Available | Unseal |
| | | 24-8 | | Publicly Available | Unseal |
| | | 24-9 | | Publicly Available | Unseal |
| ECF No. 25 | 6/22/2018 | 25 | | No interests | Unseal |
| | | 25-1 | | Third Party Interest | Sealed |
| | | 25-2 | | No interests | Unseal |
| N/A | 7/2/2018 | No document | | Administrative Order | Unseal |
| ECF No. 26 | 8/13/2018 | 26 | | Third Party Interest | Sealed |
| ECF No. 27 | 8/27/2018 | 27 | | No interests | Unseal |
| ECF No. 28 | 8/27/2018 | 28 | | Third Party Interest | Sealed |
| ECF No. 29 | 8/29/2018 | 29 | | No interests | Unseal |
| | | 29-1 | | No interests | Unseal |
| | | 29-2 | | Third Party Interest | Sealed |

16

| | | 29-3 | | No interests | Unseal |
|---|---|---|---|---|---|
| | | 29-4 | | No interests | Unseal |
| N/A | 8/30/2018 | No document | | Administrative Order | Already Unsealed |
| ECF No. 30 | 9/7/2018 | 30 | | No interests | Unseal |
| | | 30-1 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 30-2 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 30-3 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 30-4 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 30-5 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 30-6 | | Publicly Available | Unseal |
| | | 30-7 | | Publicly Available | Unseal |
| | | 30-8 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 30-9 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| ECF No. 31 | 9/12/2018 | 31 | | No interests | Unseal |
| | | 31-1 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 31-2 | | No interests | Unseal |
| | | 31-3 | | No interests | Unseal |
| ECF No. 32 | 9/13/2018 | 32 | | Third Party Interest | Sealed |
| ECF No. 33 | 9/21/2018 | 33 | | No interests | Unseal |

| ECF No. 34 | 10/24/2018 | 34 | | No interests | Unseal |
|---|---|---|---|---|---|
| ECF No. 35 | 10/30/2018 | 35 | | No interests | Unseal |
| ECF No. 36 | 10/30/2018 | 36 | | No interests | Unseal |
| N/A | 11/5/2018 | No document | | Administrative Order | Already Unsealed |
| ECF No. 37 | 11/7/2018 | 37 | | No interests | Unseal |
| | | 37-1 | | No interests | Unseal |
| | | 37-2 | | No interests | Unseal |
| ECF No. 38 | 11/7/2018 | 38 | | No interests | Unseal |
| ECF No. 39 | 11/26/2018 | 39 | | No interests | Unseal |
| | | 39-1 | | Sealed/Redacted in other Proceedings; Third Party Interest | Sealed |
| | | 39-2 | | No interests | Unseal |
| | | 39-3 | | No interests | Unseal |
| | | 39-4 | | No interests | Unseal |
| N/A | 11/26/2018 | No document | | Administrative Order | Unseal |
| ECF No. 40 | 12/18/2018 | 40 | | No interests | Unseal |
| N/A | 12/20/2018 | No document | | Administrative Order | Already Unsealed |
| ECF No. 41 | 1/8/2019 | 41 | | No interests | Unseal |
| ECF No. 42 | 1/21/2019 | 42 | | No interests | Unseal |
| | | 42-1 | | No interests | Unseal |
| | | 42-2 | | No interests | Unseal |

| | | 42-3 | | Publicly Available | Unseal |
|---|---|---|---|---|---|
| | | 42-4 | | Publicly Available | Unseal |
| | | 42-5 | | No interests | Unseal |
| N/A | 1/25/2019 | No document | | Administrative Order | Already Unsealed |
| ECF No. 43 | 2/25/2019 | 43 | | No interests | Unseal |
| N/A | 7/3/2019 | No document | | Administrative Order | Already Unsealed |
| ECF No. 44 | 7/3/2019 | 44 | | Publicly Available | Unseal |
| ECF No. 45 | 12/12/2019 | 45 | | Publicly Available | Unseal |
| N/A | 12/13/2019 | No document | | Administrative Order | Already Unsealed |
| ECF No. 46 | 12/20/2019 | 46 | | No interests | Unseal |
| ECF No. 47 | 12/20/2019 | 47 | | No interests | Unseal |
| N/A | 1/3/2020 | No document | | Administrative Order | Already Unsealed |
| ECF No. 48 | 2/12/2020 | 48 | | No interests | Unseal |
| | | 48-1 | | Third Party Interest | Sealed |
| ECF No. 49 | 2/13/2020 | 49 | | No interests | Unseal |
| ECF No. 50 | 2/27/2020 | 50 | | Sealed | Sealed |
| ECF No. 51 | 3/31/2020 | 51 | | Sealed | Sealed |

**CONCLUSION**

The documents in exhibit A labeled "unseal" in the result column are to be unsealed.  All other documents will remain sealed pending submissions from relevant non-parties and the respondent.

**SO ORDERED.**

s/Ann M. Donnelly
_____
Hon. Ann M. Donnelly, U.S.D.J.
Chair of the Committee on Grievances
For the United States District Court
Eastern District of New York

Dated: Brooklyn, New York
       December 9, 2020

Exhibit F

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## U.S. District Court

## Eastern District of New York

## Notice of Electronic Filing

The following transaction was entered on 11/05/2018 at 5:18:17 PM EST and filed on 11/05/2018
**Case Name:** In Re: Lerner
**Case Number:** 1:16-mc-02636-AMD
**Filer:**
**Document Number:**

**Docket Text:**
**ORDER denying request for judicial notice [30]: The respondent asks the Committee to take judicial notice of documents and facts that are either (1) not relevant to the Committee's Order [26], or (2) subject to reasonable dispute. The respondent's request is denied. *See United States v. Bleznak*, 153 F.3d 16, 21 n.2 (2d Cir. 1998) (denying as moot a motion to take judicial notice of court filings "not relevant to our disposition of this appeal"); Federal Rule of Evidence 201(b) (A "court may judicially notice a fact that is *not subject to reasonable dispute* because it (1) is generally known within the trial courts territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (emphasis added)). Ordered by Judge Ann M. Donnelly on 11/5/2018. (Alsarraf, Ali)**

**1:16-mc-02636-AMD Notice has been electronically mailed to:**

Peter C. Contino    peter.contino@rivkin.com

Richard E. Lerner    richardlerner@msn.com

Richard E. Lerner    richardlerner@msn.com

Devika Kewalramani    dkewalramani@mosessinger.com

**1:16-mc-02636-AMD Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

*This is a re-generated NEF. Created on 11/20/2018 at 3:48 PM EST*

Exhibit G

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____x

In The Matter Of,

RICHARD E. LERNER, an
attorney admitted to practice before this
Court,

Respondent.

_____x

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  OCT 2 4 2018  ★

BROOKLYN OFFICE

**ORDER**
16-MC-2636

 

This matter is before the Committee on Grievances for the United States District Court

for the Eastern District of New York on the respondent's motion for reconsideration of the

Committee's Order of August 13, 2018. Familiarity with the facts is assumed.

Under Local Civil Rule 6.3, the decision to grant or deny a motion for reconsideration "is

within the sound discretion of the district court . . . and is an extraordinary remedy to be

employed sparingly in the interests of finality and conservation of scarce judicial resources."

*Hernandez v. Doe*, No. 16-CV-2375, 2016 WL 7391989, at *2 (E.D.N.Y. Dec. 21, 2016)

(citing *Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011)).

Generally, a motion for reconsideration will be "denied unless the moving party can point

to controlling decisions or data that the court overlooked—matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.,

Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration is "not a vehicle for

relitigating old issues, presenting the case under new theories, securing a rehearing on the merits,

or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners,

L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).

1

Federal Rule of Civil Procedure 60(b)(6), a catch-all provision, allows a court to relieve a party from final judgment for "any other reason that justifies relief" not already mentioned in Rule 60(b)(1) through (5). "[T]he standard for granting Fed. R. Civ. P. 60(b)(6) motions is strict, and requires [the moving party] to demonstrate 'extraordinary circumstances' to justify relief." *King v. People of the State of New York*, No. 11-CV-3810, 2016 WL 1056566, at *2 (E.D.N.Y. Mar. 16, 2016) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)).

The respondent argues that the Committee denied him due process because it did not hold an evidentiary hearing. In making this claim, the respondent devotes a significant portion of his motion to arguing about the facts underlying the charges on which the Committee deferred its decision pending the resolution of the criminal investigation; there was no need for a hearing on those charges precisely because of the Committee's decision to defer. What the Committee did conclude is that "the facts in the record *underlying the Committee's findings* are not in dispute." (ECF No. 26 at 2 (emphasis added).) In other words, the relevant facts on which the Committee based its conclusion that the respondent violated Rules 1.16(b), 3.3(f)(2), 3.4(a)(6), 8.4(a), 8.4(d), and 8.4(h) of the New York Rules of Professional Conduct are not in dispute.

The respondent's claims to the contrary are not convincing. For example, the respondent says that there is a dispute about whether his client, Frederick Oberlander, continued to demand money from Felix Sater and the other defendants in *Kriss et al. v. BayRock Group LLC et al.*, No. 10-CV-3959, and threatened to disseminate the sealed information if they did not agree to a monetary settlement. There is no dispute about this subject, because the evidence is contained in Oberlander's October and November 2010 letters to Sater's counsel,[1] which establish that "the

---

[1] The respondent proposes a list of witnesses that he would call at the hearing. There is no justification that any of them can give that would explain away the respondent's undignified, malicious attacks on Judge Glasser, Judge Cogan, this Court, and the Second Circuit, *see In re Giorgini*, No. M-2305, 2018 WL 4924084 (N.Y. App. Div. Sept. 25, 2018), or the language of the threatening letters that Oberlander sent to induce monetary settlement.

2

respondent and Oberlander knew that public dissemination of obviously sensitive documents would not only violate explicit court orders, but would expose Sater to retaliation from individuals and organizations about whom he was providing information, as well as to public humiliation."[2]  (ECF No. 26 at 40.)

The Committee also rejects the respondent's claim that the Committee did not alert him that it was considering whether his actions constituted attempted larceny by extortion. The statement of charges includes the violation of Rule 3.4 "by . . . attempting to obtain a settlement by threatening further illegal conduct." This charge gave the respondent fair notice of the charge that he violated Rule 3.4 by committing attempted larceny by extortion.

The Committee has reviewed the remainder of the respondent's arguments, and finds no reason to reconsider its determination.

The Committee grants the respondent's motion under Rule 54(b). The Committee directs entry of a final judgment as to the claims that have been adjudicated and determines that there is no just reason for delay.

SO ORDERED.

s/Ann M. Donnelly

Hon. Ann M. Donnelly, U.S.D.J.
Chair of the Committee on Grievances
For the United States District Court
Eastern District of New York

Dated: Brooklyn, New York
October 24, 2018

---

[2] Equally unpersuasive is the respondent's argument that his role in representing Oberlander in connection with Oberlander's threat to disseminate sealed materials in exchange for millions of dollars did not constitute attempted larceny by extortion. The best refutation of the respondent's position is the letters, in which Oberlander clearly threatened to disseminate sealed information that would have exposed Sater to retaliation and public humiliation. The threats contained in the letter were "wholly gratuitous" and would not "materially benefit" Oberlander, but were "simply . . . a tool to obtain money" from Sater. *Dawkins v. Williams*, 511 F. Supp. 2d 248, 258-60 (N.D.N.Y. 2007); *see also Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (2014).

3

Exhibit H

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————————x

In The Matter Of,

RICHARD E. LERNER, an
attorney admitted to practice before this
Court,

        Respondent.


—————————————————————x

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ AUG 1 3 2018 ★

BROOKLYN OFFICE

**ORDER**
16-MC-2636

This matter comes before the Committee on Grievances for the United States District

Court for the Eastern District of New York to consider the imposition of discipline, pursuant to

Rule 1.5(b)(5) of the Local Rules of the United States District Courts for the Southern and

Eastern Districts of New York, against the respondent, Richard E. Lerner, an attorney admitted

to the bar of this Court.[1] The Committee has considered the entire record, as well as the

voluminous submissions by the respondent and Professor Margaret Tarkington.[2] For the reasons

discussed below, the Committee concludes that the respondent violated the following New York

Rules of Professional Conduct (the "Rules"):

  (1) Requirement to Withdraw (Rule 1.16(b));

  (2) Engaging in discourteous conduct (Rule 3.3(f)(2));

  (3) Engaging in illegal conduct (Rule 3.4(a)(6));

  (4) Violating the Rules of Professional Conduct (Rule 8.4(a));

  (5) Engaging in conduct prejudicial to the administration of justice (Rule 8.4(d)); and

---

[1] The Committee's findings on the charges against Frederick Oberlander, arising out of the same set of facts, are explained in a separate opinion.

[2] The respondent's submissions include a 42 page brief, a 107 page declaration, Oberlander's submission, and a supplemental affidavit. He also relies on a 119 page report and supplemental report by Professor Margeret Tarkington. The respondent filed more than 3,300 pages of exhibits.

1

(6) Engaging in conduct that adversely reflects on the lawyer's fitness as a lawyer (Rule

8.4(h)).

The Committee finds that the evidence does not support the charges with respect to Rules

1.16(a), 3.1 and 3.2. The Committee defers its ruling on the charge that the respondent

knowingly engaged in illegal conduct in violation of Rule 3.4 by contravening court orders and

disclosing sealed materials, because the respondent's conduct in connection with that charge is

currently the subject of a criminal investigation. The Committee determines that the

respondent's answer raises no issue requiring an evidentiary hearing, *see* Local Rule 1.5(d)(4), as

the facts in the record underlying the Committee's findings are not in dispute.

For the reasons that follow, the Committee concludes that a six month suspension from

the practice of law in this Court is appropriate. At the conclusion of the criminal proceedings,

the Committee will consider if additional discipline is necessary on the charge that the

respondent knowingly engaged in illegal conduct in violation of Rule 3.4 by contravening court

orders and disclosing sealed materials.

## BACKGROUND

### I. Procedural History

This matter comes before the Committee on a disciplinary complaint dated June 9, 2014,

which alleged that the respondent "engaged in a relentless campaign to extort a settlement . . . by

publicly releasing documents that had been sealed by a federal court," and that in furtherance of

that effort, the respondent "willfully and deliberately defied the orders of three different judges

in the Southern and Eastern Districts of New York as well as the Second Circuit, and filed a slew

of frivolous motions and lawsuit," and "repeatedly accused the courts of illegal and fraudulent

conduct." (ECF No. 1.) The Committee ordered the respondent to show cause why it should not

2

impose discipline pursuant to Local Rule 1.5, and charged the respondent with violations of the

following New York Rules of Professional Conduct:

> 1. Rule 1.16(a), "by agreeing to represent [Frederick M.] Oberlander, despite knowledge of Oberlander's intentions to obtain a settlement by threatening illegal conduct."
>
> 2. Rule 1.16(b), "by failing to terminate his representation of Oberlander when it became clear that further representation of Oberlander would result in a violation of the New York Rules of Professional Conduct."
>
> 3. Rule 3.1, "by filing multiple frivolous appeals and bringing frivolous lawsuits."
>
> 4. Rule 3.2, "by engaging in improper dilatory tactics."
>
> 5. Rule 3.3, "by engaging in undignified and discourteous conduct toward the courts."
>
> 6. Rule 3.4, "by knowingly engaging in illegal conduct by contravening court orders, disclosing the Sealed materials, and attempting to obtain a settlement by threatening further illegal conduct."
>
> 7. Rule 8.4(a), "by violating multiple New York Rules of Professional conduct."
>
> 8. Rule 8.4(h), "by engaging in conduct that adversely reflects on his fitness as a lawyer."
>
> 9. Rule 8.4(d), "by engaging in conduct that is prejudicial to the administration of justice."

(ECF Nos. 2, 3.) The respondent filed his response on September 6, 2017, incorporating by

reference the report submitted by Professor Tarkington and the respondent's declaration filed the

same day. (ECF No. 20 at 8.)

Pursuant to Local Rule 1.5(a), the Committee appointed James Wicks, Esq. to investigate

the allegations against the respondent, to advise the Committee whether prosecution of

disciplinary action is required, and, if directed, to prosecute grievance proceedings on behalf of

the Committee. (ECF No. 22.)

3

## II.    Factual Background

In 1998, Felix Sater was prosecuted for his involvement in a "pump-and-dump" securities fraud and money laundering scheme. (*See* ECF No. 12-1.)  On December 10, 1998, Sater pleaded guilty before the Honorable I. Leo Glasser to an information charging him with violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO").  As part of his plea, Sater entered into a cooperation agreement with the U.S. Attorney's Office for the Eastern District of New York. (*See* ECF No. 12-6.)  Sater agreed to assist the government in its investigation into others allegedly involved in the securities fraud scheme. (*See id.* at 2-3.)

Because of the sensitive nature of the information Sater was providing to the government and the potential danger to Sater's life if his identity were revealed, Judge Glasser sealed the action and its docket sheet. (*See* ECF No. 12-14; ECF No. 15-17 at 1-2.)[3]  The U.S. Attorney's Office issued a press release in March 2000 that announced Sater's conviction and the indictment of his co-defendants, but did not mention Sater's cooperation agreement with the government. (*See* ECF No. 12-7.)

Sater continued to cooperate with the government for more than ten years. (*See* ECF No. 12-14.)  On October 23, 2009, he was sentenced and ordered to pay a $25,000 fine. (*Id.* at 24.)  Sater's criminal case remained sealed. (*Id.*)

In 2002, Sater joined Bayrock Group LLC, a real estate development firm. (*See* ECF No. 13-2 ¶ 22.)  Jody Kriss was the Director of Finance from 2003 to 2008, and Joshua Bernstein was employed there from November 2006 to September 2008. (ECF No. 13-5 ¶ 12.)  Kriss hired

---

[3] Judge Glasser noted that even though a transcript of the December 10, 1998 hearing in which Sater pleaded guilty was no longer available, "the inescapable conclusion" drawn from the docket "is that given [Sater's] cooperation, the Government [had] made an oral application that the transcript of the proceeding be sealed, which the Court granted as essential to protect the safety of Sater and narrowly tailored to serve that interest." (ECF No. 15-17 at 1-2.)

Frederick Oberlander as his attorney in 2007, and introduced Oberlander to Bernstein. (*See* ECF No. 19 at 8.)

During his employment at Bayrock, Bernstein maintained a hard drive that contained copies of all Bayrock files from its servers. (ECF No. 13-10 at 100:4-7.) The files included emails and documents that Sater had sent to his attorney in connection with the criminal proceedings before Judge Glasser, including his cooperation agreement, a United States Department of Justice financial statement dated December 10, 1998, two proffer agreements, and a pre-sentence investigation report dated June 28, 2004 (collectively, the "Sealed Materials"). (*See id.* at 8:9-20; 10:22-11:3.)

Bernstein took the hard drive with him when Bayrock terminated him in September 2008. (*Id.* at 100:10-14; *see also* ECF No. 13-5 at 8.) Bayrock instructed Bernstein to return all company property, including the hard drive, but Bernstein kept it and the Sealed Materials. (*See* ECF No. 13-10 at 100:10-14.)

On or about March 1, 2010, Bernstein handed the Sealed Materials to Oberlander during a meeting at Bernstein's Manhattan apartment. (*See id.* at 10:2-11:3.) About two days later, Bernstein emailed the Sealed Materials, the criminal complaint from Sater's criminal proceeding, and a draft criminal information to Oberlander. (*Id.* at 12:9-24.)

In May 2010, Oberlander filed a civil RICO complaint against Sater and 29 other defendants in the United States District Court for the Southern District of New York on behalf of Kriss and another Bayrock member, Michael Ejekam, alleging that Sater and his former business associates, through the operation of Bayrock, engaged in a RICO conspiracy involving tax evasion, money laundering, embezzlement, and fraud. (ECF No. 13-2.) Oberlander attached portions of the Sealed Materials as exhibits to the complaint, including five pages from the PSR,

5

the proffer agreements, and the cooperation agreement. (*See* ECF No. 13-10 at 28:21-29:1.) The complaint also referred to information contained in the Sealed Materials, including details about Sater's cooperation with the government against certain members of organized crime. (*See, e.g.*, ECF No. 13-2 ¶¶ 96, 212, 218.) The case was originally assigned to the Honorable Naomi Reice Buchwald.[4] (*See Kriss et al. v. BayRock Group LLC et al.*, No. 10-CV-3959, ECF No. 2.)

On May 13, 2010, Sater's counsel informed Judge Buchwald that Oberlander had filed the complaint publicly, and that it had been uploaded by the online news service *Courthouse News* to its website.[5] (*See* ECF No. 13-5 at 10.) That same day, Judge Buchwald ordered that "no further dissemination of the complaint and exhibits thereto or the sealed information contained therein be made pending further order of the Court." (ECF No. 13-3 at 1.) Judge Buchwald also directed that Oberlander immediately inform any individuals who had received a copy of the complaint that they were not to disseminate the complaint or the Sealed Materials. (*Id.*) On May 14, 2010, Judge Buchwald ordered that the complaint be sealed pending further order of the court, and directed Oberlander to file a redacted version of the original complaint.[6] (ECF No. 13-4 at 2.)

On May 18, 2010, by way of an order to show cause, Sater filed a motion for a preliminary injunction before Judge Glasser, requesting that Oberlander and his clients be ordered to return the Sealed Materials to Sater. (ECF No. 13-5.) Sater also requested a hearing to determine how Oberlander had obtained the materials. (*Id.* at 1.) On the same day, Judge Glasser signed the order to show cause and issued a temporary restraining order restraining

---

[4] The case was reassigned to the Honorable Lorna G. Schofield in March of 2013. (*See Kriss et al. v. BayRock Group LLC et al.*, No. 10-CV-3959, ECF No. 31.)

[5] Oberlander had at this point retained an attorney, David Lewis. (ECF No. 13-5 at 10.)

[6] On March 1, 2018, the parties filed a stipulation of discontinuance with prejudice, dismissing the action and all claims therein. (*Kriss, et al. v. Bayrock Group LLC, et al.*, No. 13-CV-3905, ECF No. 542.)

6

Oberlander and his clients from disseminating the Sealed Materials pending a hearing on the motion. (*Id.* at 1-2.) Oberlander hired the respondent, then a partner at Wilson, Elser, Moskowitz, Edelman & Dicker LLP, to represent him in connection with the order to show cause before Judge Glasser. (ECF No. 19 at 10.)

The hearing was originally scheduled for June 11, 2010. (*See* ECF No. 13-6.) The respondent claimed there had been no prima facie showing that Sater had "protected the documents," a claim that Judge Glasser rejected. (*Id.* at 2:21-3:10, 4:6-5:8.) The respondent requested an adjournment because he was not ready to proceed; he claimed that he thought the May 18th restraining order kept him from speaking to his clients, Kriss and Ejekam. (*Id.* at 5:24-7:13.) Judge Glasser found his argument "specious" and "nothing more than stalling," but adjourned the hearing to June 14, 2010. (*Id.* at 8:17-9:11.)

At the June 14th hearing, Judge Glasser emphasized that Sater's case had been under seal since its inception, that the documents in the file stated explicitly that they were sealed, and that Oberlander was aware that the documents were sealed. (ECF No. 13-9 at 5:12-6:19, 8:1-4.) The respondent agreed with Judge Glasser that "there's an awful lot of information in [Sater's] cooperation agreement which is very sensitive." (*Id.* at 8:10-13.) Judge Glasser found that attaching the Sealed Materials to the Southern District complaint

> was a disclosure of information which was reckless and significantly endangered the life of the person to whom that information related and disturbed me no end because it behooved any lawyer—forgetting about a lawyer—anybody looking at a document which was clearly, clearly designed to be kept very confidential, to be very, very careful with not making that information and letting it float at large. I want to emphasize why it is that I have regarded and do regard this very seriously.

(*Id.* at 11:12-21.) The hearing was adjourned to June 21, 2010. (*Id.* at 15:6-11.)

At the June 21st hearing, Oberlander testified that Bernstein gave him a copy of the Sealed Materials on March 1, 2010, and also emailed them to him, together with the Southern

7

District complaint and a draft criminal information, two days later. (ECF No. 13-10 at 10:2-11:3, 12:9-24.) At that point, Oberlander knew that Bernstein had already been terminated from Bayrock. (*Id.* at 24:6-7.) Oberlander acknowledged alleging in the Southern District complaint that the proffer agreements and the cooperation agreement "were sealed," but nevertheless refused to admit that he knew they were sealed.[7] (*See* ECF No. 13-2 ¶ 96; ECF No. 13-10 at 34:2-35:15.) He also admitted seeing a 2007 New York Times article reporting that Sater's criminal complaint remained under seal. (ECF No. 13-10 at 40:4-20.) He made no additional attempts to determine whether the documents he received from Bernstein or the case docket were subject to existing seal orders. (*See* ECF No. 13-10 at 39:17-24.)

At several points, Oberlander invoked what he called the "work product privilege," (*see, e.g.*, *id.* at 22:14-25, 25:23-26:2), and refused to acknowledge that he knew that Bernstein retained the Sealed Materials after his termination from the company. (*Id.* at 23:10-24:15.) He also refused to say whether he thought Bernstein stole the materials. (*Id.* at 24:12-15.) However, about three months before the June 21st hearing, Oberlander heard Bernstein testify at his deposition that he had retained "thousands of emails" and "hundreds of documents" from Bayrock after he was fired. (*See* ECF No. 13-5 at 8.)

Oberlander acknowledged sending the following email to Kriss' father, which he asked the elder Mr. Kriss to forward to Bayrock's General Counsel, Julius Schwarz:

I recommend you forward this to Julius with the comment from me that there are three alternatives here:
  (a) I file publicly today.
  (b) I file under seal today.
  (c) He arrange a tolling agreement with EVERY defendant but Nixon Peabody.

---

[7] He also acknowledged his awareness of a Southern District rule requiring that caution be exercised when filing information regarding an individual's cooperation with the government. (*See* ECF No. 13-10 at 50:23-51:17, 53:8-55:4, 70:21-72:4.)

8

> I don't care how many people he has to get on the phone and how fast he has to work.
> He had years to give back the money and now it's over. He can get Brian Halberg to help
> him.
> I believe it's possible to get this in under seal if Bayrock joins in a joint motion in part 1
> to seal the complaint pending a redaction agreement with the assigned judge but there are
> never any guarantees.

(ECF No. 13-10 at 47:3-20; ECF No. 13-5 at 9.)

Sater also testified at the hearing. He said that he kept the Sealed Materials in a personal

file, labeled "Personal and Confidential," in a locked drawer in his desk. (ECF No. 13-10 at

95:1-21.) He did not give the Sealed Materials to Bernstein, and had not scanned or asked

anyone to scan the Sealed Materials. (*Id.* at 97:1-3, 107:7-11.)

Judge Glasser issued a permanent injunction prohibiting the dissemination of the PSR

and its contents, and directed Oberlander to return the PSR to the U.S. Attorney's Office. (*Id.* at

88:2-4, 91:25-92:7.) Judge Glasser extended the temporary restraining order with respect to the

remaining sealed materials and requested additional briefing on several issues, including whether

he had the authority to enjoin the dissemination of those documents. (*Id.* at 114:10-115:17.) The

respondent stated that he and Oberlander had "no objection to continuance of the TRO." (*Id.* at

112:9-10.) On July 9, 2010, the respondent appealed this order, as well as the May 18th

restraining order, to the Second Circuit. (ECF No. 13-12.)

On July 16, 2010, as part of his response to the restraining order, Oberlander filed a

signed declaration in which made the following accusations against Judge Glasser and the

Eastern District of New York:

- Judge Glasser presided over a "star chamber" that issued a "patently unconstitutional
  prior restraint TRO." (ECF No. 13-13 ¶ 1.)

- Judge Glasser "unconstitutionally conceal[ed] the docket and surreptitiously dispens[ed]
  whatever justice, or lack thereof, as the Court sees fit." (*Id.* ¶ 3.)

- Judge Glasser "maintained a constitutionally illegal super-sealed docket system of private justice." (*Id.* ¶ 9.)

- "The court has concocted a system of private justice without public accountability." (*Id.* ¶ 4.)

- "This court . . . hides what it does, and no one can doubt the reason is pusillanimous fear." (*Id.* ¶ 11.)

- "This court would dole out First Amendment protection only to . . . favored speakers it fears are too big to gag." (*Id.*)

Oberlander vowed to move for "the unsealing of every secretly sealed docket in this court house." (*Id.* ¶ 17.) He signaled his intent to ignore the court's orders, declaring "I will not be silenced," and asserting that "there is nothing that the court can do to me." (*Id.* ¶¶ 4, 6.) He concluded by analogizing Judge Glasser to Senator Joseph McCarthy, in language borrowed almost verbatim from Joseph Welch's famous castigation of McCarthy: "*You have done enough. Have you no sense of decency, sir, at long last? Have you left no sense of decency?* For the only threat to our Union is that a judicial system would self-justify and rationalize how it could ever dare operate in secret."[8] (*Id.* ¶ 20 (emphasis in original).)

On July 20, 2010, Judge Glasser found that Oberlander knew that the documents were sealed before he filed them publicly. (ECF No. 13-17 at 18:18-19:8.) Judge Glasser also found that Bernstein had obtained the documents wrongfully, and that Oberlander had "documents which he knew or perhaps should have known may have been improperly obtained by Bernstein and passed onto him." (*Id.* at 18:18-22, 20:13-14.) Judge Glasser asked for additional briefing:

---

[8] The respondent attached Oberlander's submission to a declaration in opposition of the order to show cause before Judge Glasser. (*See* ECF No. 13-15.)

10

> It may be that there is some ethical principle, which should have precluded Mr.
> Oberlander from using those documents. Because the sensitivity of those documents
> would have been apparent to any reasonable person, particularly one who is trained in the
> law ostensibly. So the question is, yes, something bad was done, something very bad and
> perhaps despicable by the use of those documents annexed to a complaint in the Southern
> District, in a civil case, but the question is what order was violated?

(*Id.* at 20:15-24.)

Judge Glasser directed Oberlander to return the PSR—including all copies—and

prohibited its dissemination. (*Id.* at 26:1-27:1.) Despite Judge Glasser's explicit injunction in

his previous ruling, Oberlander had continued to maintain copies of the PSR, something that the

respondent attempted to justify by claiming that the order applied only to the "original" copy of

the PSR that Oberlander obtained from Bernstein. (*Id.* at 15:2-16:7.) Judge Glasser issued a

further TRO against the dissemination of any copies. (*Id.* at 26:18-27:15.) Judge Glasser

ordered additional briefing on the Sealed Materials, and extended the TRO pending his decision.

(*Id.*) The respondent appealed Judge Glasser's July 20th oral order on August 9, 2010. (ECF

No. 13-19.)

On July 27, 2010, with the respondent's consent, Judge Glasser extended the May 18th

restraining order until August 3, 2010. (*U.S. v. Sater*, No. 98-CR-1101, ECF No. 43.) He

extended it again, with the respondent's consent, to August 13, 2010. (*U.S. v. Sater*, No. 98-CR-

1101, ECF No. 178.)

On August 12, 2010, the parties formally stipulated to standstill agreement, which the

court so-ordered the same day. (ECF No. 13-20.) The agreement provided that pending a

settlement or issuance of an order granting or denying requested relief, Oberlander (and his

clients) could not disseminate the Sealed Materials or information contained therein, except for

purposes of pending appeals. (*Id.* at 3.) The standstill agreement was supposed to end on

11

September 27, 2010, but the parties agreed to extend it until January 14, 2011. (ECF No. 13-20

at 5; *U.S. v. Sater*, No. 98-CR-1101, ECF No. 44.)

In the meantime, Oberlander continued to demand money from Sater and the other

defendants in the Southern District action before Judge Buchwald, and threatened to disseminate

the sealed information if the Southern District defendants did not agree to a monetary settlement.

*(See* ECF No. 13-22, 13-24.) On October 18, 2010, Oberlander wrote the following letter to

Sater's counsel:

> [M]y clients are indifferent as to which Defendants write the checks, and if your client
> can get out of this without paying much, if anything, that's fine with them. They are also
> well aware that your client lacks the means to pay what is demanded, and thus are
> proposing he pay at least in very principal part with his cooperation, something he no
> doubt will understand. . . . [M]y clients . . . simply demand for [sic] what they are
> entitled to: one billion dimes. . . . At this time, plaintiffs will favorably consider settling
> the entirety of all claims known and unknown for their actual damages of
> $35,000,000. . . . It is the least amount which plaintiffs would be willing to accept for a
> quick settlement that avoids the dissemination.

(ECF No. 13-22 at 6, n.3.)

On November 9, 2010, Oberlander, on his own behalf and as counsel for Kriss and

Ejekam, sent another letter to Sater's counsel terminating the standstill agreement effective

November 16, 2010, and again threatening dissemination of the Sealed Materials:

> If you wish Mr. Sater's activities lawfully kept quiet to any extent, stand still, stop filing
> motions and get out of the way so Plaintiffs can try to resolve the case before everything
> uploads to PACER and goes public. The only way to try to prevent worldwide notoriety
> will be a globally stipulated sealed confidentiality order accompanying a global
> settlement.
>
> . . .
>
> If you don't stipulate I'll get it so ordered anyway because (as Judge Glasser himself
> pointed out) the issue of dissemination is moot, but you'll have wasted more time and be
> that much closer to the time when Judge Buchwald orders this public and your client
> finds this on the front pages everywhere including New York, Iceland, Turkey, and
> Kazakhstan, and all the other plaintiffs worldwide, including Glitnir (which already
> knows of the EDNY criminal matter from public filings but not yet about your client),
> join the party.

12

I can with confidence predict from the settlement discussions I've had that all the defendants will be delighted to keep this quiet . . . . If this case is not settled quickly, it will surely go viral. If you obstruct a settlement instead of helping get there, everything will go public with clockwork inevitability. This is not a threat, it is mathematics. And it is certain.

No power on this earth will much longer prevent as much lawful and legal worldwide dissemination of this Complaint and every document attached thereto or referenced therein as the public and press doing the dissemination think its value justifies. You already saw what *Courthouse News* thought of it, and everything else I file about Bayrock, entirely without my or my clients' involvement. Only a stipulated sealed confidential settlement agreement Plaintiffs find acceptable, executed very soon, can stop that.

. . .

Always remember, if I can't settle this in time now, you will have brought this about by your decisions, taking the tactical nuclear device I filed in SDNY and enhancing it beyond what even I could have, magnifying its yield to that of a strategic thermonuclear weapon by dragging in EDNY and that disaster. . . .

**Sign the litigation standstill and get out of the way**. You have seven days to seek further relief from Judge Glasser. If you do, if you don't standstill, if you continue to interfere with service or dissemination, if I see letters, motions, or anything else, I will instruct counsel to seek emergency relief. And I'll get it. And you'll get the inevitable, concomitant global public news and media coverage of everything everywhere.

. . .

Listen to me. I see legal ways out for your client which are in my clients' interests to facilitate. You won't see them. You need my help. Take it. Fast. Or Judge Buchwald will be presiding over World War III with coverage likely on the front page of the New York Law Journal.

(ECF No. 13-24 at 1-2 (emphasis in original).)

At a February 14, 2011 hearing before the Second Circuit,[9] the respondent admitted that

Oberlander still had electronic copies of the PSR. (ECF No. 14-3 at 24:1-3.) The court promptly

issued a summary order temporarily enjoining Oberlander and anyone acting in concert with him

---

[9] In addition to appealing the June 21st and July 20th orders, the respondent filed a petition for a writ of mandamus directing the district court to make public the docket in Sater's criminal proceedings before Judge Glasser. (ECF No. 14-1.) The government cross-moved for a temporary injunction, pending the disposition of the respondent's appeals, to restrain the respondent and Oberlander from threatening dissemination of the Sealed Materials. (*See* ECF No. 14-4 at 1.)

13

from distributing publicly or revealing in any way documents or contents thereof subject to sealing orders in the appellate proceedings or in any related proceedings before the Eastern and Southern Districts. (ECF No. 14-4.)

The Second Circuit also directed Chief Judge Raymond Dearie to assign a district judge "with the limited mandate of implementing and overseeing compliance with our orders and the orders previously entered by Judge Glasser." (*Id.* at 3.) The Second Circuit noted, "Of course, Judge Glasser, an experienced and able jurist who has shown admirable patience and forbearance in the face of extraordinary provocations, shall retain jurisdiction over the underlying (and long-lived) criminal proceeding involving [Sater]." (*Id.*) Judge Dearie referred the case to the Honorable Brian M. Cogan to enforce the Second Circuit's and the Eastern District's prior orders. (ECF No. 14-5.)

On March 17, 2011, after the U.S. Attorney's Office for the Eastern District of New York disclosed Sater's criminal conviction in a press release, the government moved to unseal the docket entries and documents in Sater's criminal proceeding that did not refer to Sater's cooperation with the government. (ECF No. 14-6 at 1, 5-7.) In a March 23, 2011 order, Judge Glasser directed Oberlander and Sater "to brief the issue of the Court's jurisdiction," and found that Oberlander had "knowingly and intentionally flouted a Court order" by "unilaterally deciding" to disclose information in Sater's sealed criminal proceedings. (ECF No. 14-7 at 4.) The respondent appealed this order on April 14, 2011. (ECF No. 14-17.)

Notwithstanding the Second Circuit's February 14th Summary Order, the respondent requested clarification from Judge Cogan about the extent to which Oberlander was permitted to disseminate certain information contained in the Sealed Materials, on the theory that the information was public knowledge. (*See* ECF No. 14-9 at 7:9-13.) Judge Cogan held a hearing

14

on April 1, 2011. (*See id.* at 1.) The respondent revealed that Oberlander had still not destroyed or returned electronic and paper copies of the original PSR and other Sealed Materials, in violation of Judge Glasser's July 20th order. (*See id.* at 11:5-12:5.) Judge Cogan rejected the respondent's argument that Judge Glasser had not actually ordered Oberlander to destroy or return copies. "No, it's absolutely clear on its face Judge Glasser intended you to destroy electronic copies and to return any photocopies." (*Id.* at 14:3-5.)

By oral order and subsequent written order on April 4, 2011, Judge Cogan directed Oberlander to destroy or return any remaining electronic or paper copies of the PSR and other Sealed Materials, without prejudice to his ability to get access to the documents if the Second Circuit vacated any of the various sealing orders. (*See id.* at 15:1-2; ECF No. 14-10.) Although he did not impose sanctions, Judge Cogan noted that "[i]t was plainly the intent of Judge Glasser to have [the Sealed Materials] destroyed or returned." (ECF No. 14-10.) The respondent appealed Judge Cogan's orders on April 5, 2011. (ECF No. 14-14.)

On May 13, 2011, Judge Cogan issued an additional written order denying the respondent's March 1st request to release the following information from the Sealed Materials: (1) Sater's identity in connection with the criminal proceedings; (2) the nature of the predicate acts underlying Sater's RICO conviction; and (3) Sater's sentence of probation and \$25,000 fine. (ECF No. 14-21 at 3-4.) Judge Cogan observed that he had opined at the April 1st hearing that information "available to the public" was not covered by the Second Circuit's injunction, but had ruled that Oberlander could not "extrapolat[e] from sealed documents . . . [which] could easily be combined with and thereby tainted by [Oberlander]'s knowledge of non-public, sealed information." (*Id.* at 2.) Judge Cogan reviewed the specific information that Oberlander requested to release, and concluded that "[i]t seems obvious that [Oberlander] is seeking to

fatally undermine the purpose of the injunctions by publishing information that would render them ineffective." (*Id.* at 4.) The respondent appealed Judge Cogan's May 13th order on June 10, 2011. (ECF No. 14-24.)

On June 29, 2011, the Second Circuit issued a summary order on the respondent's six appeals. (ECF No. 14-27.) The court affirmed Judge Glasser's permanent injunction against dissemination of the PSR, and remanded that portion of the appeal that dealt with the other sealed documents to Judge Glasser for a final determination. (*Id.* at 1-2, 6.) The court observed that "the PSR is of dubious utility in the civil case except as a tool to intimidate and harass [Sater] by subjecting him to danger. Accordingly and in sum, disclosure of the report is not required to meet the ends of justice—indeed quite the opposite." (*Id.* at 5 (internal citation omitted).) The court warned the respondent "that the Court's patience has been exhausted by his filing of six separate notices of appeal regarding the same principal legal dispute—including the filing of an appeal from a March 23, 2011 scheduling order that obviously was not a final order nor subject to any of the exceptions in the 'final judgment rule.'" (*Id.* at 2, 6.) The court further ordered that "any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions . . . ." (*Id.*)

On February 5, 2012, the New York Times published an article entitled "By Revealing Man's Past, Lawyer Tests Court Secrecy," in which Oberlander revealed his identity and posed for a photograph with the respondent.[10] (*U.S. v. Sater*, No. 98-CR-1101, ECF No. 132-1.) Sater is identified in the article only as John Doe "[b]ecause of safety concerns raised in the case." (*Id.* at 2.) The article described the "secretive chaos" following Oberlander's filing of the Southern District complaint, referring to, among other events, Judge Buchwald's order, Judge Glasser's

---

[10] Oberlander's name had been substituted with Richard Roe in public filings and transcripts. (*U.S. v. Sater*, No. 98-CR-1101, ECF No. 132-1 at 1.)

16

hearings and orders, and the Second Circuit's review and orders. (*Id.*) Oberlander was quoted as saying that Sater's former employee told him to make the Sealed Materials public. (*Id.*) Oberlander also told the author that the court had kept Sater's criminal record a secret, and thus had prevented his victims from obtaining restitution. (*Id.* at 3.) The article also quotes a member of Oberlander's legal team, Paul Cassell, who lauded Oberlander for "challenging the power and ability of the courts to run a secret criminal docket." (*Id.* at 3.)

On February 10, 2012, Sater's counsel moved, by order to show cause, for civil contempt against the respondent and Oberlander on the grounds that Oberlander violated the Second Circuit's February 14, 2011 order by revealing his identity in the article. (ECF No. 15-3.) Judge Cogan signed the order to show cause, and scheduled a hearing for February 27, 2012. (ECF No. 15-4.)

The respondent and Oberlander filed a motion to quash or vacate the order to show cause. (ECF No. 15-5.) In their motion papers, the respondent and Oberlander made the following charges:

- "Judge Glasser and the Second Circuit have . . . hid[den] an entire covert justice system operation devoid of constitutional legitimacy." (*Id.* at 9.)

- The Second Circuit's orders were issued to conceal "systemic judicial and executive branch lawlessness" amounting to "sedition" and "such sedition constituting high crimes and misdemeanors, including the conspiracy to and actual accomplishment of the falsification of judicial records . . . ." (*Id.* at 8.)

- Someone named Salvatore Gieoeli was "publishing online allegations that the Eastern District makes illegal deals with cooperators which, inter alia, unlawfully evade restitution . . . ." (*Id.* at 12.)

17

- "Judge Glasser's long dead and illegally empty docket, is simply unsustainable as anything other than participation in the conspiracy of secret courts." (*Id.* at 15.)

- Judge Cogan's signing of the order to show cause was "illegal and unlawful." (*Id.* at 3.)

- Judge Cogan maintained an "inaccurate docket" in a totally unrelated matter and should recuse himself "from further involvement." (*Id.* at 4.)

- The Eastern District has taken "unlawful, and unethical measures" to cover up "illegal sentencing schemes." (*Id.*)

At the February 27, 2012 hearing, Judge Cogan announced that he was referring the matter to the U.S. Attorney's Office to determine whether to prosecute the respondent and Oberlander for criminal contempt.[11] (ECF No. 15-6 at 9:20-25.) The U.S. Attorney's Office for the Eastern District recused itself and referred the matter to the U.S. Attorney's Office for the Northern District of New York. (ECF No. 15-7.) That investigation is ongoing.

In May 2012, the respondent petitioned the United States Supreme Court for a writ of certiorari to review the Second Circuit's February 14, 2011 order. (ECF No. 15-9.) The respondent filed the petition under seal but moved that the petition be made available in redacted form. (ECF No. 15-8.) On June 25, 2012, the Supreme Court granted the respondent's motion, and ordered that Sater's name be redacted in the publicly-available petition. (*See* ECF No. 19 at 32-33.) The respondent filed the redacted petition publicly in July 2012. (*See id.* at 33.) On July 31, 2012, the Miami Herald published an article entitled "High court reveals secret deal of Trump developer's crimes;" the article named Sater, and appeared to reference information that had been redacted from the publicly filed petition. (*Id.* at 33-34.)

---

[11] Oberlander announced at the hearing that he was representing the respondent, and had gotten himself admitted to the Eastern District that same morning. (ECF No. 15-6 at 5:13-21.)

18

At some point in 2009, the docket sheet for Sater's criminal proceedings was inadvertently unsealed for several days and then re-sealed. (*See* ECF No. 15-17 at 3.). On August 27, 2012, Judge Glasser unsealed the docket sheet, but not the underlying documents, for Sater's criminal proceedings, because the sealed information had already been revealed publicly. (*Id.* at 5-6.) Judge Glasser explained that continued sealing of the docket sheet would be futile because "[t]he cat is out of the bag, the genie is out of the bottle." (*Id.* at 5, 6.) However, Judge Glasser ordered that the details of Sater's cooperation with the government, which had not been made public, remain sealed to protect Sater and maintain the secrecy of the government's "significant clandestine investigative activities." (ECF No. 16-3 at 8.)

The respondent and Oberlander filed a 742 page "Request for Judicial Notice" on October 23, 2012. (*See* ECF No. 15-19.) On November 13, 2012, Judge Glasser ordered the respondent and Oberlander to show cause why they should not be sanctioned for making a "vexatious" and "oppressive" filing that had "no relevance to the very discrete issue pending before the Court." (ECF No. 15-21 at 3-4.)

On November 19, 2012, Oberlander moved that Judge Glasser be disqualified; he asserted, among other things, that Judge Glasser, the U.S. Attorney's Office, and Sater's counsel were part of a "criminal conspiracy" to conceal Sater's conviction. (*See* ECF No. 15-22 at 2.) His motion included the following charges:

> • Judge Glasser "failed to disqualify [himself] despite Congressional mandate [he]
> do so because of, respectively, [his] appearance of bias and lack of impartiality,
> palpably obvious to, let alone reasonably questioned by, an objective, informed
> observer . . . ." (*Id.*)

19

Case 1:16-mc-02636-AMD Document 89-1 *SEALED* Filed 10/04/24 Page 88 of 111 PageID #: 5079
Case 1:16-mc-02636-AMD Document 26 4 Filed 08/13/18 Page 27 of 50 PageID
Case 1:16-mc-02636-AMD Document 26 4 Filed 08/13/18 Page 20 of 43 PageID #: 4021

- Judge Glasser was involved in a **"criminal conspiracy with . . . Sater's lawyers"** to deprive Oberlander and his clients of their rights. (*Id.* (emphasis in original).)

- **"If it had been up to this court, no one would ever have know [sic] of the criminal corruption of the probation officer and DOJ . . . because this court gagged us from telling anyone without even hearing any argument as to prior restraint, core speech, or anything else. The First Amendment simply didn't exist in Brooklyn for this court."** (*Id.* at 5 (emphasis in original).)

- "[I]f the court look [sic] carefully it will find—wait for it—that in 2008, Sater funded what we'll call an 'EDNY Special' family trust for, you guessed it, his wife and children by transferring his membership interests in Bayrock to the trust, which then flipped it right back to Bayrock for approximately $1,500,000; why be surprised, hiding wealth in trusts is the 'thing to do' among EDNY felons who want to evade all responsibility to their victims." (*Id.* at 6.)

- **"Attached hereto is the email cover letter from [Sater's attorneys] which says, in a nutshell, Mr. Oberlander, Mr. Lerner, take this offer, because this is rigged, don't you know if Judge Glasser ever does hold a hearing to decide whether to unseal any of the documents, he will ignore all your arguments, appeals, and evidence. You're doing exactly that, aren't you. Aren't you."** (*Id.* at 10 (emphasis in original).)

- "Perhaps [Sater's attorneys] reached such an agreement with you to throw the case against us in one of the many secret ex parte proceedings we've just found out about. Perhaps they didn't. It doesn't matter, because if you wish to testify they did not, you are a fact witness and off the bench." (*Id.*)

20

- "[N]o sane person . . . would believe anything other than the *apparent* possibility
  of this court's active, collusive criminal participation in what our coming
  amendment hereto will detail more fully is enterprise corruption, including its
  cover-up, the only question how far and to what extent it suffuses the Eastern
  District and the former AUSA's there now in private practice. That's the test,
  whether there is apparent corruption based bias. Fail on that." (*Id.* (emphasis in
  original).)

- "That's the smoking gun which completes the portrait of a court *apparently*
  engaged in secret and collusive deals with Sater's lawyers to, just as they said,
  ignore all our argument, evidence, and appeals exactly the way it is doing, de
  facto, in terrorem, and de jure. That's the cause for you to step down.
  Forthwith." (*Id.* at 14 (emphasis in original).)

On December 13, 2012, the respondent and Oberlander filed a supplemental submission
in response to Judge Glasser's November 19th order to show cause, including the following
charges:

- "[W]e are building a record to show the U.S. Supreme Court that this court
  allowed Sater's crimes to be hidden from the general public and how it did so—
  and thereby allowed (indeed, emboldening) him to go forth and continue
  defrauding the general public in what must be called judicially created danger."
  (ECF No. 15-23 at 7.)

- "Even were we to confine ourselves to 'normal' sealing, this circuit long ago gave
  its backhand to the Constitution and concomitant requirements of 'normal' sealing
  in organized crime cases, and the Eastern District has just taken it farther into the

21

Case 1:16-mc-02636-AMD  Document 80-1 *SEALED*  Filed 10/04/24  Page 90 of 111 PageID #: 5081
Case 1:16-mc-02636-AMD  Document 39-1 *SEALED*  Filed 11/26/18  Page 29 of 50 PageID
Case 1:16-mc-02636-AMD  Document 26 *FILED 08/13/18  Page 22 of 43 PageID #: 4023

realms of lawlessness than anything we had dared to imagine. And we mean lawlessness." (*Id.* at 12.)

- "As to the sealing and closure, this hit its nadir (we hardly call it a zenith) of lawlessness with the Second Circuit's decision . . . wherein the court circumvented . . . the entire . . . line of constitutional access jurisprudence." (*Id.* at 13.)

- "And it appears to be the culture of the district to not recognize the public's rights . . . ." (*Id.* at 13-14.)

- "Perhaps—hypothetically of course—the secret papers this court is concealing reveal that Sater turned down WITSEC or other protection or relocation for a long time, even recently. Why then would this allow him to perpetrate concealment fraud, and why would the court allow any such concealment fraud to continue?" (*Id.* at 26.)

The respondent and Oberlander filed two new actions in 2013. (ECF Nos. 16-4, 16-6.) In the first action, *Estate of Ernest Gottdiener, et al. v. Sater, et al.*, No. 13-CV-1824 (LGS) (S.D.N.Y.), filed in March 2013, the respondent and Oberlander alleged RICO violations—specifically, that Oberlander and other plaintiffs had been defrauded because Sater's criminal case had been sealed illegally. (*See* ECF No. 16-4 at 5.) Judge Schofield granted Sater's motion to dismiss the action on March 19, 2014, (ECF No. 16-10), a decision that the Second Circuit affirmed. (ECF No. 17-6.)

22

The respondent and Oberlander filed the second action, *Kriss, et al. v. Bayrock Group LLC, et al.*, No. 13-CV-3905 (LGS) (S.D.N.Y.),[12] in May 2013, and named the following individuals and entities as defendants: Sater's attorneys; one of the prosecutors in Sater's criminal case; law firms, including Akerman Senterfitt, Duval & Stachenfeld, Nixon Peabody, Satterlee Stephens Burke & Burke, and Morgan Lewis & Bockius; and Donald Trump, Ivanka Trump, and "Trump Does" 1-100, among others. (ECF No. 16-6 at 1.) The complaint accused these parties of participating in a massive civil RICO conspiracy and sought $1 billion in damages. (*See id.* at 2-4.) The respondent and Oberlander asserted more than 25 claims, including fraud, negligence, breach of fiduciary duty, defamation, breach of contract, unjust enrichment, interference with contract, and malicious prosecution. (*Id.* at 4.) The plaintiffs voluntarily dismissed the action on June 23, 2015. (*Kriss, et al. v. Bayrock Group LLC, et al.*, No. 13-CV-3905, ECF No. 124.)

On May 17, 2013, Sater's counsel filed an order to show cause seeking to hold the respondent and Oberlander in civil contempt of the Second Circuit's December 20, 2011 Mandate (the June 29, 2011 Summary Order) for filing the *Gottdiener* and *Kriss* actions in 2013. (*See* ECF No. 16-7 at 1.) On May 28, 2013, Judge Cogan denied the motion, finding that while the Second Circuit warned the respondent and Oberlander against "filing additional lawsuits in an attempt to re-litigate issues decided by its order, or other future filings of a frivolous nature," the Second Circuit did not prohibit such filings.[13] (ECF No. 16-7 at 2.)

---

[12] The respondent initially filed the action in the Supreme Court of the State of New York, County of New York, *Kriss, et al. v. Bayrock Group LLC, et al.*, No. 651715/2013. (ECF No. 16-6.) On June 7, 2013, the government removed the action to the Southern District. (*Kriss, et al. v. Bayrock Group LLC, et al.*, No. 13-CV-3905, ECF No. 1.)

[13] In a 2016 filing styled a motion to "Request the Resignation of the 'Special Master,'" the respondent made the following accusations:

- The Second Circuit's statement that it had undertaken an independent review was "an obvious fabrication." (ECF No. 17-15 at 7 n.1.)

23

On June 9, 2014, Sater's counsel filed this disciplinary complaint against the respondent, alleging, among other things, that the respondent "engag[ed] in a relentless campaign to extort a settlement from Sater and others by publicly releasing documents that had been sealed by a federal court to protect Sater from life-threatening danger." (ECF No. 1 at 1.) The complaint further alleges that the respondent "willfully and deliberately defied the orders of three different judges in the Southern and Eastern Districts of New York as well as the Second Circuit Court of Appeals, [] filed a slew of frivolous motions and lawsuits," "repeatedly accused the courts of illegal and fraudulent conduct[,] and intentionally violated their explicit and unambiguous orders." (*Id.*)

## DISCUSSION

The Committee issued an order to show cause charging the respondent with violations of Rules 1.16(a), 1.16(b), 3.1, 3.2, 3.3, 3.4, 8.4(a), 8.4(d), and 8.4(h) of the New York Rules of Professional Conduct. The respondent's response raises two procedural arguments: (1) the statute of limitations bars discipline for conduct that occurred prior to November 18, 2011, and (2) the Committee does not have jurisdiction over acts that occurred outside the Eastern District. The respondent also argues that his conduct was "guided by the good-faith belief that he was not enjoined from his conduct by any legally valid sealing order, and that his conduct was necessary

* Judge Glasser "directed the falsification of [a] transcript" by directing that Sater be referred to as "John Doe." (*Id.* ¶ 31.)
* Judge Glasser made an improper attempt to influence the Supreme Court. (*Id.* ¶ 35.)
* Judge Glasser violated "the canons of attorney and judicial ethics." (*Id.* ¶ 48.)
* Judge Glasser, Judge Cogan, and the Second Circuit judges have kept a "regime of secrecy, only backing off when faced with media scrutiny." (*Id.* ¶ 57.)
* "[T]he Second Circuit has ratified the U.S. Attorney's fraud." (*Id.* ¶ 65.)
* The Second Circuit "falsified" and "misrepresented" the record. (*Id.* ¶ 69.)
* Judge Cogan issued "a never-ending stream of unconstitutional orders, first to shut Oberlander and Lerner up, then to punish them for having legally revealed the truth." (*Id.* ¶ 72.)
* Judge Cogan pressured the U.S. Attorney's Office into investigating the respondent and Oberlander. (*Id.* ¶ 97.)

to protect significant Constitutional principles and the integrity of the justice system." (ECF No. 20 at 23.) In essence, his response appears to be that the Sealed Materials were not really sealed, and that his conduct was undertaken in good faith. The respondent also argues that his conduct is protected by the First Amendment. (*E.g.*, ECF No. 20 at 28, 33, 40-42.)

In accordance with the applicable legal standard and for the reasons set forth below, the Committee finds that the respondent violated Rules 1.16(b), 3.3(f)(2), 3.4(a)(6), 8.4(a), 8.4(d), and 8.4(h), and that the evidence does not support violations of Rules 1.16(a), 3.1 or 3.2. The Committee defers its ruling on the Rule 3.4 charge that the respondent knowingly engaged in illegal conduct by contravening court orders and disclosing sealed materials pending the outcome of the criminal proceedings.

### I. Legal Standard

The Committee is authorized to discipline an attorney if, after notice and opportunity to respond, it finds by clear and convincing evidence that "[i]n connection with activities with this court," the attorney "engaged in conduct violative of the New York State Rules of Professional Conduct as adopted from time to time by the Appellate Divisions of the State of New York." Local Rule 1.5(b)(5). Discipline "may consist of a letter of reprimand or admonition, censure, suspension, or an order striking the name of the attorney from the roll of attorneys admitted to the bar of this Court." Local Rule 1.5(c)(1).

### II. Procedural Defenses

#### A. Statutes of Limitations

The respondent argues that the Committee cannot discipline him for conduct that occurred before November 18, 2011, because of the five-year statute of limitations under 28

25

U.S.C. § 2462. (ECF No. 20 at 24-25.) Statutes of limitations do not apply to grievance
proceedings before this Committee, so the Committee rejects this defense.

### *1. Statute of Limitations under 28 U.S.C. § 2462*

Section 2462 of Title 28 of the U.S. Code provides in relevant part: "Except as otherwise
provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine,
penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within
five years from the date when the claim first accrued . . . ." It is well-settled that § 2462 "applies
only to actions brought by the United States" and *qui tam* actions in which there is no express
limitations period. *U.S. v. Incorporated Village of Island Park*, 791 F. Supp. 354, 367 (E.D.N.Y.
1992) (quoting *Bertha Bldg. Corp. v. Nat'l Theatres Corp.*, 269 F.2d 785, 788-89 (2d Cir. 1959),
*cert. denied*, 361 U.S. 960 (1960)); *see also 3BA Properties LLC v. Claunch*, No. 13-CV-979,
2013 WL 6000065 (W.D. Wash. 2013) (rejecting the contention that § 2462 applies to an action
sounding in tort because § 2462 "applies only to actions on behalf of the United States and *qui
tam* actions" (internal quotations and citation omitted)). This "catch-all" statute of limitations is
generally applied only in proceedings involving federal agencies, like the Securities and
Exchange Commission (*e.g.*, *Kokech v. SEC*, 137 S. Ct. 1635 (2017); *SEC v. Straub*, 2016 WL
5793398 (S.D.N.Y. 2016)), the Environmental Protection Agency (*e.g.*, *3M Co. v. Browner*, 17
F.3d 1453 (D.C. Cir. 1994)), and the United States Patent and Trademark Office (*e.g.*, *Sheinbein
v. Dudas*, 465 F.3d 493 (Fed. Cir. 2006)).

The Committee has not found, and the respondent has not cited, a single reported case in
which a federal district court grievance committee applied 28 U.S.C. § 2462 to an original
attorney disciplinary proceeding.[14]

---

[14] The respondent's reliance on *Sheinbein v. Dudas*, 465 F.3d 493 (Fed. Cir. 2006), is misplaced.
*Sheinbein*, a reciprocal disciplinary proceeding against an attorney licensed to practice before the United

### 2. Statute of Limitations under New York Law

The Local Rules provide that "in the absence of binding authority from the United States

Supreme Court or the United States Court of Appeals for the Second Circuit, this Court, in the

interests of comity and predictability, will give due regard to decisions of the New York Court of

Appeals and other New York State courts, absent significant federal interests." Local Rule

1.5(b); *see also Bertha Bldg.*, 269 F.2d at 788-89 ("In the absence of an applicable federal statute

of limitations, federal courts look to the statute of the forum.").

In New York, statutes of limitations do not apply to attorney disciplinary proceedings.

*Matter of O'Hara*, 408 N.Y.S.2d 70 (1st Dep't 1978); *In re Mix*, 292 N.Y.S. 502 (4th Dep't

1937), *rev'd on other grounds*, 274 N.Y. 183, 8 N.E.2d 328 (1937); *In re Cohalan*, 271 N.Y.S.

76 (1st Dep't 1934); *In re Simpkins*, 155 N.Y.S. 521 (1st Dep't 1915). The American Bar

Association Model Rules for Disciplinary Enforcement apply the same principle: "Statutes of

limitation are wholly inappropriate in lawyer disciplinary proceedings [because] [c]onduct of a

lawyer, no matter when it has occurred, is always relevant to the question of fitness to practice."

ABA Model Rules for Disciplinary Enforcement, Rule 18, Commentary; Rule 32, Commentary

("Disciplin[ary] . . . proceedings serve to protect the public from lawyers who are unfit to

---

States Patent and Trademark Office ("USPTO"), does not stand for the proposition that § 2462 applies to
attorney disciplinary proceedings in the federal courts. The Administrative Law Judge before whom the
action was brought assumed that § 2462 applied to the disciplinary proceeding before it, but the Federal
Circuit, in rejecting Sheinbein's argument, made clear that it was not deciding that 28 U.S.C. § 2462
applied to the proceeding. *See Sheinbein v. Dudas*, No. 05-CV-1460, 2005 U.S. Dist. LEXIS 43603, *4
(D.D.C. 2005 ("The ALJ . . . determined that the complaint had been timely filed within the five-year
statute of limitations set forth in 28 U.S.C. § 2462, *if indeed § 2462 actually applied to the proceeding*."
(emphasis added)). Of course, even if the five-year statute of limitations applied to attorney disciplinary
proceedings before the Committee—and it does not—the statute of limitations would "run[] from the
commission of the last wrongful act" under the continuing violation doctrine. *Leonhard v. U.S.*, 633 F.2d
599, 613 (2d Cir. 1980); *see also Joghory v. New York State Dep't of Educ.*, 131 F.3d 326, 331-32 (2d
Cir. 1997). The respondent's alleged violations continue until at least May 2013, so even under the
respondent's theory, this action would be timely.

27

practice; they measure the lawyer's qualifications in light of certain conduct, rather than punish for specific transgressions. Misconduct by a lawyer whenever it occurs reflects upon the lawyer's fitness.").

Accordingly, the Committee concludes that neither 28 U.S.C. § 2462 nor any New York statute of limitations apply to this proceeding. Thus, the Committee considers all allegations against the respondent, regardless of when the underlying events occurred.

### B. *Jurisdiction over Actions in Other Tribunals*

The respondent argues that the Committee is limited to considering his behavior in the Eastern District, and cannot consider his conduct before other tribunals, including the Southern District of New York and the Second Circuit, because it did not occur "[i]n connection with activities in this Court." *See* Local Rule 1.5(b)(5). Local Rule 1.5(b)(5), which governs attorney disciplinary proceedings in this Court and the Southern District, authorizes the Committee to discipline an attorney after the attorney is given notice and an opportunity to respond, if it is found by clear and convincing evidence that, "[i]n connection with activities in this Court, any attorney is found to have engaged in conduct violative of the New York State Rules of Professional Conduct . . . ."

The respondent provides no authority for the proposition that Local Rule 1.5(b)(5) bars the Committee's consideration of conduct that occurred outside the Eastern District. Indeed, it is firmly established that the power to discipline attorneys is inherent in all federal courts and that "[t]his power reaches both conduct before the court and that beyond the court's confines." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991).

All of the charged violations occurred in or arose out of proceedings in this District. The respondent is charged with: (i) assisting Oberlander in disseminating and threatening to

28

disseminate the Sealed Materials; (ii) violating Judge Glasser's July 20, 2010 order; and (iii) making baseless and disrespectful accusations against Judge Glasser, Judge Cogan, the entire Eastern District, and the Second Circuit. Furthermore, all of the respondent's conduct in the Southern District and Second Circuit is intimately connected to and arose out of the proceedings in this District.

Accordingly, the Committee has jurisdiction over the respondent's conduct.

**III. Merits of the Charges**

*A. Requirement to Decline Representation (Rule 1.16(a))*

Rule 1.16(a) prohibits an attorney from accepting employment as counsel to a person if the attorney "knows or reasonably should know" that the person intends to "bring a legal action . . . merely for the purpose of harassing or maliciously injuring any person."

The Committee charged the respondent with violating Rule 1.16(a) "by agreeing to represent Oberlander despite knowledge of Oberlander's intentions to obtain a settlement by threatening illegal conduct." (ECF No. 3 at 5.) Specifically, the Committee charged the respondent with "threaten[ing] and assist[ing] Oberlander in threatening the public dissemination of the Sealed Materials unless the defendants agreed to a monetary settlement, despite knowledge that public dissemination of the Sealed Materials would violate multiple court orders." (*Id.* at 3.)

A violation under Rule 1.16(a) requires a showing by clear and convincing evidence that, at the time the respondent accepted employment as Oberlander's counsel, the respondent knew or should have known that Oberlander wished to assert claims against Sater and make a demand for the settlement of those claims on behalf of his clients for the sole purpose of harassing or maliciously injuring Sater. The difficulty here is ascertaining whether Oberlander's sole purpose

was malign; "[s]eldom do actions in litigation have only one purpose." Roy D. Simon and Nicole Hyland, Simon's New York Rules of Professional Conduct Annotated 937 (2017).

The Committee finds that there is little or no evidence in the record that the respondent knew or should have known when he accepted employment as Oberlander's counsel that Oberlander was motivated only by the desire to harass or injure Sater or anyone else, nor is there evidence that the respondent knew or should have known that Oberlander intended to send the October 18, 2010 and November 9, 2010 letters to Sater's counsel threatening dissemination of the Sealed Materials if Sater and the other Southern District defendants did not agree to a settlement.

Accordingly, the Committee finds that the respondent did not violate Rule 1.16(a).

### B. Requirement to Withdraw (Rule 1.16(b))

Rule 1.16(b) requires an attorney to withdraw from representing a client when the attorney "knows or reasonably should know that the representation will result in a violation of the[] Rules or of law," or the attorney "knows or reasonably should know that the client is bringing [a] legal action . . . merely for the purpose of harassing or maliciously injuring any person."

The Committee charged the respondent with violating Rule 1.16(b) "by failing to terminate his representation of Oberlander when it became clear that further representation of Oberlander would result in a violation of the [Rules]." (ECF No. 3 at 5.) Specifically, the Committee charged the respondent with "fail[ing] to withdraw from representing Oberlander when it became clear that Oberlander would continue to violate multiple court orders and the [Rules]," and "failed to withdraw from representing Oberlander when it became clear that

30

Oberlander was taking actions for the primary purpose of harassing or maliciously injuring the Defendants." (*Id.*)

One of the charges under Rule 1.16(b) requires that the respondent knew or reasonably should have known that Oberlander's conduct was undertaken merely for the purpose of harassing or maliciously injuring Sater. This is a high threshold: "If a lawyer merely 'believes' rather than 'knows' that continued representation will violate a rule, then withdrawal is permissive rather than mandatory." *See* Simon, *supra*, at 941.

However, the Committee finds that the respondent violated Rule 1.16(b) by failing to withdraw when he learned that Oberlander was extorting a settlement from the Southern District defendants: threatening to disseminate the Sealed Materials if they did not agree to his terms. The respondent knew or reasonably should have known that Oberlander's conduct would violate the Rules and New York law. *See, infra,* Section III.F. "[T]he review is not the reasonableness of the attorney's belief, but, rather whether a reasonable attorney, familiar with the Code and its ethical strictures, would have notice of what conduct is proscribed." *In re Cooperman,* 611 N.Y.S.2d 465, 469-70 (Ct. App. 1994). Once the respondent became aware of Oberlander's threats, he had an obligation to withdraw as counsel. *See, e.g., Matter of Zimmerman,* 962 N.Y.S.2d 312 (2d Dep't 2013) (attorney violated Rule 1.16(b)(1) and (4) when he failed to withdraw from representation despite the fact that his client insisted on misappropriating escrow funds). The respondent not only failed to withdraw, he actively aided Oberlander. *See, infra,* Section III.F.

Accordingly, the Committee finds by clear and convincing evidence that the respondent violated Rule 1.16(b).

31

*C. Frivolous Conduct (Rule 3.1)*

Rule 3.1 establishes the framework for professional discipline when an attorney asserts a meritless claim or contention. *In re Brizinova*, 565 B.R. 488, 499 (E.D.N.Y. 2017). In this context, "frivolous conduct includes circumstances 'where the lawyer knowingly advances a claim . . . that is unwarranted under existing law.'" *Pullman v. Alpha Media Publ'g, Inc.*, 2012 WL 3114939, at *4 (S.D.N.Y. Jul. 31, 2012) (quoting Rule 3.1).

The Committee considers whether the respondent violated Rule 3.1 by filing the *Gottdeiner* and *Kriss* actions in 2013, filing six separate notices of appeal about the same principal legal dispute, and filing an appeal from Judge Glasser's March 23, 2011 scheduling order, which was neither final nor subject to any exceptions to the final judgment rule.

The respondent argues that he had a good faith basis to believe that the *Gottdeiner* and *Kriss* actions filed in 2013 had merit, even though plaintiffs did not prevail in either action. The respondent also argues that he had "what [he] believed at the time was a rational, reasonable and good-faith basis to believe that [the March 23, 2011] order was subject to appeal . . . ." (ECF No. 18 ¶ 123.)

The Committee concludes that the evidence is insufficient to conclude that the filings violated Rule 3.1. While the judges before whom the respondent and Oberlander made the various filings observed that Oberlander intentionally flouted and ignored court orders, and some threatened to sanction the respondent, none of the judges actually did sanction him for filing frivolous law suits or appeals. *See, e.g.*, *Chambers*, 501 U.S. at 43 (courts have the inherent power to supervise and control their own proceedings and to sanction counsel or a litigant for bad-faith conduct); 28 U.S.C. § 1927; *see also Matter of Neroni*, 20 N.Y.S.3d 496 (4th Dep't 2015) (imposing discipline pursuant to Rule 3.1 where monetary sanctions had already been

32

imposed in underlying matters due to frivolous conduct); *Matter of Gurvey*, 958 N.Y.S.2d 5 (1st

Dep't 2012). At both the district and circuit levels, the courts had the power to sanction the

respondent for frivolous conduct but did not do so.

Without clear and convincing evidence of improper purpose or that the pleading was

frivolous, it cannot be said that the respondent violated Rule 3.1. *See Sorenson v. Wolfson*, 683

Fed. App'x 33, 2017 U.S. App. LEXIS 4591, at *2, 6 (2d Cir. 2017) (affirming the trial court's

decision not to impose sanctions for allegedly frivolous conduct under Rule 11, 28 U.S.C.

§ 1927, and the court's inherent powers because it was neither "patently clear that [the] claim

ha[d] absolutely no chance of success under the existing precedents" nor was there "a finding of

conduct constituting or akin to bad faith"); *Ctr. For Discovery, Inc. v. D.P.*, 2017 U.S. Dist.

LEXIS 111627, at *25 (E.D.N.Y. Jul. 17, 2017) (sanctions may be imposed only if there is

"*proof* of an improper purpose or an *unreasonable* belief that a claim has potential merit"

(emphasis in original)).

Accordingly, the Committee finds that the respondent did not violate Rule 3.1.

### D. Dilatory Tactics (Rule 3.2)

Rule 3.2 provides that "[i]n representing a client, a lawyer shall not use means that have

no substantial purpose other than to delay or prolong the proceeding or to cause needless

expense." As long as a litigation tactic or strategy has at least one "substantial purpose" that is

legitimate, the conduct will not violate Rule 3.2. The test is objective: whether a reasonable

lawyer acting in good faith would regard the course of action as having some substantial purpose

beyond delaying the action or imposing needless expense on the adversary.

The Committee considers whether the respondent violated Rule 3.2 by "engaging in

improper dilatory tactics"—specifically, by filing the *Gottdeiner* and *Kriss* actions in 2013, and

33

numerous notices of appeal. Because the respondent filed the *Gottdeiner* and *Kriss* actions and the notices of appeal to seek redress of Oberlander's and his clients' grievances, and to raise and preserve their rights, it cannot be concluded on this record that these tactics had "no substantial purpose other than to delay or prolong the proceeding or to cause needless expense." *See* Rule 3.2.

Accordingly, the Committee finds that the respondent did not violate Rule 3.2.

### E. *Discourteous Conduct (Rule 3.3(f)(2))*

Rule 3.3(f)(2) prohibits attorneys appearing before a court from "engag[ing] in undignified or discourteous conduct." "Courts, counsel, and parties are entitled to expect that a threshold level of decorum will always apply in court proceedings." *In re Brizinova*, 565 B.R. 488, 501 (E.D.N.Y. 2017). Indeed, "[l]awyers, as officers of the court, must always be alert to the rule that zealous advocacy [on] behalf of a client can never excuse contumacious or disrespectful conduct." *Van Iderstine Co. v. RGJ Contracting Co., Inc.*, 480 F.2d 454, 455 (2d Cir. 1973). "Once a lawyer is admitted to the bar, although he does not surrender his freedom of expression, he must temper his criticisms in accordance with professional standards of conduct." *Stuart v. Kempthorne*, 2007 WL 2071605 at *3 (E.D.N.Y. 2007) (internal quotation marks omitted) (quoting *U.S. Dist. Court for the E. Dist. of Wash. V. Sandlin*, 12 F.3d 861, 866 (9th Cir. 1993)).

The conduct that forms the basis for this charge is the series of attacks on Judge Glasser and Judge Cogan, the Second Circuit, and the Eastern District, which the respondent either leveled himself or which he endorsed. Rule 3.3 does not bar attorneys from disagreeing, even vigorously, with a judge's ruling or from engaging in zealous advocacy on behalf of a client. It

34

requires, however, that attorneys do so within the bounds of legitimate advocacy. The respondent's conduct in this case far exceeded those bounds.

"[T]he rule is well settled that an attorney who engages in making false, scandalous, or other improper attacks upon a judicial officer is subject to discipline." *In re Bevans*, 233 N.Y.S. 439, 443 (3d Dep't 1929). "To make a public, false and malicious attack on a judicial officer is more than an offense against him individually; it is an offense against the dignity and integrity of the courts and our judicial system. It may bring discredit upon the administration of justice amongst citizens who have no way of determining the truth of the charges. It tends to impair the respect and authority of the court." *Id.* The *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), "actual malice" standard does not apply to disciplinary proceedings, because disciplinary proceedings safeguard professional conduct and preserve the orderly administration of the judicial system. *In re Holtzman*, 78 N.Y.2d 184, 188-89 (Ct. App. 1991). To hold otherwise "would immunize all accusations, however reckless or irresponsible, from censure as long as the attorney uttering them did not actually entertain serious doubts as to their truth." *Id.*

The respondent violated Rule 3.3 by making unfounded accusations against Judge Glasser, Judge Cogan, the Eastern District, and the Second Circuit. The respondent's and Oberlander's filings are replete with accusations of illegality, secrecy and even criminality, as demonstrated by just a sampling of their accusations against and characterizations of Judges Glasser and Cogan, the entire Eastern District, and the Second Circuit.

The respondent attached and adopted Oberlander's July 16, 2010 declaration, in which Oberlander characterized the Eastern District as a "star chamber," an oppressive medieval English court. (ECF No. 13-13 ¶ 1.) The respondent and Oberlander accused Judge Glasser and the Eastern District of "concoct[ing] a system of private justice without public accountability,"

35

declaring that "[t]his is not just constitutional amnesia," "[t]his is a constitutional crisis." (*Id.*
¶ 4.) They charged that Judge Glasser acted out of "pusillanimous fear," and in a blatant and
outrageous comparison to Senator Joseph McCarthy, quoted Joseph Welch's famous rebuke,
"Finally, I would ask of this court one question: *You have done enough. Have you no sense of
decency sir, at long last? Have you left no sense of decency?* For the only threat to our Union is
that a judicial system that would self-justify and nationalize how it could ever dare operate in
secret." (*Id.* ¶¶ 11, 20 (emphasis in original).)

In his February 17, 2012 motion to quash an order to show cause signed by Judge Cogan,
the respondent claimed that Judge Glasser and the Second Circuit "hid[] an entire covert justice
system operating devoid of constitutional legitimacy[,] . . . including the disgrace of purporting"
to block a U.S. citizen from "report[ing] judicial unlawfulness to Congress." (ECF No. 15-5 at
9.) The respondent accused Judge Cogan of "maintaining an inaccurate docket," and labeled his
issuance of the order to show cause as "illegal and unlawful." (*Id.* at 3.) He claimed that Judge
Glasser's "long dead and illegally empty docket is simply unsustainable as anything other than
participation in the conspiracy of secret courts." (*Id.* at 15.) The respondent also alleged that the
Eastern District took "unlawful and unethical measures to cover up . . . illegal sentencing
schemes." (*Id.* at 4.) And he accused the Second Circuit of issuing orders evidencing
"lawlessness" and "sedition," constituting a scheme to "defraud[] . . . victims of untold millions
of dollars," and engaging in a "conspiracy to and actual accomplishment of the falsification of
judicial records." (*Id.* at 8.)

The list goes on. The respondent accused the Second Circuit of giving "its backhand to
the Constitution and concomitant requirements of 'normal' sealing in organized crime cases,"
and he charged the Eastern District with taking "it farther into the realms of lawlessness than

36

anything we dared to imagine. And we mean lawlessness." (ECF No. 15-23 at 12.) The
respondent also claimed that the Eastern District does "not recognize the public's rights." (*Id.*
at 13-14.)

The respondent's false and malicious attacks on this Court, the Second Circuit, Judge
Cogan, and Judge Glasser are "an offense against the dignity and integrity of the courts and our
judicial system." *See In re Bevans*, 233 N.Y.S. at 443.

Accordingly, the Committee finds by clear and convincing evidence that the respondent
violated Rule 3.3(f)(2).

### F. *Illegal Conduct (Rule 3.4(a)(6))*

Rule 3.4(a)(6) prohibits attorneys from "knowingly engag[ing] in . . . illegal conduct or
conduct contrary to these Rules." The Committee charged the respondent with violating this rule
"by knowingly engaging in illegal conduct by contravening court orders, disclosing the Sealed
Materials, and attempting to obtain a settlement by threatening further illegal conduct." (ECF
No. 3 at 6.)

#### 1. *Contravention of Court Orders and Disclosure of Sealed Materials*

Whether the respondent contravened court orders and disclosed or assisted Oberlander in
disclosing the Sealed Materials is currently the subject of ongoing criminal contempt
proceedings. Although the record is clear that the respondent intentionally flouted and assisted
Oberlander in violating multiple court orders, the Committee defers its ruling on this portion of
the Rule 3.4 charge pending the outcome of the criminal proceedings.

#### 2. *Attempting to Obtain a Settlement by Threatening Illegal Conduct*

The New York Penal Code proscribes larceny by extortion: any act inducing another to
deliver property by instilling a fear that, should the property not be surrendered, the actor will

37

take some action to harm the victim, including but not limited to: (1) accusing the victim of a crime; (2) exposing a secret that will harm the victim's reputation, career, and/or personal relationships, or otherwise subject the victim to hatred, contempt or ridicule. *See* N.Y. Penal Code § 155.05(2)(e). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Code § 110.00.

The Committee finds that the respondent violated Rule 3.4(a)(6) when he knowingly assisted Oberlander in threatening to disseminate the Sealed Materials unless Sater and the other defendants in the Southern District action agreed to a monetary settlement. The evidence of this violation is evident from Oberlander's communications, of which the respondent concedes he was aware:

- "[M]y clients are indifferent as to which Defendants write the checks. . . . [They] simply demand for [sic] what they are entitled to: one billion dimes." (ECF No. 13-22 at 6.)

- "At this time, plaintiffs will favorably consider settling the entirety of all claims known and unknown for their actual damages of $35,000,000. . . . It is the least amount which plaintiffs would be willing to accept for a quick settlement that avoids the dissemination." (*Id.* at 6 n.3.)

- "If you wish Mr. Sater's activities lawfully kept quiet to any extent, stand still, stop filing motions and get out of the way so Plaintiffs can try to resolve the case before everything uploads to PACER and goes public." (ECF No. 13-24 at 1.)

- "The only way to try to prevent worldwide notoriety will be globally stipulated sealed confidentiality order accompanying a global settlement." (*Id.*)

38

- "If you don't stipulate I'll get it so ordered anyway . . . but you'll have wasted more time and be that much closer to the time when Judge Buchwald orders this public and your client finds this on the front pages everywhere including New York, Iceland, Turkey, and Kazakhstan, and all the other plaintiffs worldwide . . . ." (*Id.*)

- "If this case is not settled quickly, it will surely go viral. If you obstruct a settlement instead of helping get there, everything will go public with clockwork inevitability. This is not a threat, it is mathematics. And it is certain." (*Id.* at 2.)

- "No power on this earth will much longer prevent as much lawful and legal worldwide dissemination of this Complaint and every document attached thereto or referenced therein as the public and press doing the dissemination think its value justifies." (*Id.*)

- "You already saw what *Courthouse News* thought of it, and everything else I file about Bayrock, entirely without my or my clients' involvement. Only a stipulated sealed confidential settlement agreement Plaintiffs find acceptable, executed very soon, can stop that." (*Id.*)

- "Always remember, if I can't settle this in time now, you will have brought this about by your decisions, taking the tactical nuclear device I filed in SDNY and enhancing it beyond what even I could have, magnifying its yield to that of a strategic thermonuclear weapon by dragging in EDNY and that disaster. . . ." (*Id.*)

- "**Sign the litigation standstill and get out of the way**. . . . [I]f you don't standstill, if you continue to interfere with service or dissemination, if I see letters,

39

> motions, or anything else, I will instruct counsel to seek emergency relief. And
> I'll get it. And you'll get the inevitable, concomitant global public news and
> media coverage of everything everywhere." (*Id.* (emphasis in original).)

- "Judge Buchwald will be presiding over World War III with coverage likely on
  the front page of the New York Law Journal." (*Id.*)

The record is clear that the respondent and Oberlander knew that public dissemination of obviously sensitive documents would not only violate explicit court orders, but would expose Sater to retaliation from individuals and organizations about whom he was providing information, as well as to public humiliation. Making such threats in the context of a settlement demand is improper. *See Morley v. Ciba-Geigy Corp.*, 66 F.3d 21 (2d Cir. 1995) (filing a supplemental complaint containing frivolous claims was "clearly an attempt to intimidate the defendant into a large settlement" and was therefore an "improper purpose" under Rule 11(b)(1)).

The respondent's knowledge that he was participating in illegal conduct is readily inferable from the circumstances. (*See* Rule 1.0(k).) Notably, the respondent does not claim ignorance of Oberlander's threatening letters, or say he did not assist Oberlander in sending the letters, in his submission. (*See* ECF No. 20 at 21, 27.) Rather, his defense is that he "had a good faith basis to believe that his and Oberlander's conduct was not in violation of legal ethics or law, and was not undertaken merely for purposes of harassment, but instead was undertaken in order to pursue legitimate grievances." (*Id.* at 27.) The Committee rejects this defense. Demanding settlement under threat of revealing information that will harm the subject is attempted larceny by extortion. The respondent, an experienced attorney, cannot credibly claim that he believed that these tactics were lawful.

40

Accordingly, the Committee finds by clear and convincing evidence that the respondent violated Rule 3.4(a)(6).

### G. *Violations of the Rules of Professional Conduct (Rule 8.4(a))*

Rule 8.4(a) prohibits attorneys from "violat[ing] or attempt[ing] to violate the Rules of Professional Conduct, knowingly assist[ing] or induc[ing] another to do so, or do[ing] so through the acts of another." By virtue of the respondent's violation of Rules 3.3(f)(2) and 3.4(a)(6), the respondent violated Rule 8.4(a).

### H. *Conduct Prejudicial to the Administration of Justice (Rule 8.4(d))*

Rule 8.4(d) prohibits attorneys from "engag[ing] in conduct that is prejudicial to the administration of justice."

The respondent's pattern of egregious conduct and his violation of multiple Rules demonstrates that he engaged in conduct that is prejudicial to the administration of justice. Because his misconduct is part of a "pattern" rather than an isolated incident, a harsher penalty is warranted. *See* Simon, *supra*, at 1950. His flagrant discourteous behavior in violation of Rule 3.3 provides sufficient grounds under the circumstances to find a violation of Rule 8.4(d). *See, e.g., In re Soares*, 947 N.Y.S.2d 233 (4th Dep't 2012) (strident and intemperate criticism of a judge violated Rule 8.4(d), notwithstanding counsel ultimately winning summary judgment on the case).

Accordingly, the Committee finds by clear and convincing evidence that the respondent violated Rule 8.4(d).

### I. *Conduct Reflecting Adversely on Lawyer's Fitness (Rule 8.4(h))*

Rule 8.4(h) prohibits attorneys from "engag[ing] in any other conduct that adversely reflects on the lawyer's fitness as a lawyer." This rule, described as "broad and vague," and the

41

"catch-all provision," is often not the sole basis for discipline, but rather "an add-on to other charges." *See* Simon, *supra*, at 1966.

The respondent's violations of multiple Rules and his pattern of misconduct as set forth above reflect negatively on his fitness as a lawyer in this Court. Accordingly, the Committee finds by clear and convincing evidence that the respondent violated Rule 8.4(h).

## IV. Sanctions

The prospect of disciplining an attorney is a difficult task requiring much research and thought. In making this determination, the Committee has carefully reviewed the voluminous record of these proceedings and the respondent's submissions. In the heat of litigation and in the course of vigorous representation, lawyers may say or do things that they later regret. The respondent clearly regrets none of his conduct. Quite the contrary, he doubles down on his accusations, presumably because he is so certain of the correctness of his position. But confidence in one's cause does not give a lawyer license to say and do whatever he pleases; it does not permit him to threaten adversaries or to insult and demean judges who disagree with him.[15] Chief Judge Irving Kaufman observed, "Advocacy is an art in which the unrelenting pursuit of truth and the most thorough self-control must be delicately balanced," and "zealous advocacy . . . can never excuse contumacious or disrespectful conduct." *Van Iderstine*, 480 F.2d at 459.

The respondent's conduct toward Judge Glasser, Judge Cogan, the Eastern District, and the Second Circuit warrants a significant sanction. Accordingly, the respondent is hereby

---

[15] Notably, none of the judges before whom the respondent appeared dismissed his arguments out of hand, even after his and Oberlander's scurrilous attacks. All of them—Judge Cogan, the Second Circuit, and Judge Glasser—gave the respondent's arguments careful consideration. The most despicable attacks were aimed at Judge Glasser, who nevertheless treated the respondent with dignity and fairness. As the Second Circuit observed, "Judge Glasser, an experienced and able jurist . . . has shown admirable patience and forbearance in the face of extraordinary provocations . . . ." (ECF No. 14-4 at 3.)

42

suspended from the practice of law in this Court for six months commencing on September 1,

2018. The Committee will consider whether additional sanctions are necessary when the

criminal proceedings are concluded.

## CONCLUSION

For the reasons discussed in this opinion, the Committee finds by clear and convincing

evidence that the respondent violated Rules 1.16(b), 3.3(f)(2), 3.4(a)(6), 8.4(a), 8.4(d), and 8.4(h)

of the New York Rules of Professional Conduct. The respondent is hereby suspended from the

practice of law in this Court for six months commencing on September 1, 2018.

SO ORDERED.

s/Ann M. Donnelly

Hon. Ann M. Donnelly, U.S.D.J.
Chair of the Committee on Grievances
For the United States District Court
Eastern District of New York

Dated: Brooklyn, New York
August 13, 2018

43

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:16–mc–02636–AMD

In Re: Lerner
Assigned to: Judge Ann M Donnelly
Cause: Disciplinary Proceedings

**In Re**

| | | |
|---|---|---|
| **Richard E. Lerner** | represented by | **Richard E. Lerner** |

Date Filed: 10/19/2016

**In Re**

**Richard E. Lerner**     represented by     **Richard E. Lerner**
1375 Broadway
New York, NY 10018
917–584–4864
Fax: 347–824–2006
Email: richardlerner@msn.com
PRO SE

**Peter C. Contino**
Rivkin,Radler, & Kremer
EAB Plaza
Uniondale, NY 11556
516–357–3000
Fax: 516–357–3333
Email: peter.contino@rivkin.com
*TERMINATED: 12/20/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard E. Lerner**
Mazzola Lindstrom, LLP
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
917–584–4864
Email: richard@mazzolalindstrom.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Frederick Martin Oberlander**     represented by     **Frederick Martin Oberlander**
The Law Office of Frederick M
Oberlander
43 West 43rd Street
Ste 133
New York, NY 10036
212–826–0357
Fax: 212–202–7624
Email: fred55@aol.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Devika Kewalramani**     represented by     **Devika Kewalramani**
Moses & Singer LLP
The Chrylser Building
405 Lexingotn Avenue
New York, NY 10174–1299
212–554–7800
Fax: 212–554–7700
Email: dkewalramani@mosessinger.com
PRO SE

V.

**Amicus**

**James Wicks**                                    represented by  **James M. Wicks**
Farrell Fritz, P.C.                                                                FARRELL FRITZ, P.C.
400 RXR Plaza                                                                    400 RXR Plaza
Uniondale, NY 11556                                                        Uniondale, NY 11556
516–227–0617                                                                    516–227–0617
                                                                                          Fax: 516–336–2204
                                                                                          Email: jwicks@farrellfritz.com
                                                                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/19/2016 | 1 | Letter dated July 23, 2014 from Devika Kewalramani, Esq. from Moses & Singer LLP regarding disciplinary complaint against Richard E. Lerner, Esq. (Attachments: # 1 Exhibits, # 2 OSC, # 3 Admission date, # 4 Address) (Goddard, Elizabeth) (Entered: 10/19/2016) |
| 10/20/2016 | 2 | ORDER TO SHOW CAUSE why the Committee should not impose discipline on the respondent as authorized by and specified in Rule 1.5 (Discipline of Attorneys) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, including but not limited to suspension or disbarment from practice before this Court. Show Cause Response due by 11/9/2016. Ordered by Judge Ann M Donnelly on 10/20/2016. (Goddard, Elizabeth) (Entered: 11/17/2016) |
| 11/18/2016 | 3 | ORDER TO SHOW CAUSE ** Show Cause Response due by 12/13/2016. ** The Committee on Grievances for the United States District Court for the Eastern District of New York hereby orders Richard E. Lemer to show cause in writing, no later thanthe 13th day of December 2016, why the Committee should not impose discipline on the respondent as authorized by and specified in Rule 1.5 (Discipline of Attorneys) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), including but not limited to suspension or disbarment from practice before this Court.' The Committee hereby issues notice to the respondent in the form of the followingStatement of Charges. Ordered by Judge Ann M Donnelly on 11/18/2016. (Attachments: # 1 Exhibit FedEx receipt) (Susi, PaulaMarie) (Entered: 11/18/2016) |
| 11/18/2016 | 4 | Letter from Respondent to clerk requesting underlying complaint and exhibits. DE#1 and DE1 ex1 emailed to respondent. (Susi, PaulaMarie) (Entered: 11/18/2016) |
| 11/18/2016 | | ORDER The Clerk is directed to give the respondent–attorney sealed access. Ordered by Judge Ann M Donnelly on 11/18/2016. (Susi, PaulaMarie) (Entered: 11/18/2016) |
| 12/01/2016 | 5 | NOTICE: ***Staff notes: Document number 1 has been sent via federal express (tracking number– 8088 9316 3764) to the address noted on document number 4. This was done because of both entries dated 11/22/2016. (Brown, Marc) (Entered: 12/01/2016) |
| 12/01/2016 | | ORDER. As there has been some delay in providing the respondent with access to the exhibits to the disciplinary complaint, the Court extends the time for the respondent to respond to its November 18, 2016 order to show cause to December 22, 2016. Ordered by Judge Ann M Donnelly on 12/1/2016. (Zainulbhai, Yasmin) (Entered: 12/01/2016) |
| 12/22/2016 | | ORDER. The respondent's time to respond to the Court's November 18, 2016 Order to Show Cause is extended to February 23, 2017. Ordered by Judge Ann M Donnelly on 12/22/2016. (Zainulbhai, Yasmin) (Entered: 12/22/2016) |
| 02/22/2017 | | ORDER. The respondent may have until May 15, 2017 to respond to the Court's November 18, 2016 order to show cause. Ordered by Judge Ann M Donnelly on 2/22/2017. (Zainulbhai, Yasmin) (Entered: 02/22/2017) |
| 04/27/2017 | 8 | NOTICE of Appearance by Peter C. Contino on behalf of Respondent Richard E. Lerner. (notification declined or already on case) (Greene, Donna) (Entered: 04/27/2017) |

| | | |
|---|---|---|
| 04/27/2017 | 9 | Letter MOTION for Extension of Time to File Response/Reply *to the Order to Show Cause dated 11/18/16 until 6/30/17 by Peter C. Contino for respondent Richard E. Lerner*. (Greene, Donna) (Entered: 04/27/2017) |
| 04/27/2017 | | ORDER granting 9 Motion for Extension of Time to File Response/Reply until 6/30/17. Ordered by Judge Ann M. Donnelly on 4/27/2017. (Greene, Donna) (Entered: 04/27/2017) |
| 06/14/2017 | 10 | Letter *** Letter to Judge Donnelly from Respondent's counsel requesting further enlargement of time to respond to the 11/18/2016 OSC (from 6/30/2017 to 8/31/2017). (Susi, PaulaMarie) (Entered: 06/14/2017) |
| 06/14/2017 | | ORDER re 10 Letter *** The application for an enlargement of time to respond to the 11/18/2016 OSC, from 6/30/2017 to 8/31/2017, is granted. Counsel is advised that this is the final extension, no further requests will be granted. c/m. Ordered by Judge Ann M Donnelly on 6/14/2017. (Susi, PaulaMarie) (Entered: 06/14/2017) |
| 08/28/2017 | | ORDER granting 11 Motion for Extension of Time to File ** Mr. Lerner's motion for an extension of time to respond is granted; the response is due by September 6, 2017. The request is only granted because Mr. Lerner requested a short extension. No further extensions will be granted. Ordered by Judge Ann M Donnelly on 8/28/2017. (Susi, PaulaMarie) (Entered: 08/28/2017) |
| 09/06/2017 | 12 | *Exhibit List Volume 1 of 6 filed by Counsel* ANSWER to Complaint *Opposition to Order to Show Cause* by Richard E. Lerner. (Attachments: # 1 Exhibit 1998.09.15 Criminal Complaint, # 2 Exhibit 1998.10.02 Proffer Agreement, # 3 Exhibit 1998.10.29 Proffer Agreement, # 4 Exhibit 1998.12.03 Docket 98−cv−1101, # 5 Exhibit 1998.12.09 Criminal Information, # 6 Exhibit 1998.12.10 Cooperation Agreement, # 7 Exhibit 2000.03.02 EDNY Press Release, # 8 Exhibit 2002.04.29 Lauria Letter, # 9 Exhibit 2003.07.17 Docket 03−cr−833, # 10 Exhibit 2004.03.11 Docket 04−cr−234, # 11 Exhibit 2004.05.26 Docket 04−cr−505, # 12 Exhibit 2006.06.20 Transcript, # 13 Exhibit 2008.01.11 Transcript, # 14 Exhibit 2009.10.23 Transcript) (Lerner, Richard) (Entered: 09/06/2017) |
| 09/06/2017 | 13 | *Exhobit List Volume 2 of 6 filed by Counsel* ANSWER to Complaint *Opposition to Order to Show Cause* by Richard E. Lerner. (Attachments: # 1 Exhibit 2010.03.10 Docket 10−cr−173, # 2 Exhibit 2010.05.10 SDNY Complaint, # 3 Exhibit 2010.05.13 Order, # 4 Exhibit 2010.05.14 Order, # 5 Exhibit 2010.05.18 OTSC with TRO, # 6 Exhibit 2010.06.11 Transcript, # 7 Exhibit 2010.06.11 Letter, # 8 Exhibit 2010.06.13 Letter, # 9 Exhibit 2010.06.14 Transcript, # 10 Exhibit 2010.06.21 Transcript, # 11 Exhibit 2010.07.09 Notice of Appeal, # 12 Exhibit 2010.07.11 Notice of Appeal, # 13 Exhibit 2010.07.16 Declaration of Oberlander, # 14 Exhibit 2010.07.16 Declaration Oberlander Ex. A, # 15 Exhibit 2010.07.16 Lerner Declaration (Doc 68−), # 16 Exhibit 2010.07.16 Lerner Declaration, # 17 Exhibit 2010.07.20 Transcript, # 18 Exhibit 2010.08.06 Request for Clarification, # 19 Exhibit 2010.08.09 Notice of Appeal, # 20 Exhibit 2010.08.12 Letter, # 21 Exhibit 2010.09.27 Amendment, # 22 Exhibit 2010.10.18 Letter, # 23 Exhibit 2010.10.18 Proposal, # 24 Exhibit 2010.11.09 Letter, # 25 Exhibit 2010.11.16 Letter, # 26 Exhibit 2010.11.23 Letter, # 27 Exhibit 2010.11.24 Memo of Law, # 28 Exhibit 2010.11.24 Aff in Support) (Lerner, Richard) (Entered: 09/06/2017) |
| 09/06/2017 | 14 | *Exhibit List Volume 3 of 6 Filed By Counsel* ANSWER to Complaint *Opposition to Order to Show Cause* by Richard E. Lerner. (Attachments: # 1 Exhibit 2011.02.07 Petition, # 2 Exhibit 2011.02.10 Order, # 3 Exhibit 2011.02.14 Oral Argument, # 4 Exhibit 2011.02.14 Order, # 5 Exhibit 2011.02.15 Order, # 6 Exhibit 2011.03.17 Letter Motion, # 7 Exhibit 2011.03.23 Order, # 8 Exhibit 2011.03.28 Appellate Brief, # 9 Exhibit 2011.04.01 Transcript, # 10 Exhibit 2011.04.04 Order, # 11 Exhibit 2011.04.04 Confirmation, # 12 Exhibit 2011.04.04 Letter, # 13 Exhibit 2011.04.04 Letter Motion, # 14 Exhibit 2011.04.05 Notice of Appeal, # 15 Exhibit 2011.04.05 Letter, # 16 Exhibit 2011.04.11 Appellate Brief, # 17 Exhibit 2011.04.14 Notice of Appeal, # 18 Exhibit 2011.04.14 Letter, # 19 Exhibit 2011.04.18 Reply Brief, # 20 Exhibit 2011.04.21 Sur−Reply Brief, # 21 Exhibit 2011.05.13 Order, # 22 Exhibit 2011.05.18 E−Mail, # 23 Exhibit 2011.05.19 Letter, # 24 Exhibit 2011.06.10 Notice of Appeal, # 25 Exhibit 2011.06.21 Letter Brief, # 26 Exhibit 2011.06.23 Letter, # 27 Exhibit 2011.06.29 Order, # 28 Exhibit 2011.08.11 Letter, # 29 Exhibit 2011.12.20 Mandate) (Lerner, Richard) (Entered: 09/06/2017) |

| | | |
|---|---|---|
| 09/06/2017 | <u>15</u> | *Exhibit List Volume 4 of 6 filed by Counsel* ANSWER to Complaint *Opposition to Order to Show Cause* by Richard E. Lerner. (Attachments: # <u>1</u> Exhibit 2012.01.26 Letter, # <u>2</u> Exhibit 2012.01.27 Order, # <u>3</u> Exhibit 2012.02.10 Application, # <u>4</u> Exhibit 2012.02.15 Order to Show Cause, # <u>5</u> Exhibit 2012.02.17 Motion to Quash, # <u>6</u> Exhibit 2012.02.27 Transcript, # <u>7</u> Exhibit 2012.03.26 Letter, # <u>8</u> Exhibit 2012.05.10 Motion, # <u>9</u> Exhibit 2012.05.10 Petition (Part 1), # <u>10</u> Exhibit 2012.05.10 Petition (Part 2), # <u>11</u> Exhibit 2012.07.13 Order, # <u>12</u> Exhibit 2012.08.02 Letter, # <u>13</u> Exhibit 2012.08.06 Letter, # <u>14</u> Exhibit 2012.08.21 Letter, # <u>15</u> Exhibit 2012.08.22 Hearing, # <u>16</u> Exhibit 2012.08.22 Vodicka Affidavit, # <u>17</u> Exhibit 2012.08.27 Order, # <u>18</u> Exhibit 2012.10.12 Letter, # <u>19</u> Exhibit 2012.10.23 Request, # <u>20</u> Exhibit 2012.11.08 Joint Request, # <u>21</u> Exhibit 2012.11.13 Order, # <u>22</u> Exhibit 2012.11.19 Omnibus Motion, # <u>23</u> Exhibit 2012.12.13 Response, # <u>24</u> Exhibit 2012.12.17 Letter) (Lerner, Richard) (Entered: 09/06/2017) |
| 09/06/2017 | <u>16</u> | *Exhibit List Volume 5 of 6 filed by Counsel* ANSWER to Complaint *Opposition to Order to Show Cause* by Richard E. Lerner. (Attachments: # <u>1</u> Exhibit 2013.03.05 Reply Brief, # <u>2</u> Exhibit 2013.03.13 Order, # <u>3</u> Exhibit 2013.03.14 Order, # <u>4</u> Exhibit 2013.03.18 Complaint, # <u>5</u> Exhibit 2013.03.28 E–Mail, # <u>6</u> Exhibit 2013.05.10 Summons with Notice, # <u>7</u> Exhibit 2013.05.28 Order, # <u>8</u> Exhibit 2013.08.02 Amended Complaint (Part 1), # <u>9</u> Exhibit 2013.08.02 Amended Complaint (Part 2), # <u>10</u> Exhibit 2014.03.19 Order, # <u>11</u> Exhibit 2014.05.12 Order, # <u>12</u> Exhibit 2014.06.05 Order) (Lerner, Richard) (Entered: 09/06/2017) |
| 09/06/2017 | <u>17</u> | *Exhibit List Volume 6 of 6 filed by Counsel* ANSWER to Complaint *Opposition to Order to Show Cause* by Richard E. Lerner. (Attachments: # <u>1</u> Exhibit 2015.01.14 Report of Mag. Maas, # <u>2</u> Exhibit 2015.02.14 Package for Law Enforcement, # <u>3</u> Exhibit 2015.04.28 Letter, # <u>4</u> Exhibit 2015.04.30 Order, # <u>5</u> Exhibit 2015.06.23 Notice of Dismissal, # <u>6</u> Exhibit 2015.06.25 Order, # <u>7</u> Exhibit 2015.06.30 Transcript, # <u>8</u> Exhibit 2015.07.13 Notice of Voluntary Dismissal, # <u>9</u> Exhibit 2015.11.10 Transcript, # <u>10</u> Exhibit 2015.11.16 Order, # <u>11</u> Exhibit 2016.01.06 Order, # <u>12</u> Exhibit 2016.02.01 Order, # <u>13</u> Exhibit 2016.05.10 Transcript, # <u>14</u> Exhibit 2016.06.21 Order, # <u>15</u> Exhibit 2016.07.08 Declaration, # <u>16</u> Exhibit 2016.12.02 Order, # <u>17</u> Exhibit 2017.08.18 Curriculum Vitae, # <u>18</u> Exhibit 2017.09.05 Order) (Lerner, Richard) (Entered: 09/06/2017) |
| 09/07/2017 | <u>21</u> | *Supplement Exhibit Volume 7 filed by Counsel* ANSWER to Complaint *Opposition to Order to Show Cause* by Richard E. Lerner. (Attachments: # <u>1</u> Exhibit 2017.09.06 Declaration of Oberlander) (Lerner, Richard) (Entered: 09/07/2017) |
| 05/09/2018 | <u>22</u> | ORDER: Confirming the appointment, *nunc pro tunc* to June 2, 2016, of James Wicks to investigate allegations against the respondent, advise the Committee on Grievances whether prosecution of a disciplinary action is required, and, if directed, prosecute grievance proceedings on behalf of the Committee.Ordered by Judge Ann M Donnelly on 5/9/2018. (Greene, Donna) (Entered: 05/09/2018) |
| 06/04/2018 | <u>23</u> | Letter MOTION for Leave to File *Supplement to Opposition to Order to Show Cause. This application is filed by counsel.* by Richard E. Lerner. (Attachments: # <u>1</u> Affidavit in Support) (Lerner, Richard) (Entered: 06/04/2018) |
| 06/06/2018 | | ORDER granting <u>23</u> Motion for Leave to File: The Court grants the application and approves the filing of the Mr. Giannini's affidavit as a supplement to Mr. Lerner's opposition to the Order to Show Cause with Statement of Charges in this matter. Ordered by Judge Ann M. Donnelly on 6/6/2018. (Greene, Donna) (Entered: 06/06/2018) |
| 06/07/2018 | <u>24</u> | AFFIDAVIT in Opposition re <u>3</u> Order to Show Cause,,, *Supplemental Response filed by Counsel. Affidavit of Joseph Giannini* by Richard E. Lerner. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u>5</u> Exhibit E, # <u>6</u> Exhibit F, # <u>7</u> Exhibit G, # <u>8</u> Exhibit H, # <u>9</u> Exhibit I) (Lerner, Richard) (Entered: 06/07/2018) |
| 06/22/2018 | <u>25</u> | Letter *to Hon. Ann M. Donnelly* by Richard E. Lerner (Attachments: # <u>1</u> Supplement to Expert Report, # <u>2</u> Exhibit A) (Lerner, Richard) (Entered: 06/22/2018) |
| 07/02/2018 | | ORDER granting <u>25</u> letter application: The Court grants the application and approves the filing of the Prof. Tarkington's Supplemental Report and the letter of Stephanie Mark as supplements to the Opposition to the Order to Show Cause with Statement of Charges. Ordered by Judge Ann M. Donnelly on 7/2/2018. (Greene, Donna) (Entered: |

| | | |
|---|---|---|
| | | 07/02/2018) |
| 08/13/2018 | 26 | ORDER: the Committee finds by clear and convincing evidence that the respondent violated Rules 1.16(b), 3.3(f)(2), 3.4(a)(6), 8.4(a), 8.4(d), and 8.4(h) of the New York Rules of Professional Conduct. The respondent is hereby suspended from the practice of law in this Court for six months commencing on September 1, 2018. Ordered by Judge Ann M Donnelly on 8/13/2018. (Greene, Donna) (Main Document 26 replaced on 8/13/2018) (Greene, Donna). (Entered: 08/13/2018) |
| 08/27/2018 | 27 | MOTION for Reconsideration re 26 Order, by Richard E. Lerner. (Lerner, Richard) (Entered: 08/27/2018) |
| 08/29/2018 | 29 | MOTION to Stay *Under FRCP Rule 62* by Richard E. Lerner. (Attachments: # 1 Declaration Henry Mascia, # 2 Exhibit A, # 3 Proposed Order to Show Cause for Preliminary Injunction and Temporary Restraining Order, # 4 Proposed Order to Show Cause to Stay Enforcement of an Order and Temporary Restraining Order) (Lerner, Richard) (Entered: 08/29/2018) |
| 08/30/2018 | | ORDER granting 29 Motion to Stay: The Committee's order 26 suspending the respondent for six months commencing September 1, 2018, is stayed pending the Committee's consideration of the respondent's motion for reconsideration 27 . Ordered by Judge Ann M Donnelly on 8/30/2018. (Alsarraf, Ali) (Entered: 08/30/2018) |
| 09/07/2018 | 30 | NOTICE by Richard E. Lerner *Respondent's Request for Judicial Notice Pursuant to Federal Rules of Evidence Rule 201(b)* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I) (Lerner, Richard) (Entered: 09/07/2018) |
| 09/12/2018 | 31 | NOTICE OF APPEAL as to 26 Order by Richard E. Lerner. Filing fee $ 505 Paid; Receipt No. 4653132252. (Attachments: # 1 August 13, 2018 Order, # 2 Receipt of Payment, # 3 Sealing Cover Sheet) (Lee, Tiffeny) (Entered: 09/13/2018) |
| 09/21/2018 | 33 | ORDER: the Committee appoints James M. Wicks and any associates of his firm as counsel for the Committee to appear on its behalf in this matter before the United States Court of Appeals for the Second Circuit. Ordered by Judge Ann M. Donnelly on 9/21/2018. (Greene, Donna) (Entered: 09/21/2018) |
| 10/24/2018 | 34 | ORDER: The Committee has reviewed the remainder of the respondent's arguments, and finds no reason to reconsider its determination. The Committee grants the respondent's motion under Rule 54(b). The Committee directs entry of a final judgment as to the claims that have been adjudicated and determines that there is no just reason for delay. Ordered by Judge Ann M. Donnelly on 10/24/2018. (Greene, Donna) (Entered: 10/24/2018) |
| 10/30/2018 | 35 | Letter *to Hon. Donnelly* by Richard E. Lerner (Lerner, Richard) INCORRECT DOCUMENT FILED. CORRECT DOCUMENT SUBMITTED, DOC. #36. Modified on 10/31/2018 (Greene, Donna). (Entered: 10/30/2018) |
| 10/30/2018 | 36 | Letter *to Hon. Donnelly* by Richard E. Lerner (Lerner, Richard) (Entered: 10/30/2018) |
| 11/05/2018 | | ORDER denying request for judicial notice 30 : The respondent asks the Committee to take judicial notice of documents and facts that are either (1) not relevant to the Committee's Order 26 , or (2) subject to reasonable dispute. The respondent's request is denied. *See United States v. Bleznak*, 153 F.3d 16, 21 n.2 (2d Cir. 1998) (denying as moot a motion to take judicial notice of court filings "not relevant to our disposition of this appeal"); Federal Rule of Evidence 201(b) (A "court may judicially notice a fact that is *not subject to reasonable dispute* because it (1) is generally known within the trial courts territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (emphasis added)). Ordered by Judge Ann M. Donnelly on 11/5/2018. (Alsarraf, Ali) (Entered: 11/05/2018) |
| 11/07/2018 | 37 | MOTION to Stay *PENDING APPEAL* by Richard E. Lerner. (Attachments: # 1 Declaration IN SUPPORT OF MOTION TO STAY IMPOSITION OF DISCIPLINE UNDER FRCP RULE 62(a) PENDING, # 2 Exhibit A–MOTION FOR STAY PENDING APPEAL) (Lerner, Richard) (Entered: 11/07/2018) |

| 11/07/2018 | 38 | ORDER: The respondent's 37 motion for stay of discipline pending appeal is granted. Ordered by Judge Ann M. Donnelly on 11/7/2018. (Greene, Donna) (Entered: 11/07/2018) |
|---|---|---|
| 11/26/2018 | 39 | Subsequent/Amended NOTICE OF APPEAL as to 26 Order of August 13, 2018, 34 Order of October 24, 2018, and Order of November 5, 2018, by Richard E. Lerner. Filing fee $ 505; Receipt No. 4653134581. (Attachments: # 1 Exhibits A–C, # 2 Cover Letter/Request to Seal, # 3 Sealing Cover/Authorization, # 4 Filing Fee) (Lee, Tiffeny) (Entered: 11/26/2018) |
| 11/26/2018 | | Certified and Transmitted Sealed Record on Appeal to US Court of Appeals, 2nd Circuit re 39 1 – Sealed Docket Entry AND Document CV, Subsequent/Amended Notice of Appeal. Sent to the attention of Richard Alcantara. (Lee, Tiffeny) (Entered: 11/26/2018) |
| 12/18/2018 | 40 | MOTION to Withdraw as Attorney *Rivkin Radler to withdraw, on consent, as counsel for Richard Lerner* by Richard E. Lerner. (Lerner, Richard) (Entered: 12/18/2018) |
| 12/20/2018 | | ORDER granting 40 Motion to Withdraw as Attorney. Attorney Peter C. Contino terminated. Ordered by Judge Ann M. Donnelly on 12/20/2018. (Alsarraf, Ali) (Entered: 12/20/2018) |
| 01/08/2019 | 41 | First MOTION to Unseal Case *and unseal each and every docket entry, and each and every document, and to declare that there are no gag orders in force* by Richard E. Lerner. (Lerner, Richard) (Entered: 01/08/2019) |
| 01/21/2019 | 42 | RESPONSE to Motion re 41 First MOTION to Unseal Case *and unseal each and every docket entry, and each and every document, and to declare that there are no gag orders in force – Declaration of James M. Wicks in Response to Motion to Unseal Entire Docket,* filed by James Wicks. (Attachments: # 1 Exhibit A – E–Mail Exchange Between Mr. Wicks and Mr. Lerner, # 2 Exhibit B – E–Mail Exchange Between Mr. Wicks and Mr. Lerner – Re: Unsealing Documents., # 3 Exhibit C – Sealed Report of Special Master, # 4 Exhibit D – Summary Order, # 5 Exhibit E – E–Mail chain from P. Bartholomew, dated January 8, 2019 with exchanges btwn Mr. Wicks and Mr. Oberlander, Re: Proceeding with In Re: Lerner) (Wicks, James) (Entered: 01/21/2019) |
| 01/25/2019 | | ORDER denying 41 Motion to Unseal Case: Because the respondent filed a notice of appeal (*see* 39 ), the Committee is divested of jurisdiction. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (The filing of a notice of appeal is an event of jurisdictional significance––it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.). Accordingly, the respondent's motion to unseal the case 41 is denied. Ordered by Judge Ann M. Donnelly on 1/25/2019. (Alsarraf, Ali) (Entered: 01/25/2019) |
| 02/25/2019 | 43 | Subsequent NOTICE OF APPEAL by Richard E. Lerner *amended to add January 25, 2019 order*. (Lerner, Richard) (Entered: 02/25/2019) |
| 07/03/2019 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 43 Subsequent Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 07/03/2019) |
| 07/03/2019 | 44 | ORDER of USCA as to 43 Subsequent Notice of Appeal filed by Richard E. Lerner. Appellants move to consolidate the above–captioned appeals; the Appellant in 18–2727 also moves to file his motion to consolidate under seal with a redacted public version; and the Appellant in 18–2782 also moves for an order clarifying that the District Court has jurisdiction to consider the merits of a motion to unseal the docket. It is ORDERED that the motions to consolidate the appeals are DENIED, but the above–captioned appeals will be heard in tandem and the Appellants may file a single brief. The Clerk's Office shall set these cases for argument before a single panel following the completion of briefing. It is further ORDERED that the motion to file under seal in 18–2727 is GRANTED. Finally, it is ORDERED that both appeals are STAYED pending the following further briefing. The parties are directed to submit, within 30 days of the date of this order, letter–briefs addressing whether, notwithstanding the filing of an amended notice of appeal incorporating the District Courts January 25, 2019 Order, the case should be remanded to the District Court to consider the motion to unseal on the merits. See United States v. Jacobson, 15 F.3d 19, 22 (2d Cir. 1994) (explaining that this Court may return jurisdiction to the District |

| | | |
|---|---|---|
| | | Court for supplementation of the record or resolution of issues, with jurisdiction automatically restored to this Court without need for a new notice of appeal). Certified Copy Issued: 7/2/19. USCA #18−2782 (16−cv−2636) and 18−2727 (16−cv−2637) (McGee, Mary Ann) (Entered: 07/03/2019) |
| 12/12/2019 | 45 | MANDATE of USCA as to 43 Subsequent Notice of Appeal filed by Richard E. Lerner. (USCA #18−2782) The Appellant in 18−2782 moves for an Order clarifying that the District Court has jurisdiction to consider the merits of a motion to unseal the docket. It is ORDERED that the action docketed under 18−2782 is REMANDED to the District Court to allow that court to consider a motion to unseal the docket. The mandate will issue forthwith in that appeal. Any party may restore jurisdiction to this Court by notifying this Court within 30 days of the District Court's decision on the motion to unseal. See United States v. Jacobson, 15 F.3d 19, 22 (2d Cir. 1994). It is further ORDERED that the appeal docketed under 18−2727 is STAYED until the appeal docketed under 18−2782 is reinstated. Finally, it is ORDERED that, on remand, the District Court clarify its reasons for certifying the suspension Orders for immediate appeal under Federal Rule of Civil Procedure 54(b). See OBertex rel. Estate of OBert v. Vargo, 331 F.3d 29, 41 (2d Cir. 2003); Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 171 (2d Cir. 2002) (per curiam) Issued as Mandate: 12/11/19. USCA #18−2782. Document also reflects case 16−mc−2637 and USCA #18−2727 (McGee, Mary Ann) (Entered: 12/12/2019) |
| 12/13/2019 | | SCHEDULING ORDER: On December 12, 2019, the Second Circuit issued a mandate remanding the action docketed under USCA 18−2782 (docketed in the Eastern District under 16−mc−2636) to allow the Court to consider a motion to unseal the docket. The Second Circuit also directed the Court to clarify its reasons for certifying the suspension orders in both USCA 18−2782 and USCA 18−2727 (docketed in the Eastern District under 16−mc−2637) for immediate appeal under Federal Rule of Civil Procedure 54(b). By December 20, 2019, the parties must inform the Court, by letter not exceeding three pages, what additional briefing, if any, is appropriate on remand, and provide a proposed schedule for said briefing. Ordered by Judge Ann M. Donnelly on 12/13/2019. (Greene, Donna) (Entered: 12/13/2019) |
| 12/20/2019 | 46 | Letter MOTION to Seal by James Wicks. (Wicks, James) (Entered: 12/20/2019) |
| 12/20/2019 | 47 | Letter *in response to court's scheduling order of 12/13/19* by Richard E. Lerner (Lerner, Richard) (Entered: 12/20/2019) |
| 01/03/2020 | | STATUS REPORT ORDER: By February 28, 2020, the parties are directed to advise the Court about the extent to which materials in this matter are sealed. The submission should be purely factual, with no legal argument, and is to take the form of a three−column list with the following information: column A should list each sealed document in this case by ECF number; column B should identify the document as (1) publicly available, (2) sealed, including in the underlying case before the Honorable I. Leo Glasser, or (3) not sealed but otherwise not publicly available; and column C should explain whether any non−party's interests are implicated in the document, including but not limited to the non−parties listed in paragraph 3 of ECF No. 42 declaration of James M. Wicks in response to motion to unseal entire docket. Should the parties wish to make any additional argument, they may do so in a letter not to exceed three pages. The list must be filed under seal; to the extent that the parties make arguments in their letters about sealed documents, the letters must also be filed under seal. Ordered by Judge Ann M. Donnelly on 1/3/2020. (Lupo, Brandi) (Entered: 01/03/2020) |
| 02/12/2020 | 48 | MOTION for Reconsideration *requesting clarification per attached meet−and−confer letter, and extension of time* by Richard E. Lerner. (Attachments: # 1 Exhibit "Meet and confer" letter to James Wicks, date 2020.01.17) (Lerner, Richard) (Entered: 02/12/2020) |
| 02/13/2020 | 49 | ORDER: By February 28, 2020, James M. Wicks is directed to advise the Committee which materials in this matter are sealed. By March 30, 2020, the respondent must file his response. Each submission is to take the form of a three−column list with the following information: column A should list each sealed document in this case by ECF number; column B should identify the document as (1) publicly available, (2) sealed, including in the underlying case before the Honorable I. Leo Glasser, or (3) not sealed but otherwise not publicly available; and column C should explain whether any |

| | | |
|---|---|---|
| | | non–party's interests are implicated in the document, including but not limited to the non–parties listed in paragraph 3 of ECF No. 42 declaration of James M. Wicks in response to motion to unseal entire docket. Citations to the sealing or unsealing decision on each document are required. Should the parties wish to make any additional argument, they may do so in letters not to exceed three pages. The lists must be filed under seal; to the extent that the parties make arguments in their letters about sealed documents, the letters must also be filed under seal. Ordered by Judge Ann M. Donnelly on 2/13/2020. (Greene, Donna) (Entered: 02/13/2020) |
| 11/20/2020 | 52 | ORDER: The respondent's motion to unseal 41 is granted in part. Pursuant to the attached order, the documents in exhibit A labeled unseal in the result column are to be unsealed. All other documents will remain sealed pending submissions from relevant non–parties and the respondent. The respondent is directed to serve this order on the relevant non–parties, and file proof of service on ECF no later than December 18, 2020. Within sixty days of the date of service of this order, the non–parties must file with the Court the basis for continued sealing or redaction of each document for which its interests are implicated. The respondent will have sixty days to file a response. Ordered by Judge Ann M. Donnelly on 11/18/2020. (Greene, Donna) (Main Document 52 replaced on 12/10/2020) (Greene, Donna). (Memorandum Decision and Order replaced on December 10, 2020 to correct the chart at Exhibit A.) (Greene, Donna). (Entered: 11/20/2020) |
| 12/07/2020 | 53 | Letter *Advising the Court that ECF 52, an unsealing directive, is not only itself sealed but every document it states should be unsealed immediately remains sealed* by Frederick Martin Oberlander (Oberlander, Frederick) (Entered: 12/07/2020) |
| 12/16/2020 | 54 | DECLARATION re 52 Order on Motion to Seal,,, *declaration of service of court's order upon EDNY USAO, Felix Sater, Salvatore Lauria, and Frederick Oberlander* by Richard E. Lerner (Lerner, Richard) (Entered: 12/16/2020) |
| 02/16/2021 | 55 | Consent MOTION for Extension of Time to File Response/Reply as to 52 Order on Motion to Seal,,, *REQUESTING EXTENSION OF DUE DATE TO FILE RESPONSE RE ECF 52 AS FEBRUARY 22, 2021* by Frederick Martin Oberlander. (Oberlander, Frederick) (Entered: 02/16/2021) |
| 02/17/2021 | 56 | Letter *To: Hon Ann M. Donnelly, dated February 17, 2021, Re: No Objection to Request for Extension of Time* by James Wicks (Wicks, James) (Entered: 02/17/2021) |
| 02/17/2021 | | ORDER granting 55 Motion for Extension of Time to File Response/Reply. Mr. Oberlander's response is due February 22, 2021. Ordered by Judge Ann M. Donnelly on 2/17/2021. (Strong, Ardis) (Entered: 02/17/2021) |
| 02/22/2021 | 57 | Second MOTION for Extension of Time to File *CONSENT LETTER REQUEST FRCP 6 FOR ADDITIONAL DAYS TO FILE RESPONSE RE DOCKET ACESS* by Frederick Martin Oberlander. (Oberlander, Frederick) (Entered: 02/22/2021) |
| 02/23/2021 | | ORDER granting 57 Motion for Extension of Time to File. Mr. Oberlander may file his response by March 8, 2021. Ordered by Judge Ann M. Donnelly on 2/23/2021. (Strong, Ardis) (Entered: 02/23/2021) |
| 03/08/2021 | 58 | Final MOTION for Extension of Time to File *response re unsealing* by Frederick Martin Oberlander. (Oberlander, Frederick) (Entered: 03/08/2021) |
| 03/09/2021 | | ORDER granting 58 Motion for Extension of Time to File. Mr. Oberlander may file his response by March 12, 2021. Ordered by Judge Ann M Donnelly on 3/9/2021. (Strong, Ardis) (Entered: 03/09/2021) |
| 03/11/2021 | 59 | Letter MOTION to Expedite *Clarification Whether, at Least in the Context of Sealing and Unsealing, the Court is Maintaining Some Form of "Docket" or "Record" of Submissions, Evidence, or Anything Else Relevant to Its Adjudications of This Proceeding but Existence of Which Is not Disclosed by the Docket as Shown on ECF, and Delivery to Lerner of Same, So That We May Properly Brief to Unseal or Keep Sealed Whatever May Be the Case as to the Content of Such Other "Docket" or Record,* by Frederick Martin Oberlander. (Oberlander, Frederick) (Entered: 03/11/2021) |
| 03/12/2021 | 60 | Letter MOTION for Extension of Time to File *this weekend to include issue of whether or not there is a hearing or trial or evidentiary record and if so whether it* |

| | | |
|---|---|---|
| | | *may remain apparently "sealed" to the parties as well as the public, as noted in prior request for clarifcation filed two days ago* by Frederick Martin Oberlander. (Oberlander, Frederick) (Entered: 03/12/2021) |
| 03/15/2021 | 61 | Letter MOTION to Amend/Correct/Supplement *if it please the court, the attached letter is self explanatory, but when anyone says that you know he's going to explain anyway; the number of times anyone has addressed the issue of the right of public access to or right of dissemination by party attorneys of documents filed in a primary federal grievance proceeding appears to be zero, and it raises issues far beyond those normally presented by unsealing requests, among them the near certainty that at least in counsel's opinion there is no basis by which to find a presumptive right of access as is traditionally afforded by common law or the First Amendment, and indeed I have gone back in English history to the Statutes of Westminster and there is simply no history of judicially administered discipline of attorneys to which the public enjoyed traditional access; as a result, what's really involved here is a clear split between the public's right of access and Mr Lerner's also−expressed right to disseminate in his own public or private character or professional defense, and mine, which is core protected speech subject to First Amendment protection; all of this is frozen before final assembly of this filing because of the gap present in not knowing what if anything else is in the record that is not on the docket, thus as the letter explains I renew my request for that information, attach the present best that can be done without double or triple argument not knowing whether there's anything else, and request leave to file a final version as soon as the court advises whether there is indeed anything else or not,* by Frederick Martin Oberlander. (Attachments: # 1 Exhibit) (Oberlander, Frederick) (Entered: 03/15/2021) |
| 03/16/2021 | 62 | ORDER: On November 20, 2020, I granted the respondent's motion in part and unsealed the portions of the docket that were publicly available elsewhere or did not implicate a third−party interest. (ECF No. 52.) I directed the respondent to identify and serve my order on all non−parties who had an interest in the continued sealing of the remaining documents, and provided sixty days for the interested parties to respond. More than sixty days have passed, and no party has come forward to challenge the unsealing of the docket. Given the sensitive nature of many of the sealed documents and the hardships created by the COVID−19 pandemic, I am reluctant to unseal documents that implicate a third−party interest without first ensuring that those parties have received proper notice of my order. To that end, the Court will notify the following interested parties of my November 20, 2020 order: United States Attorney's Office Eastern District of New York, United States Attorney's Office Northern District of New York Attn: Stephen Green and Richard Belliss, Robert Barnes McFarlane o/b/o Felix Sater, Robert S. Wolf o/b/o Felix Sater, and Jill Levi o/b/o Felix Sater. In addition, Mr. Oberlander is directed to serve this order, my November 20, 2020 order and a copy of his Opposition to the Order to Show Cause (ECF No. 21−1) on his former client, Jody Kriss, as this document potentially implicates Mr. Kriss's attorney−client privilege. Mr. Oberlander is directed to file proof of service no later than March 19, 2021. Within thirty days from the date of this order, the non−parties must file with the Court the basis for continued sealing or redaction of each document for which its interests are implicated. The respondent may file a response within 60 days from the date of this order. Ordered by Judge Ann M. Donnelly on 3/16/2021. (Greene, Donna) (Entered: 03/16/2021) |
| 03/19/2021 | 63 | Letter MOTION for Service by Publication *or such other means including personal service (which will be attempted before any substitute service) as if Rule 4 applied, using professional service firm, although this will delay filing proof of service for a week* by Frederick Martin Oberlander. (Oberlander, Frederick) (Entered: 03/19/2021) |
| 03/19/2021 | | ORDER granting 63 Motion for Service. Mr. Oberlander is directed to file his proof of service on Mr. Kriss, in compliance with my March 16, 2021 order, no later than March 26, 2021. Ordered by Judge Ann M. Donnelly on 3/19/2021. (Strong, Ardis) (Entered: 03/19/2021) |
| 03/27/2021 | 64 | Letter *advising court that a package is out for service on Mr Kriss by a process server, should have been served yesterday afternoon, but I have no way to tell and I will be out for religious observance until Tuesdsay, March 30, 20201* by Frederick Martin Oberlander (Oberlander, Frederick) (Entered: 03/27/2021) |

| | | |
|---|---|---|
| 03/30/2021 | 65 | AFFIDAVIT of Service for Orders and related documents *pursuant to most recent order ot the court* served on Jody Kriss on March 29, 2021, filed by Frederick Martin Oberlander. (Oberlander, Frederick) (Entered: 03/30/2021) |
| 04/14/2021 | 66 | Letter MOTION for Extension of Time to File . (Greene, Donna) (Entered: 04/14/2021) |
| 04/14/2021 | | ORDER granting 66 Motion for Extension of Time to File. The response currently due 4/15/2021 is extended to 5/6/2021. Ordered by Judge Ann M Donnelly on 4/14/2021. (Greene, Donna) (Entered: 04/14/2021) |
| 05/19/2021 | 68 | REDACTION Letter dated 5/6/2021 from AUSA Temidayo Aganga–Williams to Judge Donnelly, respectfully submitting this letter to provide its position regardingthe continued sealing of documents at issue in these proceedings that may implicate the government's interests. (Greene, Donna) (Entered: 05/19/2021) |
| 05/21/2021 | | ORDER: In view of Magistrate Judge James Wicks' elevation to the bench, the Committee on Grievances of the Board of Judges, pursuant to Rule 1.5 of the Local Civil Rules of this Court, designates Paige Bartholomew, Esq. and Kevin Mulry, Esq., assisted by attorneys working under their supervision, to advise the Committee and prosecute any disciplinary action against the respondent. Ordered by Judge Ann M. Donnelly on 5/21/2021. (Greene, Donna) (Entered: 05/21/2021) |
| 01/06/2022 | | SCHEDULING ORDER: The government's May 19, 2021 letter 67 does not address the following documents listed in Exhibit A of the Court's November 20, 2020 Order 52 that may implicate the government's interest: ECF Nos. 13–2, 16–3, 16–5, 25–1, 26 and 39–1. The government is directed to file an amended letter with its position on those documents by January 20, 2022. The Clerk of Court is respectfully directed to notify the government of this Order. Ordered by Judge Ann M. Donnelly on 1/6/2022. (Dang, Michelle) (Entered: 01/06/2022) |
| 01/19/2022 | 69 | Letter dated 1/19/2022 from AUSA Nick Axelrod to Judge Donnelly, respectfully requesting that the Court extend the time for the government to respond to the January 6, 2022 minute order to February 2, 2022. (Greene, Donna) (Entered: 01/19/2022) |
| 01/20/2022 | | ORDER granting 69 Motion for Extension of Time to File. The government's response is due by February 3, 2022. Ordered by Judge Ann M. Donnelly on 1/20/2022. (Dang, Michelle) (Entered: 01/20/2022) |
| 02/16/2022 | 70 | Letter dated 2/3/2022 from AUSA Nicholas Axelrod to Judge Donnelly responding to the Court's January 6, 2022 minute order. (Greene, Donna) (Entered: 02/16/2022) |
| 03/02/2022 | 71 | MOTION to Unseal Document 70 Letter *of AUSA Axelrod, filed without motion for leave to file ex parte, or for leave to redact, and filed after the due date* by Richard E. Lerner. (Attachments: # 1 Exhibit Emails to AUSA Axelrod requesting explanation as to circumstances of ex parte / redacted filing, # 2 Exhibit Transcript of May 3, 2001 Brady/Giglio oral argument before the Second Circuit in the Coppa case, wherein AUSA Corngold acknowledges that the government dislcosed to the Coppa defendants that Sater was a cooperator, # 3 Exhibit Coppa indictment, listing Sater, Klotsman and lauria as co–conspirators in paragraph 2, # 4 Exhibit Transcrpt of Feb. 14, 2011 oral argument, in which AUSA Kaminsky states, in sum, that Sater's status as a cooperator has remained secret, # 5 Exhibit Moses & Singer (Robert Wolf) letter to citizen Donald J. Trump, disclosing the secrets of Sater's alleged cooperation and secret criminal case) (Lerner, Richard) (Entered: 03/02/2022) |
| 05/09/2023 | 72 | ORDER: The Clerk of Court is directed to unseal the documents in Exhibit A labeled unseal. Those documents labeled seal in the result column are to remain sealed. The government is directed to file unsealed copies of those documents labeled redact, with the referenced pages redacted, within 60 days. Finally, to the extent that any of the documents the Committee ordered unsealed in its November 20, 2020 order are still sealed, the Clerk of Court is directed to unseal those documents as well. Ordered by Judge Ann M. Donnelly on 5/9/2023. (DG) (Entered: 05/09/2023) |
| 06/02/2023 | 73 | Letter *requesting clarification of effect of this Court's May 9, 2023 Order on my matter* by Frederick Martin Oberlander (Oberlander, Frederick) (Entered: 06/02/2023) |
| 06/06/2023 | 74 | First MOTION for Extension of Time to File *motion for reconsideration of decision and order of May 9, 2023* by Richard E. Lerner. (Lerner, Richard) (Entered: |

| | | |
|---|---|---|
| | | 06/06/2023) |
| 06/14/2024 | <u>75</u> | ORDER. The Committee finds by clear and convincing evidence that the respondentviolated Rule 3.4(a)(6). The Committee previously found that the respondent should be suspended for six months for the violations identified in its 2018 order; in view of the seriousness of the violation of Rule 3.4(a)(6), the Committee concludes that an additional year suspension is warranted, for a total of eighteen months. Ordered by Judge Ann M. Donnelly on 6/13/2024. (DG) (Entered: 06/14/2024) |
| 07/12/2024 | <u>77</u> | First MOTION for Reconsideration re <u>75</u> Order, *joining in Mr. Oberlander's submission on 16−MC−2637 docket, and incorporating Mr. Oberlander's arguments herein* by Richard E. Lerner. (Lerner, Richard) (Entered: 07/12/2024) |
| 09/04/2024 | <u>78</u> | ORDER. The respondent has not established "manifest injustice" or "extraordinary circumstances" that justify relief from the judgment. The Committee also rejects the respondent's claim that it denied him due process because it did not hold an evidentiary hearing. The respondent does not point to controlling decisions that the Committee overlooked that justify relief; indeed, controlling authority permits the Committee to decline to hold a hearing where the respondent has not shown good cause for one, which he did not do here. "Procedural due process is a flexible concept," and "[i]n a disciplinary case, due process requires only that [a] respondent be given notice of the charges against him and an opportunity to be heard." In re Feinman, No. 96−CV−5796, 2000 U.S. Dist. LEXIS 19785, at *17 (E.D.N.Y. Mar. 18, 2000) (citing In re Jacobs, 44 F.3d 84, 90 (2d Cir. 1994)); see also Local Rule 1.5(d)(1) ("If good cause is shown to hold an evidentiary hearing, the Committee on Grievances may direct such a hearing...."). To the extent the respondent argues that he showed good cause to hold a hearing, he does not provide sufficient justification for relitigating the issue. Indeed, the Committee discussed the facts underlying the Rule 3.4(a)(6) violation at length in its 2018 opinion and found that those facts are not in dispute. (See ECF No. 34 at 23; Oberlander ECF No. 33 at 810.) Characterizing the Committee's ruling as the equivalent of a finding of civil or criminal contempt, the respondent maintains that due process requires an evidentiary hearing or even a jury trial. (Oberlander ECF No. 37 at 5.) This argument is also not persuasive. This is not a contempt proceeding. It is a disciplinary proceeding. Unlike civil and criminal contempt charges, "the Rules of Professional Conduct lack the force of law." In re Thelen LLP, 736 F.3d 213, 223 (2d Cir. 2013). Moreover, "'an attorney subject to a... disciplinary proceeding' is entitled to narrower due−process protections than 'the full panoply of federal constitutional protections that apply to a criminal prosecution.'" In re Demetriades, 58 F.4th 37, 4849 (2d Cir. 2023) (quoting In re Jacobs, 44 F.3d at 89). These protections, as discussed above, include only notice and an opportunity to be heard. In re Feinman, 2000 U.S. Dist. LEXIS 19785, at *17. The respondent identifies no controlling authority to the contrary. It also makes no sense to treat a violation of Professional Rule 3.4(a)(6) as contempt. The rule prohibits attorneys from, among other things, "knowingly engag[ing] in... illegal conduct" meaning that the same conduct can be punishable under professional ethics rules and under state or federal law; it does not follow that sanction under the professional rules is the same thing as a sanction under law. Rules of Prof Conduct [22 NYCRR 1200.0] rule 3.4 [a] 6 . The Committee has reviewed the remainder of the respondent's arguments and finds no reason to reconsider its determination. This order, like the June 14, 2024, order, "is a final order and may be immediately appealed, there being no necessity in such matters to issue a Judgment." In re Weinstock, No. M−2−238, 2005 U.S. Dist. LEXIS 7051, at *45 (S.D.N.Y. Apr. 22, 2005). The respondent's "time to file an appeal from the [June 14, 2024] judgment runs from the entry of [this] order." Roistacher v. Bondi, 624 F. Appx 20, 21 (2d Cir. 2015).Ordered by Judge Ann M. Donnelly on 9/4/2024. (DG) (Entered: 09/04/2024) |
| 10/03/2024 | <u>79</u> | First MOTION for Extension of Time to File *notice of appeal* by Richard E. Lerner. (Lerner, Richard) (Entered: 10/03/2024) |
| 10/04/2024 | <u>80</u> | Subsequent NOTICE OF APPEAL by Richard E. Lerner *from all adverse orders*. (Attachments: # <u>1</u> Exhibit orders appealed from) (Lerner, Richard) (Entered: 10/04/2024) |
| 10/07/2024 | | Electronic Index to Record on Appeal sent to US Court of Appeals. <u>80</u> Subsequent Notice of Appeal Documents are available via Pacer. For docket entries without a |

| | | hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 10/07/2024) |